# ZMO Law PLLC

June 11, 2021

*Via ECF*

Hon. Ann M Donnelly
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: *Felipe Rodriguez v. City of New York et al.*, 21-cv-01649

Dear Judge Donnelly:

This office represents Felipe Rodriguez in the above-captioned matter. We write to respond to Assistant Corporation Counsel Mark Zuckerman's letter requesting a pre-motion conference to discuss the filing of a motion to dismiss the Complaint with respect to the City of New York, George Zaroogian, John Beisel, Jerry Fennel, John Califano, and John Wilde ("the City Defendants"). We respectfully submit that no conference is necessary because there are no valid grounds to dismiss any portion of the Complaint under Fed. R. Civ. P. 12(b)(6). The case should proceed forthwith to discovery.

## Factual Background

As alleged in the Complaint, Plaintiff Felipe Rodriguez was exonerated on December 30, 2019, after serving almost 27 years in prison for a murder in Queens that he did not commit. That day, the indictment against Mr. Rodriguez was dismissed on an unopposed motion brought under New York Criminal Procedure Law §§ 440.10(1)(g) (newly discovered evidence) and 440.10(1)(h) (suppression of evidence favorable to the defense). The People indicated in open Court that because their principal witness against Mr. Rodriguez had fully recanted his testimony, they "can neither retry the case nor let the indictment stand." 12/30/19 Tr. at 5, 20.[1] Justice Joseph A. Zayas of Queens Supreme Court acknowledged the "miscarriage of justice" suffered by Mr. Rodriguez and stated that the newly discovered evidence "would likely have affected the jury's verdict." 12/30/19 Tr. at 23:9-20. An order vacating the conviction and dismissing the indictment provided: "[h]aving conducted a multi-year reinvestigation of the matter, [the People] agree with the crux of defendant's claims and consent to the relief he requests . . . [and the People

---

[1] The transcript of the proceedings was attached to the City Defendants' letter. *See* ECF No. 21-2.

260 Madison Avenue, 17th Floor • New York, NY 10016
(212) 685-0999 • info@zmolaw.com
www.zmolaw.com

ZMO LAW PLLC

are] no longer able to prosecute this matter, and, consequently, the indictment should be dismissed." 12/30/19 Order at 2.[2]

Despite this record, the City Defendants argue that the criminal proceeding against Mr. Rodriguez did not terminate in his favor for purposes of his federal malicious prosecution and fair trial claims. ECF No. 21 at 1-2. The City Defendants make other meritless arguments, addressed below.

*Argument*

1. **The Complaint adequately alleges that the criminal proceeding terminated in Mr. Rodriguez's favor.**

A plaintiff who alleges malicious prosecution under § 1983 must show that the criminal proceedings against him terminated in a manner "affirmatively indicat[ing] his innocence."[3] *Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018). Plaintiff unquestionably meets this standard: his conviction was vacated based upon "newly discovered evidence . . . creat[ing] a probability of a more favorable verdict" and the People's concession that they lacked sufficient evidence to retry the case. *See, e.g., Rosario v. City of New York*, No. 18 CIV. 4023, 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019) (finding termination indicative of innocence where "Plaintiff's conviction was vacated and his indictment was dismissed, after he was imprisoned for nearly twenty years, following a reinvestigation of the original charge" and "[t]he DA's Office decided not to retry Plaintiff because it did not believe it could prove the case" and "[t]he Complaint further alleges the significant weaknesses in the original case[.]").

The circumstances of Plaintiff's vacatur mirror *Rosario* while contrasting sharply with the records in *Lanning* and *Gondola v. City of New York*, 16-cv-369, 2020 WL 1433874, (AMD) (SJB) (E.D.N.Y. Mar. 24, 2020), where the courts found no affirmative indication of innocence. In *Lanning*, the state trial court held that the dismissal reflected "neither an acquittal of the charges nor any determination of the merits." *Lanning,* 908 F.3d at 19, 28 (finding no favorable termination because the plaintiff merely "alleged that the charges against him 'were dismissed' at some point after a jury trial, without specifying how or on

---

[2] A copy of this order was filed with City Defendants' papers. *See* ECF No. 21-1.
[3] Plaintiff disputes that *McDonough v. Smith*, 139 S. Ct. 2149 (2019), which merely reaffirmed *Heck v. Humphrey*'s procedural bar in the context of prosecutions ending in acquittal, extended *Lanning*'s definition of favorable termination to fair trial claims. *See, e.g., Savory v. Cannon*, 947 F.3d 409, 429 (7th Cir. 2020) (en banc)(finding that neither *Heck* nor *McDonough* requires favorable termination indicative of innocence for fair trial claims). Nevertheless, because the facts surrounding Plaintiff's vacatur clearly indicate innocence within the meaning of *Lanning*, there is no need for the Court to resolve this issue of law.

ZMO LAW PLLC

what grounds."). In *Gondola*, "the record was silent about the reason for the dismissal." *Gondola v. City of New York*, 2020 WL 1433874 at *5-6 ("The Certificate of Disposition and the minutes of the state proceeding show only that the prosecutor dismissed the charges; no reason was given for the dismissal.").

Meanwhile, since *Lanning*, district courts in this circuit have consistently held "that a termination on the ground that the prosecution is unable to prove its case beyond a reasonable doubt is still sufficient to show favorable termination." *Virgil v. City of New York*, No. 17-CV-5100 (PKC)(SMG), 2019 WL 4736982 at *7 (E.D.N.Y. Sept. 27, 2019). *See Hincapie v. City of New York*, 434 F. Supp. 3d 61, 72 (S.D.N.Y. Jan. 22, 2020) ("Significantly, the DA's Office decided not to retry Hincapie because it did not believe it could prove the case."); *Pal v. Cipolla*, No. 3:18CV616 (MPS), 2020 WL 6881455 at *18 (D. Conn. Nov. 23, 2020) ("Given that a lack of sufficient evidence in a criminal case entitles a defendant, as a matter of law, to a judgment of acquittal ... such a dismissal is more than one that 'leaves the question of guilt or innocence unanswered.'"); *Rosario v. City of New York*, 2019 WL 4450685 at *4 (S.D.N.Y. Sept. 16, 2019) (same). Here, Justice Zayas and the Queens District Attorney's Office ("QCDA") acknowledged that, in light of Ramos's recantation, there was insufficient evidence to re-prosecute Plaintiff.

Nor does the manner of termination provide a basis for dismissing Plaintiff's *Brady* claims. The Second Circuit does not require that § 1983 claims alleging *Brady* violations establish termination indicative of innocence. *Poventud v. City of New York*, 750 F.3d 121, 137 (2d Cir. 2014) (en banc) (permitting a fair trial claim to proceed even though, after his initial conviction was overturned for a *Brady* violation, the plaintiff had pleaded guilty to a lesser offense). As already discussed, to the extent such a requirement *does* apply to *Brady* claims, Plaintiff easily meets it.

Inexplicably, the City Defendants contend that Plaintiff cannot even demonstrate that his vacatur was not "inconsistent with [] innocence," as required for Plaintiff's state law malicious prosecution claim. *Cantalino v. Danner*, 754 N.E.2d 164, 167 (N.Y. 2001). Given the record summarized above and attached to the City Defendants' pre-motion letter, that argument is spurious and the Court should not entertain it.

**2. The Complaint adequately alleges that City Defendants withheld a tape recording, police reports, and handwritten notes that would have fatally undermined the People's theory of the case.**

The City Defendants argue that Plaintiff's *Brady* claims should be dismissed because they are directed at employees of the LIRR and not at the NYPD. That is not true. The Complaint alleges that, while LIRR police obtained some of the exculpatory evidence, each of the individual City Defendants possessed the exculpatory evidence and none disclosed it. Compl. ¶¶ 379-80. Further, the Complaint specifically alleges that Javier Ramos told

ZMO Law PLLC

each of the individual City Defendants that, on the night of the murder, the vehicle purportedly used in the murder was painted a different color than the one seen leaving the crime scene. City Defendants failed to disclose this information. Compl. ¶¶ 319-20. Accordingly, there is no basis to dismiss Plaintiff's *Brady* claims.

### 3.  The Complaint plausibly alleges excessive pretrial detention.

The City Defendants dispute that, prior to trial, they were in possession of evidence that "conclusively or affirmatively established plaintiff's innocence." ECF No. 21 at 3. First, no such showing is necessary under *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007), which articulated the elements of excessive pretrial detention. Second, Plaintiff *has* plausibly alleged that the City Defendants possessed conclusive evidence that police had arrested the wrong person. For instance, the Complaint alleges that the City Defendants coerced Javier Ramos into signing a false statement accusing Plaintiff of the murder that formed the basis of Plaintiff's arrest and conviction and knew that the statement was untrue at the time. Further, the individual defendants possessed a NAGRA tape recording on which Ramos, whose car detectives said was used by Plaintiff to commit the murder, can be heard admitting that his car was inoperable on the night of the murder. Compl. ¶¶ 158-160. Accordingly, Plaintiff has adequately pled excessive pretrial detention.

### 4.  The Complaint plausibly alleges a § 1983 conspiracy.

The City Defendants argue that Plaintiff failed to plead a "meeting of the minds" among the individual defendants. ECF No. 21 at 2. To the contrary, the Complaint plausibly alleges that, on multiple occasions, the individual defendants entered into an express or tacit agreement to deprive Plaintiff of his right not to have criminal proceedings initiated against him without probable cause and not to have fabricated evidence used against him at trial. In particular, the Complaint alleges that on September 9, 1988, Defendants Beisel, Califano, and Wilde drove Javier Ramos to Cypress Hill Cemetery in Queens and threatened to kill him if he did not implicate Plaintiff in the murder, and that on March 27, 1989, Defendants Beisel, Sullivan, Zaroogian, Fennel, and Wendel coerced Javier Ramos at the 104th Precinct in Brooklyn into falsely accusing Plaintiff of murder.  Compl. ¶¶ 132-135, 189-202, 390.

### 5.  The Complaint adequately alleges that Det. Beisel targeted Plaintiff on account of his race, depriving him of the equal protection of the law.

The City Defendants argue that Plaintiff fails to plausibly allege a violation of the Equal Protection Clause against Defendant Beisel because the Complaint does not compare Plaintiff to "others similarly situated" or "plausibly allege intentional and purposeful discrimination by Det. Beisel." ECF No. 21 at 4. Not so. The Complaint alleges that two witnesses told the detectives that the victim was last seen with a white male, not a Hispanic

ZMO Law PLLC

male, Compl. ¶¶ 305-312; that, before arresting Plaintiff, Defendant Beisel told Plaintiff, who is Hispanic, "one of you spics is going down for this," Compl. ¶ 393; and that Beisel also called Javier Ramos a "spic" and "Hispanic prick," and can be heard on the NAGRA tape saying he did not want a "spic" in his car." Compl. ¶ 394-95. These allegations are sufficient to plead "unequal treatment" based on "intentional and purposeful discrimination."

## 6. The Complaint plausibly alleges failure-to-intercede claims against each individual defendant.

Because the Complaint plausibly alleges constitutional violations by each of the individual defendants and that each defendant had ample opportunity to prevent the harm caused by each other's misconduct, there is no basis for dismissing Plaintiff's failure-to-intercede claims. *Cf.* ECF No. 21 at 4.

## 7. Plaintiff's *Monell* claims are adequately pled.

### A. Policies carried out by the New York City Police Department

The City Defendants do not deny the existence of the unconstitutional policies alleged in the Complaint, but instead argue that no underlying constitutional violations occurred and that there is no "affirmative link" to the cases referenced in support of Plaintiff's *Monell* claim. The first argument fails because, as explained above, Plaintiff plausibly alleges that each individual defendant violated Plaintiff's constitutional rights. The second argument fails because the City Defendants misapprehend the pleading requirements for municipal liability.[4] The purpose of citing other examples of coercion and fabrication by the NYPD is to establish the existence of a pattern of misconduct and establish policymakers' deliberate indifference to such misconduct. *See, e.g., Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). The Complaint does both—and alleges that that the policies at issue caused violations of Plaintiff's constitutional rights. Compl. ¶¶ 443-445. There is no requirement that Plaintiff's case be otherwise "affirmatively linked" to similar instances of misconduct. *See, e.g., Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019)(requiring plaintiff to "establish a causal connection[] *or* an 'affirmative link' between *the policy* and the deprivation of his constitutional rights.") (emphasis added). Further, even without the specific cases cited in the Complaint, Plaintiff satisfies *Monell*'s pleading requirement with detailed references to the Mollen Commission Report, which found that the types of misconduct alleged in the Complaint were rampant at the time of Plaintiff's prosecution and conviction. *See, e.g., Buari v. City of New York*, No. 1:18-CV-12299-MKV, 2021 WL

---

[4] The City Defendants repeat the same meritless argument as to the *Monell* claim relating to QCDA policies.

ZMO Law PLLC

1198371, at *25 (S.D.N.Y. Mar. 30, 2021) (finding that plaintiff adequately pled an unconstitutional NYPD policy or practice based *solely* on the Mollen Commission report).

### B. Policies carried out by the Queens District Attorney's Office

First, City Defendants incorrectly state that the lone *Brady* claim is Assistant District Attorney Safran's failure to disclose the NAGRA tape. In fact, the Complaint alleges that the District Attorney's office suppressed a litany of additional exculpatory evidence referenced in ¶ 466 of the Complaint, which incorporates ¶¶ 299-321.

Second, although Plaintiff lost a 1992 post-conviction motion regarding suppression of the NAGRA tape, collateral estoppel does not apply because Plaintiff did not have a full and fair opportunity to litigate this issue. *See Bermudez v. City of New York*, 790 F.3d 368, 374 n. 2 (2d Cir. 2015) (declining to apply the "equitable doctrine" of collateral estoppel where the plaintiff's conviction was vacated *after* the decision that defendants sought to ascribe preclusive effect). *Rosario v. City of New York*, 2019 WL 4450685 at *6 (S.D.N.Y. Sept. 16, 2019) ("Regarding collateral estoppel, evidentiary rulings in a later invalidated criminal proceeding do not have preclusive effect under New York law."). After Plaintiff's appeal was denied, numerous additional *Brady* violations surfaced—some of which the DA's office acknowledged at Plaintiff's vacatur hearing. 12/30/19 Tr. at 17-18. Thus, "[g]iven the context and history of this case . . . applying issue preclusion would be inequitable" and the Court need not entertain a meritless motion to do so. *Bermudez*, 790 F.3d at 374, n. 2.

### 8. The City Defendants' remaining arguments are without merit.

Defendants Wilde, Califano and Fennel initiated and continued the criminal proceeding by threatening violence against Javier Ramos to coerce him into falsely implicating Plaintiff; they forwarded fabricated evidence to the prosecutors; and they personally withheld exculpatory information. Compl. ¶¶ 131-134, 138, 319, 321, 372-75.

Lastly, the City Defendants argue that Defendant Beisel, who signed the criminal complaint against Plaintiff, has immunity for the testimony he gave at trial. The Complaint, however, merely presents Beisel's perjurious testimony as evidence of his liability for malicious prosecution and violations of Plaintiff's fair trial rights. *See White v. Frank*, 855 F.2d 956 (2d. Cir. 1988).

### Conclusion

Plaintiff respectfully submits that no pre-motion conference is necessary because there is no legal basis for dismissing any portion of the Complaint.

ZMO Law PLLC

Very truly yours,

ZMO Law PLLC

By: *Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma
Benjamin Notterman

Encls.

CC: Mark D. Zuckerman, Esq. (via ECF and email)
Steven Silverberg, Esq. (via ECF and email)
Joel B. Rudin, Esq. (via email)