SUPREME COURT
QUEENS COUNTY
KEW GARDENS

**SUPREME COURT OF THE STATE OF NEW YORK**  2011 DEC 30  AM 9: 20
**QUEENS COUNTY: CRIMINAL TERM: PART K-11**

————————————————————X     **Indictment No.: 1568/89**

**THE PEOPLE OF THE STATE**
**OF NEW YORK,**
          *Plaintiff-Respondent,*                    **AFFIRMATION IN**
                                                     **SUPPORT OF**
**v.**                                               **MOTION TO VACATE**
                                                     **CONVICTION AND**
                                                     **SENTENCE**
                                                     **PURSUANT TO**
                                                     **C.P.L. §440.10**

**FELIPE RODRIGUEZ,**
          *Defendant-Movant*

————————————————————X


          NINA MORRISON, an attorney duly admitted to practice law in the State of New

York, hereby affirms under penalty of perjury that the following is true and correct:

          <u>**INTRODUCTION AND PROCEDURAL HISTORY**</u>

          1.     I am the Senior Litigation Counsel at the Innocence Project, Inc., in New

York, New York.  Along with Zachary Margulis-Ohnuma, Esq., of the Law Office of

Zachary Margulis-Ohnuma, I am counsel for the above-named defendant.

          2.     Since 2007, I have represented Defendant-Movant Felipe Rodriguez on a

*pro bono* basis in his efforts to secure relief from his 1990 convictions for murder in the

second degree and criminal possession of a weapon in the fourth degree.  Mr. Rodriguez

was convicted of both offenses after a May 1990 jury trial, at which it was alleged that he

was criminally responsible for the death of Maureen Fernandez, by repeatedly stabbing

Ms. Fernandez to death with a knife in the early morning hours of November 26, 1987.

3.     Mr. Rodriguez has maintained his innocence of these charges for more than thirty-one years.  He had no prior arrests or convictions before the instant case.  The Hon. Richard Sherman, who presided over the trial, noted on the record at sentencing on May 29, 1990 that Mr. Rodriguez "protests his innocence," but that in light of the jury's verdict and the nature of the crime at issue, "the Court feels it has no alternative but to sentence the defendant to the maximum term provided by law."  The Court then imposed a sentence of twenty-five years to life on the second-degree murder count, and to time served on the lesser charge of criminal possession of a weapon in the fourth degree.

4.     While serving his sentence, Mr. Rodriguez filed a N.Y. C.P.L. §440.10 motion to vacate his conviction on October 29, 1992, alleging that an audiotaped pretrial statement of a key People's trial witness, Javier Ramos, had not been provided to Mr. Rodriguez or his trial counsel, in violation of *Brady* and *Rosario*.  After a hearing before Judge Sherman on March 19, 1993, the motion was denied; the Court found that Mr. Rodriguez had not met his burden of proving that the audiotaped statement had not been provided to his counsel as *Rosario* material during trial.

5.     In 2007, the Innocence Project accepted Mr. Rodriguez's case from our long waiting list for legal representation, after a review process that spanned more than five years.  After opening Mr. Rodriguez's case, we commenced a search for biological evidence that might be suitable for DNA testing using previously unavailable DNA technology.  The Queens County District Attorney's Office consented to testing and cooperated fully in the search for DNA evidence in the City's possession.  Unfortunately, however, most of the biological evidence collected during Ms. Fernandez's autopsy that appeared to be most probative of the killer's identity was reportedly destroyed by the

2

Office of the Chief Medical Examiner shortly after autopsy, pursuant to OCME protocols in place prior to Mr. Rodriguez's trial.

6.      The parties did locate a few items of biological evidence in 2010, including (1) certain hairs collected from the decedent at autopsy and (2) DNA "extracts" from the People's earlier (pretrial) attempts to conduct DNA testing on cuttings from a vehicle seized in connection with the police investigation into the murder. However, the hairs suitable for testing turned out to be female hairs, and no DNA results were obtained from the car cutting extracts, even with advanced DNA technology.

7.      On March 12, 2014, the Innocence Project submitted a Freedom of Information Law request to the District Attorney's Office for documents from the QCDA and police files. The People responded to that request on April 13, 2015, providing responsive documents (many in redacted form) covered by FOIL from the QCDA file. In the meantime, both parties continued to search for the original NYPD file from the homicide investigation, at that time to no avail.

8.      The Innocence Project engaged Mr. Margulis-Ohnuma to assist the Innocence Project in his defense in 2015. Through co-counsel, Mr. Rodriguez submitted an application for executive clemency to Gov. Andrew Cuomo on November 3, 2016. In the petition, Mr. Rodriguez maintained his innocence, and detailed his extraordinary record of community service and achievement during more than 26 years of imprisonment. On December 30, 2016, New York Gov. Cuomo granted Mr. Rodriguez's application for a commutation of his sentence. On January 26, 2017, pursuant to the Governor's commutation order, Mr. Rodriguez was freed from prison. He was supervised by the Department of Parole for a year, which he successfully completed. Within a few

weeks of his release, he joined the Hotel Trades Council union and obtained employment at the Row NYC Hotel, where he still works today.  He got married on September 7, 2018 and is actively raising his two stepsons.

9.      Following Mr. Rodriguez's release from prison in 2017, he remained under conviction.  At the request of Mr. Rodriguez's counsel, the QCDA agreed to open a reinvestigation into Mr. Rodriguez's convictions and his claims of actual innocence.  The investigation has been led since that time by Robert J. Masters, Executive Assistant District Attorney.

10.      On December 20, 2017, Javier Ramos, the key witness against Mr. Rodriguez, recanted his trial testimony to an investigator with Mr. Margulis-Ohnuma present. Three days later, Mr. Ramos's readiness to recant was reported in an article in the New York Daily News. *See* Browne, Arthur, *His Gift of Life Reborn*, New York Daily News, December 23, 2017.

11.      Upon information and belief, while the reinvestigation was pending, in December 2017, the New York Police Department located the homicide file from its original investigation into the death of Maureen Fernandez.  Upon information and belief, that file was first provided to the QCDA in or around January 2018.  ADA Masters provided DD5s from the original file to undersigned counsel in November 2019, which included DD5s not previously produced as well as documents that had previously been disclosed under FOIL only in heavily redacted form.

12.      The full contents of the NYPD's homicide file, as well as certain other investigative leads and information discovered by the People as a result of its review of

that file, thus constituted newly discovered evidence that was unavailable to Mr.

Rodriguez prior to November 2019.

13.     In addition, upon information and belief, during the People's

reinvestigation of this matter, the QCDA reviewed additional documents prepared

between 1987 and 1989 by Long Island Railroad detectives investigating Ms.

Ferndandez's murder that were not previously part of the trial or post-conviction record.

(Ms. Ferndandez's body was found on LIRR property and thus the case proceeded as a

joint LIRR-NYPD investigation.).  The search for additional notes and documents

continued through the fall and winter of 2019. ADA Masters provided certain materials

discovered during that search to the undersigned on December 23, 2019, including certain

detectives' notes.

14.     On December 24, 2019,  ADA Masters informed the undersigned that

based upon the People's review of the NYPD file; documents prepared in connection

with the LIRR investigation; other documentary evidence now in the possession of the

QCDA; and numerous interviews of current and former law enforcement officials, the

People had concluded that Mr. Rodriguez is entitled to relief from his convictions under

N.Y. C.P.L. §440.10.

15.     Specifically, ADA Masters informed the undersigned that the People's

reinvestigation had yielded new, previously-unavailable evidence leading to the

conclusion that Mr. Rodriguez and his trial counsel were not provided with material

evidence that was favorable to the defense, and that the People had concluded that the

failure to provide the defense with this material evidence entitles him to relief under N.Y.

C.P.L. §440.10.1(h).  *See Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United*

*States,* 405 U.S. 150 (1972); *People v. Vilardi,* 76 N.Y.2d 67 (1990); *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).

16.     The newly-discovered documents provided by ADA Masters to the undersigned to date confirm the People's position. These include documents from the original investigation that would have provided the defense with additional grounds to impeach the trial testimony of Javier Ramos (the lay witness whom the defense alleged had falsely accused Mr. Ramos of the crime) as well documents that the defense could have used to impeach certain testimony by law enforcement witnesses.  The newly disclosed documents also would have provided the defense with grounds to challenge the thoroughness and integrity of the original investigation, *see Kyles v. Whitley, supra,* and may have led to the discovery of additional evidence in support of Mr. Rodriguez's innocence defense had they been timely disclosed.

17.     The People have further informed undersigned counsel that they agree that this motion to vacate is timely because Mr. Rodriguez has exercised due diligence in presenting his claim to this Court after the recent discovery and disclosure of the newly available documentary evidence and other information conveyed to the undersigned by the People as referenced above.  *See* N.Y. C.P.L. §§440.10.1(g).

18.     The undersigned have been informed that the Queens County District Attorney consents to and intends to join the undersigned in a motion to vacate Mr. Rodriguez's convictions and sentences, for reasons to be detailed more specifically on the record at the time the motion is before this Court.

19.     Accordingly, in light of the newly available information developed during the reinvestigation of Mr. Rodriguez's convictions, leading to the People's agreement

that Mr. Rodriguez's convictions were obtained in violation of his statutory and

constitutional right to due process of law, counsel for Mr. Rodriguez respectfully move

this Court for an order vacating his convictions and sentences for murder in the second

degree and criminal possession of a weapon in the fourth degree pursuant to N.Y. C.P.L.

§§440.10.1(g) and (h).

WHEREFORE, Defendant-Movant respectfully requests that this Court GRANT

his Motion to Vacate Conviction and Sentence pursuant to N.Y. C.P.L. §§440.10.1(g)

and (h) and enter an order vacating his convictions and the sentences imposed on May 29,

1990 under the above-captioned indictment.

Nina Morrison, Esq.
Senior Litigation Counsel
Innocence Project, Inc.
40 Worth Street, Suite 701
New York, NY 10013
Tel. (212) 364-5340

*Counsel for Defendant-Movant*

Dated: December 9, 2019
        New York, NY

7

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I caused a true and correct copy of the foregoing Notice of Motion and Affirmation in Support of Motion to Vacate Conviction and Sentence Pursuant to C.P.L. §440.10 to be served upon the following:

**By Hand Delivery**

Robert J. Masters
Executive Assistant District Attorney
Queens County District Attorney's Office
80-02 Kew Gardens Road, 1st Floor
Kew Gardens, NY 11415
Tel. (718) 286-6000

Nina Morrison, Esq.
*Counsel for Defendant-Movant*

8

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-11
-------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,          :     Return Date:
                                              :     December 30, 2019

                                              :     AFFIRMATION IN
                                              :     RESPONSE TO
                                              :     DEFENDANT'S
                                              :     MOTION TO VACATE
                                              :     JUDGMENT

          -against-                           :

                                              :     Queens County
                                              :     Indictment Number
FELIPE RODRIGUEZ,                             :     1568/89

                              Defendant.      :
-------------------------------------------------------------x

        **ROBERT J. MASTERS**, an attorney admitted to practice law in the State of

New York, affirms the following statements to be true under the penalties of perjury:

        1.     I am an Assistant District Attorney, of counsel to JOHN M. RYAN, the

Acting District Attorney of Queens County. I am submitting this affirmation in response to

defendant's motion to vacate his conviction pursuant to Section 440.10 of the Criminal

Procedure Law. I make the statements in this affirmation upon information and belief, based

on my review of the records and files of the Queens County District Attorney's Office.

        2.     In May, 1990, defendant was convicted of Murder in the Second

Degree, and Criminal Possession of a Weapon in the Fourth Degree, in connection with the

murder of Maureen Fernandez.

        3.     In 2007, the Innocence Project began representing defendant, and

contacted the Office of the Queens County District Attorney, requesting that this Office join its efforts to locate items of evidence suitable for DNA analysis. This Office agreed that DNA testing was appropriate in this case, and fully cooperated with the defense to locate any items of evidence that could be submitted for DNA analysis. Analysis of the few items found yielded no evidence probative of the killer's identity.

4.   On September 30, 2016, Governor Andrew Cuomo granted defendant's application for commutation of his sentence. Subsequently, in late 2017, this Office agreed to conduct a reinvestigation of defendant's case.

5.   Based upon all of the information gathered by the People during the course of their reinvestigation, and for the reasons stated on the record before this Court on December 30, 2019, the People join in defendant's application to vacate his judgment of conviction.

WHEREFORE, defendant's motion to vacate his judgment of conviction should be granted.

Dated:    Kew Gardens, New York.
          December 30, 2019

                                        Robert J. Masters
                                        Assistant District Attorney
                                        (718) 286-5900

To:    Nina Morrison, Esq.
       Senior Litigation Counsel
       Innocence Project, Inc.
       40 Worth Street, Suite 701
       New York, NY 10013