21 CV 1649 (AMD)(RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELIPE RODRIGUEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, John Beisel,*
*George Zaroogian, John Wilde, John Califano and*
*Jerry Fennel*
*100 Church Street, Room 3-133b*
*New York, N.Y. 10007*

*Of Counsel: Mark Zuckerman, Esq.*
*Tel: (212) 356-3519*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

LEGAL STANDARD ........................................................................................................... 1

ARGUMENT

      POINT I

           PLAINTIFF'S FEDERAL MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED FOR LACK OF A FAVORABLE TERMINATION ...................................................................... 3

           A. Federal Malicious Prosecution ............................................................ 3

           B. State Law Malicious Prosecution ........................................................ 7

      POINT II

           PLAINTIFF'S COUNT IV ALLEGING BRADY VIOLATIONS SHOULD BE DISMISSED AGAINST THE MOVING DEFENDANTS............................................ 8

      POINT III

           PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE MALICIOUS PROSECUTION AND DENIAL OF FAIR TRIAL BASED ON THE ALLEGED FABRICATION OF EVIDENCE ......................................... 9

      POINT IV

           COUNT V OF THE COMPLAINT ALLEGING EXCESSIVE PRETRIAL DETENTION SHOULD BE DISMISSED.....................................................................11

      POINT V

           COUNT VI OF THE COMPLAINT ALLEGING AN ACTIONABLE CONSPIRACY SHOULD BE DISMISSED.....................................................................12

      POINT VI

i

**Page**

COUNT VII OF THE COMPLAINT ALLEGING AN EQUAL PROTECTION VIOLATION AGAINST THE DEFENDANT BEISEL SHOULD BE DISMISSED......................................................................13

POINT VII

COUNT VIII OF THE COMPLAINT ALLEGING A §1981 VIOLATION AGAINST THE DEFENDANT BEISEL SHOULD BE DISMISSED......................................................................14

POINT VIII

THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY FOR ANY GRAND JURY OR OTHER TESTIMONY .................................15

POINT IX

COUNT IX OF THE COMPLAINT ALLEGING MUNICIPAL LIABILITY ARISING FROM POLICIES OF THE NYPD SHOULD BE DISMISSED......................................................................16

POINT X

COUNT XI OF THE COMPLAINT ALLEGING MUNICIPAL LIABILITY ARISING FROM POLICIES OF THE QCDA SHOULD BE DISMISSED......................................................................22

CONCLUSION................................................................................25

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                  <u>**Pages**</u>

<u>Allen v. McCurry</u>,
    449 U.S. 90 (1980) .................................................................................................... 23

<u>Almonte v. City of New York</u>,
    15 CV 6843 (PAE), 2018 U.S. Dist. LEXIS 141803
    (S.D.N.Y. Aug. 21, 2018) ......................................................................................... 22

<u>An v. City of New York</u>,
    230 F. Supp.3d 224 (S.D.N.Y. 2017) ............................................................. 18, 19, 21

<u>Aquino v. City of New York</u>,
    16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
    (S.D.N.Y. Jan. 25, 2017) ........................................................................................... 16

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2008) .................................................................................... 1, 2, 10, 11

<u>Bell Atlantic Corp. v. Twombly</u>,
    550 U.S. 544 (2007) ................................................................................................ 1, 2

<u>Bertuglia v. Schaffler</u>,
    672 F. App'x 96 (2d Cir. 2016) (Summary Order) ................................................... 13

<u>Blue v. City of New York</u>,
    16 CV 9990 (VSB), 2018 U.S. Dist. LEXIS 93509
    (S.D.N.Y. June 4, 2018) ...................................................................................... 12, 13

<u>Briscoe v. LaHue</u>,
    460 U.S. 325 (1983) .................................................................................................. 15

<u>Broder v. Cablevision Sys. Corp.</u>,
    418 F.3d 187 (2d Cir. 2005) ....................................................................................... 3

<u>Brown v. City of Oneonta, N.Y.</u>,
    221 F.3d 329 (2d Cir. 1999) ..................................................................................... 15

<u>Buechel v. Bain</u>,
    97 N.Y.2d 295 (2001) ............................................................................................... 23

<u>Calderon v. City of New York</u>,
    138 F. Supp.3d 593 (S.D.N.Y. 2015) ....................................................................... 19

<u>Chambers v. Time Warner, Inc.</u>,
    282 F.3d 147 (2d Cir. 2002) ....................................................................................... 3

**Cases**                                                                 **Pages**

Chen v. City Univ. of New York,
  11 CV 0320 (CM), 2011 U.S. Dist. LEXIS 130094
  (S.D.N.Y. Nov. 9, 2011)..........................................................................................13

City of Canton v. Harris,
  489 U.S. 378 (1989) ...............................................................................................16

Collins v. City of New York, et. al.,
  923 F. Supp.2d 462 (E.D.N.Y. 2013)......................................................................19

Connick v. Thompson,
  563 U.S. 51 (2011) ................................................................................. 19, 20, 21

Creighton v. City of New York,
  12 CV 7454 (PGG), 2017 U.S. Dist. LEXIS 21194
  (S.D.N.Y. Feb. 14, 2017)........................................................................................11

Fappiano v. City of New York,
  640 Fed. App'x 115 (2d Cir. 2016) (Summar Order) ........................................8, 9

Fate v. Charles,
  24 F. Supp. 3d 337 (S.D.N.Y. 2014).........................................................................7

Husbands ex rel. Forde v. City of New York,
  05 CV 9252 (NRB),
  2007 U.S. Dist. LEXIS 61042 (S.D.N.Y. Aug. 16, 2007)......................................12

Freedom Holdings, Inc. v. Spitzer,
  357 F.3d 205 (2d Cir. 2004) ..................................................................................13

Garnett v. Undercover Officer C0039,
  838 F.3d 265 (2d Cir. 2016) ..............................................................................4, 11

Gondola v. City of New York,
  16 CV 369 (AMD)(SJB),
  2020 U.S. Dist. LEXIS 50972 (E.D.N.Y. Mar. 24, 2020)........................................4

Harewood v. Brathwaite,
  64 F. Supp. 3d 384 (E.D.N.Y. 2014)......................................................................12

Hayes v. Schultz,
  150 A.D.2d 522 (2d Dep't 1989) ..............................................................................7

Hickerson v. City of New York,
  146 F.3d 99 (1998)..................................................................................................23

**Cases**                                                                      **Pages**

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007) ...................................................................2

Isaac v. City of New York,
    16 CV 4729 (KAM)(RLM),
    2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) ...................................17

Isaac v. City of New York,
    16 CV 4729 (KAM), 2020 U.S. Dist. LEXIS 60380
    (E.D.N.Y. Apr. 6, 2020) ........................................................................5

Jeanty v. City of Utica,
    6:16 CV 00966 (BKS)(TWD),
    2021 U.S. Dist. LEXIS 7737 (N.D.N.Y. Jan. 14, 2021) ........................... 5, 6, 7, 8

John v. Lewis,
    15 CV 5346 (PKC), 2017 U.S. Dist. LEXIS 49546
    (E.D.N.Y. Mar. 31, 2017).....................................................................23

King v. City of New York,
    12 CV 2344 (NGG)(RER)
    and 13 CV 37 (NGG)(RER),
    2014 U.S. Dist. LEXIS 140790 (E.D.N.Y. Sept. 30, 2014) ...................................11

Kravtchouk v. City of New York, et. al.,
    16 CV 4787 (RRM),
    2019 U.S. Dist. LEXIS 173982 (E.D.N.Y. Sept. 30, 2019) ...................................2

Lanning v. City of Glens Falls,
    908 F.3d 19 (2d Cir. 2018) ...................................................................4

Lazaratos v. Ruiz,
    00 CV 2221 (BSJ),
    2003 U.S. Dist. LEXIS 17511 (S.D.N.Y. Sept. 30, 2003) ....................................3

Little v. City of New York,
    487 F. Supp. 2d 426 (S.D.N.Y. 2007).......................................................12

Manganiello v. City of New York,
    612 F.3d 149 (2d Cir. 2010) ...................................................................3

Marom v. City of New York, et. al.,
    15 CV 2017 (PKC),
    2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016).....................................19

**Cases**                                                                         **Pages**

McKithen v. Brown,
   481 F.3d 89 (2d Cir. 2007) ................................................23

Mercado v. City of New York,
   08 CV 2855 (BSJ)(HP),
   2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) .....................................17

Monell v. Dep't of Social Services,
   436 U.S. 658 (1978) ................................................ 16, 17

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,
   815 F. Supp.2d 679 (S.D.N.Y. 2011) ................................................14

Neal v. Fitzpatrick,
   250 F. Supp. 2d 153 (E.D.N.Y. 2003) ................................................7

Nnodimele v. Derienzo,
   13 CV 3461 (ARR)(RLM),
   2016 U.S. Dist. LEXIS 9881 (E.D.N.Y. Jan. 27, 2016) ......................................11

Oklahoma City v. Tuttle,
   471 U.S. 808 (1985) ................................................16

Pembaur v. City of Cincinnati,
   475 U.S. 469 (1986) ................................................16

People v. Rodriguez,
   620 N.Y.S.2d 966 (2d Dep't 1994) ................................................23

Peterec v. City of New York,
   14 CV 309 (RJS),
   2015 U.S. Dist. LEXIS 28504 (S.D.N.Y. Mar. 6, 2015) ......................................18

Poventud v. City of N.Y.,
   750 F.3d 121 (2d Cir. 2014) ................................................22

Rehberg v. Paulk,
   566 U.S. 356 (2012) ................................................15

Reyes v. City of New York,
   10 CV 1838 (ILG),
   2012 U.S. Dist. LEXIS 2104 (E.D.N.Y Jan. 6, 2012) ......................................22

Reynolds v. Giuliani,
   506 F.3d 183 (2d Cir. 2007) ................................................20

**Cases**                                                                                    **Pages**

Rohman v. New York City Transit Auth.,
    215 F.3d 208 (2d Cir. 2000) .......................................................................................9

Rosario v. City of New York,
    18 CV 4023 (LGS),
    2019 U.S. Dist. LEXIS 159771 (S.D.N.Y. Sept. 16, 2019) ...........................4, 8, 9

Russo v. City of Bridgeport,
    479 F.3d 196 (2d Cir. 2007) .....................................................................................11

Russo v. New York,
    672 F.2d 1014 (2d Cir. 1982) ........................................................................ 7, 11, 12

Shaw v. City of New York,
    95 CV 9325 (AJP),
    1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997) .......................................18

Simms v. City of New York,
    480 Fed. App'x. 627 (2d Cir. 2012) (Summary Order).........................................18

Singleton v. City of New York,
    632 F.2d 185 (2d Cir. 1980) ......................................................................................4

Tieman v. City of Newburgh,
    13 CV 4178 (KMK),
    2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015).................................19, 21

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012) .....................................................................20

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985) .......................................................................................17

Walker v. City of City of New York, et. al.,
    12 CV 5902 (PAC), 2014 U.S. Dist. LEXIS 42272
    (S.D.N.Y. Mar. 18, 2014) .........................................................................................19

Walker v. City of New York, et. al.,
    14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410
    (S.D.N.Y. July 14, 2015).....................................................................................19, 21

Wong v. Yoo,
    649 F. Supp.2d 34 (E.D.N.Y. 2009).........................................................................15

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007) ...........................................................................19, 20, 21

**Cases**                                                                                    **Pages**

Yanez v. City of New York,
    29 F. Supp.2d 100 (E.D.N.Y. 1998).................................................................18

**Statutes**

42 U.S.C. § 1981..................................................................................... 14, 15

42 U.S.C. § 1983.......................................................... 4, 12, 13, 15, 16, 19, 22

C.P.L. §440........................................................................................... 6, 23

Fed. R. Civ. P. Rule 12(b)(6)...........................................................................1

Fed. Rule Civ. Proc. 8(a)(2) ............................................................................2

**Other Authorities**

Restatement (Second) of Torts §660 cmt. ...........................................................4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

FELIPE RODRIGUEZ,

                                                                    **DEFENDANTS'**
                                                                    **MEMORANDUM OF LAW**
                                                    Plaintiff,      **IN SUPPORT OF MOTION**
                                                                    **TO DISMISS**

                              -against-
                                                                    21 CV 1649 (AMD)(RLM)
THE CITY OF NEW YORK, et. al.,

                                                    Defendants.

----------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

Defendants City of New York, John Beisel, George Zaroogian, John Califano, John Wilde and Jerry Fennel, hereby respectfully submit their Memorandum of Law in support of their motion to dismiss plaintiff's amended complaint (the "Complaint") with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For the reasons set forth herein, the Complaint fails to state any claims upon which relief may be granted, thus, defendants' motion should be granted in its entirety and the Complaint dismissed with prejudice.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (quoting Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

"The Court's review of defendants' motion to dismiss is limited to the facts alleged in the complaint, documents attached to the complaint or incorporated by reference in the complaint, documents integral to the complaint, and matters of which the Court may take judicial notice." Kravtchouk v. City of New York, et. al., 16 CV 4787 (RRM), 2019 U.S. Dist. LEXIS 173982, at *8 (E.D.N.Y. Sept. 30, 2019); see also Chambers v. Time Warner, Inc., 282 F.3d 147,

153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . .

documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in

bringing suit.'").  "Even where a document is not incorporated by reference, the court may

nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which

renders the document integral to the complaint."  Chambers, 282 F.3d at 152-53.  "Insofar as the

complaint relies on the terms" of a document either annexed or deemed incorporated by

reference, the court "need not accept its description," but may look to the document itself.  See

Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).

## ARGUMENT

### POINT I

### PLAINTIFF'S FEDERAL MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED FOR LACK OF A FAVORABLE TERMINATION

#### A. Federal Malicious Prosecution

Count II of the Complaint alleges federal malicious prosecution against all

individual defendants.  To establish a claim for malicious prosecution, a plaintiff must prove "1)

the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the

proceeding in plaintiff's favor; 3) the lack of probable cause for commencing the proceeding;

and 4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York,

612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted).  The Complaint does not plausibly

allege each of these required elements against the moving defendants.

"It is the plaintiff's burden to demonstrate that charges against him were

terminated favorably."  Lazaratos v. Ruiz, 00 CV 2221 (BSJ), 2003 U.S. Dist. LEXIS 17511, at

*10 (S.D.N.Y. Sept. 30, 2003).  Following the Second Circuit's decision in Lanning v. City of

3

Glens Falls, 908 F.3d 19 (2d Cir. 2018), it is clear in this Circuit that in order to satisfy the favorable termination prong of a claim for federal malicious prosecution, a plaintiff must affirmatively demonstrate that the criminal proceedings were terminated in a manner indicative of [his] innocence.  Id., at 25.  More specifically, the Second Circuit stated that "[o]ur prior decisions requiring affirmative indications of innocence to establish 'favorable termination'…continue to govern §1983 malicious prosecution claims, regardless of developments in New York State law."  Id.  "'[U]nder the common law…it is well-settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor,' and that 'proceedings are terminated in favor of the accused' only when their final disposition is such to indicate the accused is not guilty.'"  Id., at 26 (quoting Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980)) (quoting Restatement (Second) of Torts §660 cmt. a (Am. Law Inst. 1977)).  Lanning thus makes clear that "criminal 'proceedings are 'terminated in favor of the accused'…only when their final disposition is such to indicate the innocence of the accused.'"  Id., at 27-28 (quoting Restatement (Second) of Torts §660 cmt. a).

"No single type of disposition is necessary or sufficient, but the termination must be 'measured in objective terms by examining the totality of the circumstances.'"  Rosario v. City of New York, 18 CV 4023 (LGS), 2019 U.S. Dist. LEXIS 159771, at *11 (S.D.N.Y. Sept. 16, 2019) (quoting Lanning at 28) "A dismissal that 'leaves the question of guilt or innocence unanswered . . . cannot provide the favorable termination required . . . .'"  Gondola v. City of New York, 16 CV 369 (AMD)(SJB), 2020 U.S. Dist. LEXIS 50972, at *14 (E.D.N.Y. Mar. 24, 2020) (quoting Lanning, 908 F.3d at 28-29).  Additionally, "[w]here both the prosecution and the presiding judge articulated specific reasons for the indictment's dismissal, and explicitly

disavowed any notion that their belief in Plaintiff's innocence was one of those reasons" favorable termination is not established.  Jeanty v. City of Utica, 6:16 CV 00966 (BKS/TWD), 2021 U.S. Dist. LEXIS 7737, at *95 (N.D.N.Y. Jan. 14, 2021); see also Isaac v. City of New York, 16 CV 4729 (KAM), 2020 U.S. Dist. LEXIS 60380, at *22 (E.D.N.Y. Apr. 6, 2020) ("[t]he dismissal of plaintiff's claim resulted from legal insufficiencies and does not constitute an affirmative indication of the plaintiff's innocence on the merits.").

In the totality of the circumstances, Queens County Supreme Court Justice Zayas' decision of December 30, 2019, to grant plaintiff's motion to vacate the conviction and dismiss the indictment does not constitute a favorable termination under the foregoing authorities.  Judge Zayas' decision was based solely on an alleged Brady violation by the Long Island Railroad Police, namely that a certain favorable note had not been turned over to the defense prior to plaintiff's criminal trial.[1]   (Declaration of Mark D. Zuckerman, dated August 24, 2021, (hereinafter "Zuckerman Decl.") Exhibits A, B and C).  Plaintiff's allegations in ¶2 of the Complaint that the motion was granted based in part on the "recantation by the prosecution's main witness, Javier Ramos," that plaintiff was "exonerated" as alleged on page 52 of the Complaint or that the motion was granted because plaintiff is "innocent," see Complaint, ¶348, are simply false, and not supported by the actual decision by Justice Zayas.  Justice Zayas did not rule on whether plaintiff was guilty or innocent, and that issue was left unanswered.

Taken in the totality of the circumstances, the vacatur of plaintiff's conviction does not affirmatively indicate his innocence.  As Justice Zayas stated on the record, the basis for his decision was that there were "some documents in [plaintiff's] case, some Brady Material,

---

[1] Under the authorities set forth above, the Court should consider Justice Zayas' decision, the Transcript of Hearing and the parties' submissions, as "integral" to or as incorporated by reference by the Complaint herein, or take judicial notice thereof.

some evidence that was favorable to [plaintiff] which likely would have affected the jury's verdict." (Exhibit B to Zuckerman Decl., p. 23)  The motion was not decided based upon plaintiff's guilt or innocence.  The Queens County District Attorney's Office (QCDA) only joined in plaintiff's motion for the reason that there "[was] a discovery violation." (Exhibit B to Zuckerman Decl., p. 16).  The QCDA explicitly "reject[ed] the [plaintiff's] claim of actual innocence."[2] (Exhibit B to Zuckerman Decl., p. 15)  To the contrary, the QCDA stated that plaintiff's conviction "remains presumptively valid and based on adequate evidence supported by credible circumstantial evidence."  (Exhibit B to Zuckerman Decl., p. 16)  The QCDA also stated its belief that Mr. Ramos's "trial testimony, although extensively challenged was, supported by internal logic" while his recantation was "entirely devoid of logic, adequate recall and appears to be motivated in part by intense animus towards the police." (Exhibit B to Zuckerman Decl., p. 16)  The QCDA only declined to retry the case for practical considerations including "Mr. Ramos's current disposition" (Exhibit B to Zuckerman Decl., p. 20) and his recantation.  Other practical considerations for not retrying the case included that plaintiff had already served 27 years in prison (Exhibit B to Zuckerman Decl., p. 22) and had received clemency from Governor Andrew Cuomo. (Exhibit B to Zuckerman Decl., p. 7).  Thus, the QCDA's decision not to retry the case was for practical reasons and supports rejecting plaintiff's favorable termination argument.  See Jeanty, supra, at *93 (declining to find favorable termination where there were practical considerations for not retrying plaintiff's criminal case including the fact that the plaintiff had already served his full sentence, old evidence was

---

[2] The QCDA's position on the guilt or innocence of plaintiff does factor into the totality of the circumstances analysis as to whether or not there is a favorable termination.  See Jeanty, supra, at *95.  In fact, plaintiff's counsel conceded at the hearing before Justice Zayas that plaintiff "would have had a hard time getting back into court for another [C.P.L. §440 motion] without the DA's cooperation."  (Exhibit B to Zuckerman Decl., p. 10)

destroyed, and plaintiff had a family and job). Thus, in the totality of the circumstances, there was no favorable termination based upon Justice Zayas' decision, and plaintiff's federal malicious prosecution fails for this reason alone.

## B.  <u>State Law Malicious Prosecution</u>

Plaintiff's state law malicious prosecution claim should also be dismissed for failure of plaintiff to plausibly allege a "favorable termination."  To demonstrate a favorable termination under state law, plaintiff must demonstrate that the termination of the criminal proceeding is not "inconsistent with the innocence of the accused."  <u>Neal v. Fitzpatrick</u>, 250 F. Supp. 2d 153, 154 (E.D.N.Y. 2003).  Plaintiff cannot demonstrate a "favorable termination," since, as seen, the decision to vacate the conviction was not "on the merits," "the failure to proceed [does not] 'impl[y] a lack of reasonable grounds for the prosecution.'" <u>see</u> <u>Fate v. Charles</u>, 24 F. Supp. 3d 337, 342 (S.D.N.Y. 2014) (quoting <u>Russo v. New York</u>, 672 F.2d 1014, 1019 (2d Cir. 1982)), and "leaves the question of the plaintiff's guilt or innocence unanswered." <u>See</u> <u>Hayes v. Schultz</u>, 150 A.D.2d 522 (2d Dep't 1989).

Additionally, when an indictment is dismissed for merciful and practical considerations and "both the prosecution and the presiding judge articulated specific reasons for the indictment's dismissal, and explicitly disavowed any notion that their belief in Plaintiff's innocence was one of those reasons," <u>Jeanty</u>, <u>supra</u>, 2021 U.S. Dist. LEXIS 7737, at *95, a plaintiff does not satisfy "even [] the more lenient [New York] state law standard." <u>Id.</u> at *94. Here, as seen, Justice Zayas' decision to vacate plaintiff's conviction was based limited to his belief that there were "some documents in [plaintiff's] case, some <u>Brady</u> Material, some evidence that was favorable to [plaintiff] which likely would have affected the jury's verdict." (Exhibit B to Zuckerman Decl., p. 23).  Further, as seen, the QCDA did not credit Javier Ramos' recantation, or believe it.  (Exhibit B to Zuckerman Decl., p. 16).  Finally, the QCDA's decision

not to retry plaintiff was based on the practical and merciful considerations that plaintiff had served over 26 years in jail, and Javier Ramos' "current disposition" and recantation.  (Exhibit B to Zuckerman Decl., p. 20).

### POINT II

### PLAINTIFF'S COUNT IV ALLEGING <u>BRADY</u> VIOLATIONS SHOULD BE DISMISSED AGAINST THE MOVING DEFENDANTS

In Count IV of the Complaint, plaintiff has alleged various <u>Brady</u> violations against all individual defendants.  "A fair trial claim may… arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant."  <u>Fappiano v. City of New York</u>, 640 Fed. App'x 115, 118 (2d Cir. 2016) (Summary Order).  The alleged suppression of evidence must, at a minimum, be intentional.  <u>Fappiano</u>, <u>supra</u>.  The Complaint must specify how each defendant contributed to the suppression of evidence, or the Complaint is subject to dismissal against that defendant.  <u>Rosario</u>, <u>supra</u>, at *17.

The Complaint identifies seven pieces of evidence that were allegedly exculpatory and not turned over to the defense prior to plaintiff's criminal trial.  First, plaintiff identifies the so-called "Nagra tape" as exculpatory material that was not turned over to the defense.  See Complaint, ¶¶165-174, 275-282.  However, according to the Complaint, detectives forwarded to the QCDA the "Nagra tape" prior to trial and that it was non-party trial prosecutor Alan Safran who did not turn it over to the defense before trial.  See Complaint, ¶¶275-279.  Thus, the Complaint does not plausibly allege any <u>Brady</u> violation against the moving defendants arising out of their handling of the "Nagra tape."

The remaining instances of alleged <u>Brady</u> violations are set forth in ¶¶306-328 of the Complaint:  1) LIRR Det. Sullivan's handwritten note documenting an interview of Javier Ramos.  Complaint, ¶¶306-309; 2) money that Det. Sullivan gave to witness Robert Thompson.

Complaint, ¶¶310-311; 3) LIRR Det. Wendel's handwritten note describing a conversation with witness William Perry.  Complaint, ¶¶312-316; 4) a separate note that Det. Sullivan wrote based on an interview with witness Joseph Castillo.  Complaint, ¶¶317-320; 5) notes of a photo array that LIRR Dets. Sullivan and Wendel showed to witness Joseph Castillo where Castillo picked out, allegedly, Edwin Ruiz, as the man he saw in the bar with Maureen Fernandez.  Complaint, ¶¶321-325; 6) LIRR Dets. Sullivan and Wendel's reports and notes regarding the color of the roof of the car used in the commission of the murder.  Complaint, ¶¶326-328.

As to the foregoing pieces of evidence, the Complaint is completely devoid of any plausible factual allegations against the moving defendants Beisel, Zaroogian, Califano, Wilde or Fennel, that they suppressed these pieces of evidence, much less intentionally, as required.  In fact, no facts whatsoever are alleged against them as to the alleged suppression of these pieces of evidence.  Thus, in accordance with Fappiano and Rosario, supra, plaintiff's Brady claims against the moving defendants in Count IV of the Complaint must be dismissed with prejudice.

## POINT III

### PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE MALICIOUS PROSECUTION AND DENIAL OF FAIR TRIAL BASED ON THE ALLEGED FABRICATION OF EVIDENCE

The Second Circuit has held that with respect to the first prong of the above test for malicious prosecution, "[i]nitiation in is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000).  Here, the Complaint is completely devoid of any factual allegations against the defendants Zaroogian, Califano, Wilde and Fennel, that they had any role in the prosecution of plaintiff, or even communicated with prosecutors in

any way.  There is no allegation either that they initiated the criminal complaint against plaintiff or even testified at any hearing or trial.  To the contrary, all that is alleged in the Complaint is that the defendant Beisel "signed a criminal complaint alleging that [plaintiff] murdered Maureen Fernandez on November 26, 1987." Complaint, ¶243.  As to the other defendants, plaintiff only alleges that "other detectives" forwarded allegedly fabricated evidence to the QCDA.  Complaint, ¶¶156, 245; see Complaint, ¶260.  This is exactly the type of threadbare and conclusory legal conclusion that the Iqbal court warned against, as plaintiff does not even identify the "other detectives" to which he refers, or specifically what they did.   Plaintiff's federal and state malicious prosecution claims against these defendants should therefore be dismissed with prejudice.

Plaintiff claims denial of a fair trial based on alleged fabrication of evidence by the individual defendants in Count III of the Complaint.  To prevail on a fabrication of evidence claim, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) of a material nature that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016).  "[T]he constitutional violation [of denial of fair trial] occurs when the [allegedly] false information is transmitted to prosecutors." Nnodimele v. Derienzo, 13 CV 3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *34 (E.D.N.Y. Jan. 27, 2016) (internal citations omitted).  As seen, plaintiff has failed to plead any facts as to the defendants Zaroogian, Califano Wilde and Fennel that they transmitted any allegedly false evidence to prosecutors.  ¶¶156, 245 and 260 of the Complaint are threadbare and conclusory, and are nothing more than a bare legal conclusion as to these four defendants as to the alleged transmission of allegedly false evidence to prosecutors. As to the defendant Beisel, the only specific evidence that plaintiff alleges that the defendant Beisel improperly forwarded to

prosecutors was a statement of Javier Ramos as to the alleged arrest of Richard Pereira, not plaintiff.  Complaint, ¶156.  The remaining allegations on this element of plaintiff's denial of fair trial claim based upon fabricated evidence are conclusory and do not meet the requirements of Iqbal.  Complaint, ¶¶ 245, 380, 381.  As such, plaintiff's denial of fair trial claim based on fabrication of evidence in Count III of the Complaint must be dismissed against these defendants as well pursuant to Iqbal.

**POINT IV**

**COUNT V OF THE COMPLAINT ALLEGING
EXCESSIVE    PRETRIAL    DETENTION
SHOULD BE DISMISSED**

In Count V of the Complaint, plaintiff alleges excessive pre-trial detention.  To prevail on such claim, plaintiff must show "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience."   Russo v. City of Bridgeport, 479 F.3d 196, 205 (2d Cir. 2007) (quotation marks and citation omitted).  Further, "[i]n order to satisfy the Russo standard for excessive pre-trial detention, such exculpatory evidence must have conclusively or affirmatively established [Plaintiff's] innocence." Creighton v. City of New York, 12 CV 7454 (PGG), 2017 U.S. Dist. LEXIS 21194, at *117 (S.D.N.Y. Feb. 14, 2017) (citing King v. City of New York, 12 CV 2344 (NGG)(RER) and 13 CV 37 (NGG)(RER), 2014 U.S. Dist. LEXIS 140790, at *29 (E.D.N.Y. Sept. 30, 2014) and Husbands ex rel. Forde v. City of New York, 05 CV 9252 (NRB), 2007 U.S. Dist. LEXIS 61042 at *12 (S.D.N.Y. Aug. 16, 2007)).  "The relevant factors to consider in determining whether a plaintiff's Fourth Amendment right to be free from excessive detention was violated are: (1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked;

11

and (3) the alleged intentionality of the defendants' behavior." Harewood v. Brathwaite, 64 F. Supp. 3d 384, 402 (E.D.N.Y. 2014) (citing Russo, 479 F.3d at 109-10).

Simply, the Complaint does not plausibly allege any conclusive or affirmative exculpatory evidence establishing plaintiff's innocence that was mishandled by any individual defendant such that it "shocks the conscience," or easily demonstrated plaintiff's innocence. While plaintiff takes issue with various portions of the investigation that was conducted, there simply was no conclusive or affirmative exculpatory evidence establishing his innocence, even as to the evidence that plaintiff claims was not disclosed to his counsel pre-trial, such that is "shocks the conscience."   As such, Count V of the Complaint should be dismissed with prejudice.

## POINT V

## COUNT VI OF THE COMPLAINT ALLEGING AN ACTIONABLE CONSPIRACY SHOULD BE DISMISSED

Plaintiff's Count VI against all individual defendants alleges a §1983 conspiracy. "To successfully assert a §1983 claim for conspiracy, plaintiff must show: (1) an agreement between two or more state actors … (2) to act in concert to inflict an unconstitutional injury and (3) an overt act done in furtherance of that goal causing harm to plaintiff." Little v. City of New York, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007).  "A § 1983 conspiracy claim 'will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.'"  Bertuglia v. Schaffler, 672 F. App'x 96, 102 (2d Cir. 2016) (Summary Order).  To survive dismissal, a §1983 conspiracy claim must "'provide some factual basis supporting a meeting of the minds,' such an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." Blue v.

City of New York, 16 CV 9990 (VSB), 2018 U.S. Dist. LEXIS 93509, at *26 (S.D.N.Y. June 4, 2018).

Plaintiff's §1983 conspiracy claim fails.  Though the Complaint takes issue with various aspects of the detectives' underlying investigation, the Complaint is completely devoid of any facts supporting a "meeting of the minds" of defendants to achieve an unlawful objective, and the details, including time and place, of any such alleged agreement.  As such, this claim should be easily dismissed.

**POINT VI**

**COUNT VII OF THE COMPLAINT ALLEGING AN EQUAL PROTECTION VIOLATION AGAINST THE DEFENDANT BEISEL SHOULD BE DISMISSED**

Plaintiff's Count VII alleges a violation of the Equal Protection Clause by the defendant Beisel only. "To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must… show the following: (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004).  Plaintiff "must establish that such unequal treatment was the result of intentional and purposeful discrimination." Chen v. City Univ. of New York, 11 CV 0320 (CM), 2011 U.S. Dist. LEXIS 130094, at *17 (S.D.N.Y. Nov. 9, 2011). "Selective enforcement claims require that comparators be "similarly situated in all respects." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp.2d 679, 696 (S.D.N.Y. 2011).

For a number of reasons, Count VII of the Complaint should be dismissed.  First, plaintiff has pointed to no other person who was similarly situated to him, much less in "all

respects."   While plaintiff points to other possible persons who he believes should have been considered suspects for the murder of Maureen Fernandez, none of them was similarly situated to him.   Javier Ramos testified that plaintiff borrowed the car used in the commission of the homicide on the night Maureen Fernandez was murdered, (Complaint, ¶¶261, 285) and this was supported by a witness' (Robert Thompson) lineup identification of plaintiff upon his arrest.   See Complaint, ¶238.   While plaintiff takes issue with various aspects of the underlying investigation, none of the non-Hispanic potential suspects that plaintiff contends should have been arrested instead of plaintiff, were similarly situated.   As such, this claim fails for this reason alone.

Additionally, regardless of whether plaintiff would be able to prove that the defendant Beisel used the word "spic," the Complaint is completely devoid of well pled factual allegations that Beisel caused plaintiff to be arrested based on his ethnicity, or was the result of intentional and purposeful discrimination.   As such, for this reason as well, Count VII of the Complaint should be dismissed.

### POINT VII

### COUNT VIII OF THE COMPLAINT ALLEGING A §1981 VIOLATION AGAINST THE DEFENDANT BEISEL SHOULD BE DISMISSED

Plaintiff's Count VIII alleges a violation of §1981 against the defendant Beisel only.   "To establish a claim under §1981, plaintiff 'must allege facts supporting the following elements: 1) plaintiff[] is a member[] of a racial minority; 2) defendant['s] intent to discriminate on the basis of race; and 3) discrimination concerning one of the statute's enumerated activities.'"   Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 1999).   "Section 1981 provides a remedy 'against private actors who intentionally discriminate on the basis of race or

ethnicity.'" Wong v. Yoo, 649 F. Supp.2d 34, 68 (E.D.N.Y. 2009) (internal quotations omitted). Thus, "to the extent plaintiff brings a §1981 claim against defendant [] as a public official, he must do so via §1983." Id. (internal quotations omitted).

Count VIII of the Complaint should be dismissed for a number of reasons.  First, the defendant Beisel was an NYPD detective, and therefore was a public, and not a private, actor. Complaint, ¶23.  Second, for the reasons set forth in Point VI, supra, there was not actionable discrimination as a result of plaintiff's underlying arrest.

**POINT VIII**

**THE INDIVIDUAL DEFENDANTS ARE
ENTITLED TO ABSOLUTE IMMUNITY FOR
<u>ANY GRAND JURY OR OTHER TESTIMONY</u>**

In ¶397(v) of the Complaint, plaintiff alleges that the defendant Beisel committed perjury in the grand jury, and at pretrial hearings and at trial.  However, in Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983) and Rehberg v. Paulk, 566 U.S. 356, 369 (2012), the Supreme Court extended absolute immunity to testimony in trial and grand jury proceedings, and immediate preparations for such proceedings.  As such, the defendant Beisel and the other individual defendants are absolutely immune for any testimony provided in the grand jury, at pretrial hearings or at trial.  As such, any claims against them based on their testimony, including ¶397(v) of the Complaint, should be dismissed with prejudice.

**POINT IX**

**COUNT IX OF THE COMPLAINT ALLEGING MUNICIPAL LIABILITY ARISING FROM POLICIES OF THE NYPD SHOULD BE DISMISSED**

Count IX of the Complaint alleges municipal liability against the City arising out of alleged policies or practices of the NYPD.   "In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017).  A municipality may not be held liable under § 1983 on the basis of *respondeat superior*.   Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978).  In order to hold a municipality liable as a "person" within the meaning of §1983, a plaintiff must establish that the municipality itself was somehow at fault.  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see  Monell, supra, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

"The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . .  Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights."  Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).  "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation."  Mercado v. City of New York, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell, 436 U.S. at 691, 694).

Count IX of the Complaint should be dismissed for a number of reasons.  Initially, plaintiff has not plausibly alleged municipal liability arising out of conduct by the NYPD.  Count IX contains mainly boilerplate and conclusory legal conclusions which indiscriminately mix up various elements of the foregoing four theories of municipal liability.  To the extent that plaintiff is making such claims, the first and second theories of municipal liability are easily disposed of.  First, the Complaint does not suggest a formal policy of the City of any kind which caused his injuries.  Thus, plaintiff cannot rely on such theory.  Second, plaintiff has not pointed to a specific decision of any municipal policymaker that caused him injury.  As such, plaintiff cannot rely on the second theory of municipal liability set forth above either.

Plaintiff does, however, make reference to a Mollen Commission report of July, 1994, nearly seven years **after** Maureen Fernandez's death, (Complaint, ¶¶443-460) and other criminal cases (Complaint, ¶¶462, 464) in Count IX of the Complaint, seemingly in an effort to plausibly allege a municipal "custom or usage."  However, courts have rejected attempts to rely upon the Mollen Commission Report as evidence of a City policy without making a connection to the specific facts of the case.   Isaac v. City of New York, 16 CV 4729 (KAM)(RLM), 2018

U.S. Dist. LEXIS 132995, at *51-52 (E.D.N.Y. Aug. 6, 2018) (M.J. Mann) (dismissing municipal liability custom and usage claim as Mollen report was "unavailing" since complaint did not sufficiently connect Mollen report to facts of case); see Yanez v. City of New York, 29 F. Supp.2d 100, 112 & n.6 (E.D.N.Y. 1998) (summary judgment granted where plaintiff did not sufficiently connect Mollen report to facts of case); Shaw v. City of New York, 95 CV 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *27 (S.D.N.Y. Apr. 15, 1997) (M.J. Peck) (in finding the Mollen Report inadmissible, the Court noted that, "[i]f the Mollen Commission Report were held admissible here, it logically would be admissible in every suit, civil and criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer.  Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified.")  This Court should likewise reject plaintiff's attempted use of the Mollen report to demonstrate municipal liability herein, as it was published seven years after the subject investigation herein began, and plaintiff has not sufficiently connected it to the facts of this case as alleged in the Complaint.

Further, plaintiff's references to an inadequately few irrelevant criminal cases in ¶¶462 and 464 of the Complaint, which are not alleged to have resulted in liability of the City, fall short of plausibly alleging a municipal "custom or usage."  See An v. City of New York, 230 F. Supp.3d 224, 229-30 (S.D.N.Y. 2017) (six lawsuits over period of four years insufficient to demonstrate widespread custom or practice); Peterec v. City of New York, 14 CV 309 (RJS), 2015 U.S. Dist. LEXIS 28504, at *18-19 (S.D.N.Y. Mar. 6, 2015) (granting motion to dismiss because "[p]laintiff's references to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to Plaintiff's alleged violation."); Simms v. City of New York, 480 Fed. App'x. 627,

630 (2d Cir. 2012) (Summary Order) ("[A]ll that the complaint references to the other action is that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as Simms alleges here, not that those violations actually occurred.") An, supra, at 229-30; Tieman v. City of Newburgh, 13 CV 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48 (S.D.N.Y. Mar. 26, 2015); Walker v. City of New York, et. al., 14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410, at *19-24 (S.D.N.Y. July 14, 2015); Walker v. City of City of New York, et. al., 12 CV 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *6 (S.D.N.Y. Mar. 18, 2014); Calderon v. City of New York, 138 F. Supp.3d 593, 613 (S.D.N.Y. 2015); Collins v. City of New York, et. al., 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013); Marom v. City of New York, et. al., 15 CV 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *73 (S.D.N.Y. Mar. 7, 2016).  For this reason as well, plaintiff has not plausibly alleged a municipal "custom or usage."

   With respect to plaintiff's failure to train theory, such is not plausibly alleged either.   A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).  "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under §1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983."  Id.

("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

"[W]here a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation." Wray, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick, 563 U.S. at 61.  With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").  "[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

Plaintiff's failure to train theory fails for a number of reasons.  First, plaintiff has not alleged a "pattern of similar constitutional violations by untrained employees" necessary to plausibly allege deliberate indifference.  Plaintiff inadequately points to only one other unrelated case in ¶436 of the Complaint.  See Connick, supra, at 62; An at 231.  (collecting cases).

Second, plaintiff has not pointed to a specific deficiency in any NYPD training program that is closely related to his alleged injury as required.  See Wray, supra, at 196.

Third, plaintiff has also failed to plead that the City did not investigate any other "similar incidents" alleged in the Complaint, which is a necessary element of such a claim. Walker, supra, 2015 U.S. Dist. LEXIS 91410, at *29 ("although Plaintiff alleges a pattern of allegations about similar misconduct, he does not specifically claim that the City failed to investigate the list of lawsuits."); Tieman, supra, at *61-63 (allegations of other instances of excessive force by themselves inadequate to raise an inference of deliberate indifference); An, supra, at 231 (complaint was inadequate as there was no allegation that the City, once on notice of a deficiency in its training programs, failed to investigate any such inadequacy).

Finally, all of plaintiff's municipal liability claims fail against the City arising out of conduct by the NYPD fail as the Complaint does not plausibly allege that any City policy or custom was the "moving force" behind the conduct complained of.    There are simply no facts in the Complaint connecting alleged customs and practices of the NYPD to plaintiff's factual allegations related to his arrest and prosecution.   Such theories thus fail based on lack of causation.

## POINT X

**COUNT XI OF THE COMPLAINT ALLEGING MUNICIPAL LIABILITY ARISING FROM POLICIES OF THE QCDA SHOULD BE DISMISSED**

Count XI of the Complaint alleges municipal liability against the City arising out of policies and practices by the QCDA.  Plaintiff's Count XI should be dismissed for a number of reasons.  First, plaintiff cannot establish an underlying constitutional violation.  "[A] prosecutor's failure to turn over exculpatory or impeachment evidence is a <u>Brady</u> violation rising to the level of constitutional error only when this failure 'undermine[s] confidence in the outcome of the trial.  The mere failure to disclose favorable evidence is not enough, because such a rule 'would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments.'"  <u>Poventud v. City of N.Y.</u>, 750 F.3d 121 (2d Cir. 2014) (internal quotations omitted).  The only alleged <u>Brady</u> material that plaintiff has alleged was received by the QCDA, but was not turned over to the defense, is the so-called "Nagra tape."  See Complaint, ¶¶275-279, 491.[3]

"Courts in this circuit have repeatedly barred § 1983 plaintiffs from relitigating in federal court issues decided against them in state criminal proceedings."  <u>Reyes v. City of New York</u>, 10 CV 1838 (ILG), 2012 U.S. Dist. LEXIS 2104, at *9 (E.D.N.Y Jan. 6, 2012).  This is because "[t]he Supreme Court has long since removed any doubt that the doctrine of collateral estoppel applies to actions brought under § 1983."  <u>Almonte v. City of New York</u>, 15 CV 6843

---

[3] While plaintiff attempts to allege that the evidence referenced in ¶¶306-328 of the Complaint, which was allegedly suppressed by the LIRR police, should also be the responsibility of the QCDA for any failure of the defense to have received it pre-trial, see Complaint, ¶492, nowhere in the Complaint is it plausibly alleged that the QCDA knew of such evidence or received it from the LIRR police.  As such, this evidence cannot be plausible basis of plaintiff's municipal liability claim arising out of alleged customs or practices of the QCDA as alleged in Count XI of the Complaint.

(PAE), 2018 U.S. Dist. LEXIS 141803, at *7 (S.D.N.Y. Aug. 21, 2018) (citing Allen v. McCurry, 449 U.S. 90, 104-05, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). "[I]n determining whether … issue preclusion applies, [the] inquiry is governed by New York state law." McKithen v. Brown, 481 F.3d 89, 103 (2d Cir. 2007). "Under New York law, collateral estoppel will preclude a federal court from deciding an issue if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" John v. Lewis, 15 CV 5346 (PKC), 2017 U.S. Dist. LEXIS 49546, at *19-20 (E.D.N.Y. Mar. 31, 2017) (quoting McKithen, supra, at 105). "Plaintiff[], [when acting] as the part[y] opposing the application of collateral estoppel, bear[s] the burden of proving that [he was] denied this full and fair opportunity." Id. at *22 (quoting Hickerson v. City of New York, 146 F.3d 99, 109 (1998)).

The Court of Appeals of New York has noted that "[t]he equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules." Buechel v. Bain, 97 N.Y.2d 295, 303 (2001). The doctrine "is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. 'In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.'" Id. at 304. (internal quotations omitted).

This issue was heavily litigated in prior motions by plaintiff pursuant to C.P.L §440 (including evidentiary hearings), and writs of *habeas corpus*, and were all decided against plaintiff. See People v. Rodriguez, 620 N.Y.S.2d 966 (2d Dep't 1994) and Exhibits D and E to

the Zuckerman Decl.  The Queens County Supreme Court specifically found after the evidentiary hearing in 1993 that **the "Nagra tape" had been turned over to the defense** and found no discovery violation whatsoever.  (Zuckerman Decl., Ex. D)  These decisions, of which the Court should take judicial notice and/or find to be integral to the Complaint, should be given preclusive effect as to plaintiff's present claim that the "Nagra tape" was not turned over to the defense by QCDA trial prosecutor Alan Safran.  The exact issue which plaintiff now wishes to litigate yet again, whether the "Nagra tape" was turned over to the defense, was fully litigated upon plaintiff' C.P.L. 440 motion, and plaintiff had a full and fair opportunity to litigate it.  The issue was decided against him.  Further, as this issue was litigated post-conviction, and since the decision still stands, plaintiff cannot rely, in opposing collateral estoppel, on cases which decline to apply collateral estoppel where a conviction was subsequently vacated on other grounds.  As such, there was no underlying constitutional violation, and plaintiff's municipal liability claim against the City arising out of conduct by the QCDA should be dismissed with prejudice for this reason.

Second, plaintiff fails to plausibly alleged that any policies or practices of the QCDA were the "moving force" behind the allegation that former prosecutor Alan Safran failed to turn over the "Nagra tape" to the defense.  The Complaint fails to connect any policies or practices of the QCDA to the alleged constitutional violation in this case.  Thus, such claim fails based on lack of causation for this reason as well.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss should be granted in its

entirety and plaintiff's First Amended Complaint dismissed with prejudice in its entirety.

Dated:  New York, New York
     August 26, 2021

       GEORGIA M. PESTANA
       Corporation Counsel of the
        City of New York
       Attorney for Defendants City of New York, John
       Beisel, George Zaroogian, John Wilde, John
       Califano and Jerry Fennel
       100 Church Street, Room 3-133b
       New York, New York 10007
       (212) 356-3519

     By:  /s/ Mark D. Zuckerman
        MARK D. ZUCKERMAN
        Senior Counsel