UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELIPE RODRIGUEZ,

                        Plaintiff,                                             21 Civ. 1649 (AMD)(RLM)

               - against -

THE CITY OF NEW YORK,
METROPOLITAN TRANSPORTATION
AUTHORITY, LONG ISLAND RAIL
ROAD COMPANY, JOHN BEISEL, in his
individual and official capacities; THOMAS
SULLIVAN,
in his individual and official capacities;
CHARLES WENDEL, in his individual and
official capacities; JERRY FENNEL, in his
individual and official capacities; JOHN
CALIFANO, in his individual and official
capacities; JOHN WILDE, in his individual
and official capacities; GEORGE
ZAROOGIAN, in his individual and official
capacities; and OTHER AS-YET-
UNKNOWN POLICE
OFFICERS & SUPERVISORS JOHN and
JANE DOES # 1–10,

                              Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF MTA DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ALLEGED FACTS ............................................................................................................ 3

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT ..................................................................................................................... 9

   I.     THE MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED .................. 9

     A.  Plaintiff Failed to Plead a Viable Malicious Prosecution Claim against Detectives
Sullivan and Wendel. ................................................................................................. 10

       1.   Detectives Sullivan and Wendell Did Not Initiate the Criminal Proceedings .... 10

          a.   There Are No Allegations that Sullivan or Wendel Knowingly Furnished False
Information to the Prosecutor ........................................................................ 11

          b.   The Allegations Demonstrate Sullivan and Wendel Appropriately Documented
Their Investigation ........................................................................................ 13

          c.   The District Attorney Independently Decided to Bring Charges ................... 14

       2.   Plaintiff Cannot Establish the Element of Favorable Termination .................... 14

          a.   Favorable Termination Under Federal Law ................................................... 14

          b.   Favorable Termination Under State Law ....................................................... 16

       3.   There Was Probable Cause for the QCDA to Prosecute Plaintiff...................... 16

       4.   Plaintiff Does Not Allege Detectives Sullivan or Wendel Acted With Malice .. 18

     B.  The Malicious Prosecution Claim Must be Dismissed as Against
LIRR and MTA ........................................................................................................... 19

   II.   PLAINTIFF'S EXCESSIVE PRETRIAL DETENTION CLAIM MUST BE
DISMISSED ................................................................................................................ 20

   III.  PLAINTIFF'S CIVIL RIGHTS CONSPIRACY CLAIM MUST BE
DISMISSED ................................................................................................................ 21

   IV.  PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIDNT TO ESTABLSH
MUNICIPAL LIABILITY AGAINST THE MTA AND LIRR............................... 22

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Adamou v. Doyle,*
    707 F. App'x 745 (2d Cir. 2018) ...................................................................... 13-14

*Alcantara v. City of New York,*
    646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009)..............................................................14

*Amnesty Am. V. Town of W. Hartford,*
    361 F.3d 113, 130 (2d Cir. 2004)..........................................................................24

*Andersen v. Long Island R.R.,*
    88 A.D.2d 328
    *aff'd*, 59 N.Y.2d 895 (1983) ................................................................................. 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................... 8

*Barnes v. City of New York,*
    No. 17-CV-1303, 2021 WL 260092 (E.D.N.Y. Jan. 26, 2021) ....................... 14, 19

*Bd. of Cnty. Comm'rs v. Brown,*
    520 U.S. 397 (1997) ............................................................................................. 23

*Bellamy v. City of New York,*
    914 F.3d 727 (2d Cir. 2019) ..................................................................... 23, 23-24

*Bell Atlantic v. Twombly,*
    550 U.S. 544, 570 (2007) ....................................................................................... 8

*Bermudez v. City of New York,*
    790 F.3d 368, 377 (2d Cir. 2015)..........................................................................17

*Blue v. City of New York,*
    No. 16-CV-9990, 2018 WL 2561023 (S.D.N.Y. June 4, 2018) ........................... 22

*Bonds v. City of New York,*
    No. 12-CV-1772, 2014 WL 2440542 (E.D.N.Y. May 30, 2014) ......................... 11

*Breen v. Garrison,*
    169 F.3d 152 (2d Cir. 1999) ................................................................................. 16

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005) ................................................................................... 9

*Burgess v. DeJoseph,*
    725 F. App'x 36 (2d Cir. 2018) ............................................................................ 18

*Byrd v. Metro. Transit Auth.,*
    No. 15-CV-1364, 2015 WL 4546718 (E.D.N.Y. July 28, 2015) .......................... 22

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) ............................................................... 9

*Ciambriello v. County of Nassau*,
 292 F.3d 307 (2d Cir. 2002) ............................................................... 21

*Curley v. Vill. of Suffern*,
 268 F.3d 65, 70 (2d Cir. 2001)........................................................ 16-17

*Debrosse v. City of New York*,
 739 F. App'x 48 (2d Cir. 2018) ...................................................... 17, 18

*Frederique v. Cty. of Nassau*,
 168 F. Supp. 3d 455 (E.D.N.Y. 2016) ................................................ 11

*Frost v. N.Y.C. Police Dep't*,
 980 F.3d 231 (2d Cir. 2020) ............................................................... 16

*Garcia v. Gridley*,
 No. 16-CV-6180, 2020 WL 2523049 (E.D.N.Y. May 18, 2020) ............... 19

*Gleeson v. County of Nassau*,
 No. 15-CV-6487, 2019 WL 4754326 (E.D.N.Y. Sept. 30, 2019) ............... 23

*Gondola v. City of New York*,
 No. 16-cv-369, 2020 WL 1433874 (E.D.N.Y. Mar. 24, 2020) ............... 15

*Gonzalez v. New York City*,
 No. 16-cv-00254, 2016 WL 7188147 (S.D.N.Y. Dec. 2, 2016) ............... 20

*Greene v. City of New York*,
 No. 08-cv-243, 2017 WL 1030707 (E.D.N.Y. Mar. 15, 2017)
 *a'ffd*, 742 F. App'x 532 (2d Cir. 2018) ...................................... 10, 18

*Harris v. Howard*,
 No. 08 Civ. 4837, 2009 WL 3682537 (S.D.N.Y. Oct. 30, 2009) ............... 9

*Harrison v. State*,
 No. 14-CV-1296, 2021 WL 1176146 (E.D.N.Y. Mar. 29, 2021) ............ 17, 24

*Hartline v. Gallo*,
 546 F.3d 95, 99 n.3 (2d Cir. 2008)...................................................... 22

*Herrera-Amador v. N.Y.C. Police Dep't*,
 No. 16-CV-5915, 2021 WL 3012583 (E.D.N.Y. 2021) ...................... 11, 17, 18

*Jacobs v. Metro. Transportation Auth.*,
 180 A.D.3d 657 (2d Dep't 2020) ........................................................ 20

*Jeanty v. City of Utica*,
 No. 6:16-cv-00966, 2021 WL 149051 (N.D.N.Y. Jan. 14, 2021) ............ 15, 16

iii

*Jett v. Dallas Ind. Sch. Dist.*,
   491 U.S. 701, 737 (1989)...................................................................................23

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
   921 F. Supp. 2d 197 (S.D.N.Y. 2013) .................................................................. 21

*King v. City of New York*,
   Nos. 12-CV-2344, 13-CV-0037, 2014 WL 4954621 (E.D.N.Y. Sep. 30, 2014) ............ 20-21

*Lanning v. City of Glens Falls*,
   908 F.3d 19 (2d Cir. 2018) .......................................................... 10, 14, 15, 16

*Leon v. Murphy*,
   988 F.2d 303 (2d Cir. 1993) ............................................................................ 22

*Lowth v. Town of Cheektowaga*,
   82 F.3d 563 (2d Cir. 1996) ............................................................................. 18

*Manganiello v. City of New York*,
   612 F.3d 149, 161 (2d Cir. 2010)......................................................................10

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ...................................................................................... 22

*Morse v. Fausto*,
   804 F.3d 538, 548 (2d Cir. 2015) ......................................................................11

*Nardelli v. Stamberg*,
   44 N.Y.2d 500, 502–03 (1978)..........................................................................18

*Nash v. County of Nassau*,
   No. 16-CV-2148, 2019 WL 1367159 (E.D.N.Y. Mar. 26, 2019) .......................... 17

*Newson v. City of New York*,
   No. 16-CV-6773, 2019 WL 3997466 (E.D.N.Y. Aug. 23, 2019) .......................... 11

*Noonan v. Long Island R.R.*,
   No. 10-CV-2994, 158 A.D.2d 392 (1st Dep't 1990) .............................................. 19

*Nzegwu v. Friedman*,
   No. 10-CV-2994, 2014 WL 1311428 (E.D.N.Y. Mar. 31, 2014) .......................... 17

*Oklahoma City v. Tuttle*,
   471 U.S. 841 (1985) ...................................................................................... 24

*Pacicca v. Stead*,
   456 F. App'x 9 (2d Cir. 2011) ...................................................................... 12, 13

*Pierre v. Rocco*,
   No. 17-CV-4657, 2021 WL 950021 (E.D.N.Y. Mar. 12, 2021) ........................... 10

*Rehberg v. Paulk*,
    566 U.S. 356, 369 (2012) ...................................................................................14

*Rosario v. City of New York*,
    No. 18 Civ. 4023, 2019 WL 4450685 (S.D.N.Y. Sept. 16, 2019) ......................... 15

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ................................................................................... 9

*Russo v. City of Bridgeport*,
    479 F.3d 196, 205 (2d Cir. 2007) .........................................................................20

*Shaw v. Long Island R.R.*,
    No. 16-cv-6972, 2017 WL 5634122 (E.D.N.Y. Nov. 21, 2017) ........................... 20

*Stampf v. Metro. Transp. Auth.*,
    57 A.D.3d 222 (1st Dep't 2008) ........................................................................... 19

*Stansbury v. Wertman*,
    721 F.3d 84 (2d Cir. 2013) .................................................................................. 17

*Treanor v. Metro. Transp. Auth.*,
    414 F. Supp. 2d 297 (S.D.N.Y. 2005) .................................................................. 20

*Tyler v. Maggio*,
    No. 20-CV-1714, 2020 WL 7125076 (E.D.N.Y. Dec. 4, 2020) ........................... 16

*Vassiliou v. City of New York*,
    No. 18-CV-0779, 2021 WL 76916 (E.D.N.Y. Jan. 7, 2021) ................................ 24

*Weiss v. Inc. Vill. Of Sag Harbor*
    762 F. Supp. 2d 560 (E.D.N.Y. 2011) ................................................................... 9

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................................................... 9

## Statutes

42 U.S.C. § 1983 ........................................................................................... *passim*

Public Authorities Law § 1276 ........................................................................ 20

## Rules

Fed. R. Civ. P. 12 ............................................................................................... 1

Defendants Metropolitan Transportation Authority ("MTA"), Long Island Rail Road Company ("LIRR") and retired Detectives Thomas Sullivan and Charles Wendel (together "MTA Defendants"), by and through their counsel Hoguet Newman Regal & Kenney, LLP, respectfully submit this memorandum of law in support of their partial motion to dismiss Plaintiff's Amended Complaint (Complaint") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case arises from Plaintiff's arrest, prosecution, and 1990 conviction on homicide charges relating to the 1987 death of Maureen Fernandez.  Plaintiff's conviction was vacated in 2019, due to a purported non-disclosure of certain documents by the Queens District Attorney's Office ("QCDA") during the criminal trial. The homicide investigation was conducted by the New York City Police Department ("NYPD"), with the assistance of the now-defunct Long Island Rail Road Police Department ("LIRR PD") because the victim was found on LIRR property.  Plaintiff was arrested by the NYPD.  Plaintiff was prosecuted by the QCDA, and convicted by a jury of his peers.  His conviction was vacated after it was discovered that certain evidence from the criminal investigation was not turned over during Plaintiff's criminal trial.  After nearly 27 years, the QCDA elected not to re-try the case.

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 and under New York state law for purported violations of his constitutional and common law rights stemming from alleged misconduct during the police investigation and prosecution leading to his homicide conviction. Although the investigation was led by the NYPD, and the prosecution was handled by the QCDA, Plaintiff brings claims against retired LIRR PD Detectives Thomas Sullivan and Charles Wendel in their individual capacities for the assistance they provided to the NYPD in investigating the murder.  Plaintiff also brings claims against the LIRR and its corporate parent, the MTA, under 42

1

U.S.C. §1983 on the basis that their policies and practices purportedly caused the alleged violations of Plaintiff's constitutional rights, and for malicious prosecution under a theory of respondeat superior.

For the reasons set forth below, Plaintiff fails to state a claim upon which relief may be granted with respect to Counts I, II, V, VI, and X of the Amended Complaint.[1]    Specifically, Plaintiff's malicious prosecution allegations under state and federal law (Counts I and II) against LIRR PD Detectives Sullivan and Wendel fail to establish the required elements for such a claim. First, Sullivan and Wendell did not initiate the prosecution against Plaintiff.  The prosecution was initiated by an NYPD Detective, John Beisel, who led the criminal investigation.  Second, that investigation, which spanned more than a year, established sufficient probable cause to prosecute Plaintiff for murder.  Third, Plaintiff fails to plausibly allege that Sullivan and Wendel acted with malice towards him.  Instead, the allegations confirm that Sullivan and Wendel acted appropriately while supporting the NYPD's murder investigation, and certainly that they did not knowingly furnish false information to the prosecutor or bury exculpatory evidence.  Finally, because Plaintiff's conviction was reversed on procedural grounds – specifically the failure of the QCDA to disclose certain evidence – Plaintiff cannot show that the prosecution was favorably terminated as a matter of law.

Plaintiff's malicious prosecution claim under state law against the LIRR and MTA fails for all of these reasons, and more.  Plaintiff failed to file a required pre-suit demand on the LIRR as required by the Public Authorities Law He therefore cannot sustain his state law claim against

---

[1] Defendants Sullivan and Wendel do not move to dismiss the denial of due process and fair trial claims (Counts III and IV) as alleged against them at this time, through respectfully reserve their right to seek the dismissal of these claims at a later stage of these proceedings. The remaining claims (Counts VII, VIII, IX and XI) are brought solely against the City of New York and one of its individual police officers.

LIRR.  Moreover, plaintiff's state law claim against the MTA must be dismissed because Sullivan and Wendel were employed by the LIRR, not the MTA.

Plaintiff's § 1983 claims for excessive pre-trial detention (Count V) and civil rights conspiracy (Count VI) alleged against Sullivan and Wendel also must be dismissed on the pleadings.  The Complaint contains no plausible allegations that any evidence purportedly suppressed or mishandled by Sullivan or Wendel conclusively established Plaintiff's innocence. Similarly, there are no facts supporting a "meeting of the minds" to act in concert with NYPD detectives, or anyone else, to inflict an unconstitutional injury.

Finally, Plaintiff's municipal liability claim under § 1983 against the MTA and LIRR (Count X) must also be dismissed.  Besides purely conclusory assertions, Plaintiff otherwise relies entirely on the allegations against the two individual MTA Defendants – an insufficient basis for municipal liability under § 1983.   He does not plausibly allege as he is required to do under the *Monell* doctrine that a "policy or custom" attributable to the MTA or LIRR was "the moving force behind" any of the alleged constitutional violations he complains of.  Rather, Plaintiff pleads that the NYPD was responsible for the criminal investigation, and that the QCDA handled the prosecution and post-conviction proceedings.  Simply put, Plaintiff makes no effort to identify an MTA or LIRR policy implicated by his alleged constitutional injury, because there are none.

## **ALLEGED FACTS**[2]

On November 26, 1987, the Maureen Fernandez's body was discovered near an industrial lot in Glendale, Queens on property belonging to LIRR.  (First Am. Compl. ("FAC") ¶¶ 39-40, 51.)  Because the victim was found on property belonging to LIRR, the LIRR PD assisted the

---

[2] The following facts are drawn from Plaintiff's Amended Complaint and are assumed to be true only for purposes of the motion to dismiss.

NYPD investigation into Fernandez's death.  (*Id*. ¶ 51.)  The investigation was led by NYPD Detective John Beisel.  (*Id*. ¶ 114.)

### A.    The NYPD Investigation

The murder investigation spanned several years, focusing at times on several persons of interest. (*See, e.g., id*. ¶¶ 62-63, 83, 97, 101-02, 107.)  During the investigation, detectives learned that Fernandez was seen with an unidentified man at the Little Liva Bar in Brooklyn, hours before she was believed to have been murdered.  (*Id*. ¶ 59.) Eyewitnesses reported seeing Fernandez at the bar between the hours of 2:00 a.m. and 3:30 a.m.  (*Id*.; NYPD Detective Division Follow Up Reports ("DD-5s") Nos. 12, 99, 103, annexed to the Silverberg Declaration ("Silverberg Decl." as Exhibit 2.)

Two vehicles were of particular interest to the investigation – a black Monte Carlo and a white Cadillac or Oldsmobile.  The Monte Carlo was believed to have been observed parked outside the Little Liva Bar when Fernandez was inside.  (*Id*. at DD-5 #103; FAC ¶ 62.)  The white car was observed leaving the industrial lot between 3:00 a.m. and 4:00 a.m. the morning of the murder.  (*Id*. ¶ 48.)

In or about April 1988, Detective Beisel focused the criminal investigation on the white vehicle observed near the murder location.  (*Id*. ¶ 115.)  That month, detectives located a white Oldsmobile which had been owned by a Wycoff Heights Hospital security guard, Javier Ramos, at the time of the murder.  (*Id*. ¶¶ 116-17, 122-23.)

In September 1988 Ramos voluntarily went to the 104th Precinct to make an inquiry about the car, and while there, he was questioned by Detective Beisel.  (*Id*. ¶¶ 124-27.)  Ramos told detectives that he had loaned his car in the past to two friends, Richard Pereira and the Plaintiff.

(*Id.* ¶ 136.)   At that point, both Plaintiff and Pereira became persons of interest to the murder investigation.  (*Id.* ¶ 143.)

Detectives located Pereira and placed him in a police lineup.  Eyewitnesses failed to make a positive identification, and Pereira was released.  (*Id.* ¶¶ 159, 161-62.)  Later in September 1988, Detective Beisel conducted an interview with Plaintiff's wife, Gladys Rodriguez.  (*Id.* ¶ 175.) Beisel documented in an investigation report that Gladys could not remember where Plaintiff was on the night of the murder and the following morning; and that Plaintiff "would borrow [Ramos'] car whenever he needed."  (*Id.* ¶ 181.)  Thereafter, Plaintiff was interviewed by Detective Beisel. (*Id.* ¶¶ 184-86.)  Plaintiff denied any knowledge about an incident involving Ramos' car on the night of the murder.  (*Id*. ¶ 186.)

Over the next several months, Detective Beisel conducted additional interviews with Ramos. (*Id.* ¶ 192.)  On March 27, Beisel questioned Ramos for several hours until Ramos agreed to provide a written statement.  (*Id.* ¶¶ 199, 202.)  Queens County Assistant District Attorney David Dikman was called to the precinct to prepare the affidavit.  (*Id.* ¶ 202.)  The affidavit stated that Plaintiff called Ramos on Thanksgiving eve 1987 and asked to borrow his car, and Ramos agreed; that Plaintiff promised to have the car back at the hospital by midnight, but instead returned the car at 6:00 a.m. to Ramos' apartment; and that Plaintiff admitted to getting into an altercation with a "bitch" and then stabbing her to show her she "was dealing with a man, not some boy."  (*Id.* ¶ 206.)  The affidavit was signed by Ramos and Det. Sullivan and notarized by ADA Dikman.  (*Id.* ¶ 208.)

On or around March 27, 1989, ADA Dikman authorized Det. Beisel to arrest Plaintiff for the murder.  (*Id.* ¶ 210.)   At the 104th Precinct, Plaintiff was questioned and handcuffed by Detective Beisel.  (*Id.* ¶¶ 211, 213, 217, 225.)  Beisel placed Plaintiff in a lineup.  (*Id.* ¶¶ 229-30.)

Plaintiff was positively identified by an eyewitness, Robert Thompson, who was at the bar on the might of the murder. (*Id.* ¶¶ 231, 238.)

On March 28, 1989, Det. Beisel signed a criminal complaint alleging that Plaintiff murdered Maureen Fernandez. (*Id.* ¶ 243.) ADA Dikman was assigned to the case, and he thereafter sought and obtained the DA's approval to seek an indictment against Plaintiff. (*Id.* ¶¶ 244, 246-54, 258.)

At grand jury, Javier Ramos testified that Plaintiff borrowed his car on the night of the murder and admitted to the stabbing. (*Id.* ¶ 261.) Thompson testified that, at the lineup, he recognized Plaintiff as the man he saw at the bar with Fernandez shortly before she was murdered; and Joseph Castillo, the bartender on the night in question, testified that he identified Plaintiff in a photo array. (*Id.* ¶¶ 264, 266.) Plaintiff was indicted on the charges of murder in the second degree and criminal possession of a weapon in the fourth degree. (*Id.* ¶ 268.)

Plaintiff was tried in Queens Supreme Court before Justice Ralph Sherman from April 23 to May 2, 1990. (*Id.* ¶ 272.) The Queens DA was given the underlying investigation file, which consisted of more than 200 follow up reports ("DD-5s"). (*Id.* ¶ 273.) At trial, Ramos testified that Plaintiff borrowed his car the night before the murder, and when Plaintiff returned it, there was "a red substance with a foul smell" that was not in the car the previous day. (*Id.* ¶ 287.) Again, Ramos testified that Plaintiff confessed to the murder. (*Id.* ¶ 285.) Robert Thompson, Joseph Castillo, Thomas Rosa, Patricia Owens, and Detective Beisel also testified. (*See, e.g.*, *id.* ¶¶ 293, 295, 298, 300, 320.)

Plaintiff was convicted of one count of murder in the second degree and one count of criminal possession of a weapon in the fourth degree. (*Id.* ¶ 329.) He was sentenced to a term of twenty-five years-to-life imprisonment. (*Id.* ¶ 331.) Plaintiff filed motions to vacate his conviction

in 1992 and 1994, but both motions were denied.  (*Id.* ¶ 334.) His petition for habeas corpus was also denied.  (*Rodriguez v. Greiner*, No. 97 Civ. 3563, Memorandum and Order (Dkt. 29), (E.D.N.Y. Aug. 20, 2001).)

Plaintiff was released from prison on January 26, 2017, following a grant of executive clemency, and remained under supervised release until January 26, 2018.  (*Id.* ¶¶ 337-39.)  After Plaintiff was released from prison, Javier Ramos recanted his trial testimony.  (*Id.* ¶ 341.)  At Plaintiff's urging, the Queens DA's Office reinvestigated Plaintiff's conviction, and ultimately determined that the prosecutor failed to disclose exculpatory evidence at trial.  (*Id.* ¶¶ 344-45.) Plaintiff moved to vacate his conviction, and the DA's office joined the motion.  (*Id.* ¶¶ 346-47.) The motion was granted on December 30, 2019.  (*Id.* ¶ 348.)

## B.    Detective Sullivan and Wendel's Involvement

At all relevant times, Thomas Sullivan and Charles Wendel were Detectives employed by the LIRR PD.  (*Id.* ¶¶ 28-29, 471.)  They were acting at the direction of Det. Beisel and his NYPD supervisors.  (*Id.* ¶ 426.)

Plaintiff alleges that Sullivan and Wendel took several investigative steps: interviewing several witnesses, transporting witnesses and suspects to the 104th Precinct; sought the assistance of the FBI; and were present in the room when Detective Beisel interrogated Javier Ramos.  (*Id.* ¶¶ 68-69, 71-77, 88-90, 95-96, 126-29, 196-201, 203, 208.) Plaintiff alleges, however, that Sullivan and Wendel omitted certain facts from their police reports, such as witness recollections of the suspect's perceived race and eye color.  (*Id.* ¶¶ 68-69, 317, 312.)  He also alleges that certain witness statements documented by Sullivan and Wendel, including the physical description of the suspect seen at the bar with Fernandez, do not resemble Plaintiff.  (*Id.* ¶¶ 71-77.)

Plaintiff alleges that Sullivan created a note that documented an interview with Ramos, which corroborated Ramos' earlier statements that Plaintiff showed up at Ramos' house at 6:00 a.m. the morning after the murder, but this note was not subsequently disclosed to Plaintiff by the QCDA during the trial. (*Id.* ¶¶ 305-08).  He alleges that Detective Wendel, along with two other detectives, physically placed a recording device on Richard Pereira (with his consent to obtain audio recordings of Javier Ramos, that the recording was turned over to the prosecutor, but that the recording was not disclosed by the QCDA before trial. (*Id.* ¶¶ 165, 275-79).  As to both Sullivan and Wendel, Plaintiff broadly alleges that they "failed to properly investigate alternate suspects," and "provided perjured testimony against Plaintiff in the grand jury, at pretrial hearings, and at trial, consistent with [] out-of-court misrepresentations in documents and reports."  (*Id.* ¶ 397.iv-v.)

## **LEGAL STANDARD**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [defendants have] acted unlawfully." *Id.*  A court considering a 12(b)(6) motion must take factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Id.*  Mere conclusory allegations or "naked assertion[s]" will not survive dismissal without at least some "further factual enhancement" providing substance to the claims alleged. *Twombly*, 550 U.S. at 557.

On a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, and facts that may be judicially noticed.

8

*Ying Li v. City of New York*, 246 F. Supp. 3d 578, 595 (E.D.N.Y. 2017). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). "[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments, and criminal disposition data." *Harris v. Howard*, No. 08 Civ. 4837 (CM), 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) (citation omitted). In addition, a court may take judicial notice of court records in a related, underlying state proceeding, including records from a Plaintiff's criminal case. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

In deciding a motion to dismiss, the court may also consider, without converting the motion to one for summary judgment, "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Weiss v. Inc. Vill. Of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (citation omitted).

## **ARGUMENT**

## I.   **THE MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED**

The malicious prosecution claims under both state and federal law (Counts I and II) fail against the MTA Defendants as a matter of law. The pleading fails to establish the requisite elements for malicious prosecution claim. Further, even if such a claim were viable against Detectives Sullivan and Wendell (it surely is not), as discussed below, no such claim can lie against defendants LIRR or MTA.

"To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Pierre v. Rocco*, No. 17-CV-4657, 2021 WL 950021, at *3 (E.D.N.Y. Mar. 12, 2021) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). A failure to plead facts sufficient to satisfy each of these elements is fatal to a claim asserted under both state and federal law. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (Claims for malicious prosecution brought under § 1983 are substantially the same as claims for malicious prosecution under state law.). For a § 1983 claim for malicious prosecution, plaintiff also must demonstrate a "sufficient post-arraignment liberty restraint." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000).

## A. Plaintiff Failed to Plead a Viable Malicious Prosecution Claim against Detectives Sullivan and Wendel.

### 1.   Detectives Sullivan and Wendell Did Not Initiate the Criminal Proceedings

A plaintiff bringing a malicious prosecution must prove that the defendant initiated or continued a criminal proceeding against him. *Greene v. City of New York*, No. 08-cv-243 (Donnelly, J.), 2017 WL 1030707, at *21 (E.D.N.Y. Mar. 15, 2017), *aff'd*, 742 F. App'x 532 (2d Cir. 2018). The criminal charges against Plaintiff were initiated by NYPD Detective John Beisel (Compl. ¶ 236), not by Sullivan or Wendel. It has long been settled that participation in the underlying police investigation, without more, is insufficient to establish the requisite initiation. *See Pierre*, 2021 WL 950021, at *3 (collecting cases).

Typically, an officer initiates the criminal proceeding when he or she prepared the criminal complaint or corroborating affidavits. *Compare Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 478 (E.D.N.Y. 2016) (dismissing malicious prosecution claim where it was undisputed that

defendants did not sign the felony complaint or complete corroborating affidavits that were relied upon in initiating criminal proceeding), *with Bonds v. City of New York*, No. 12-CV-1772, 2014 WL 2440542, at *6 (E.D.N.Y. May 30, 2014) (noting that the plaintiff could only assert a malicious prosecution claim against the arresting officer who signed the criminal complaint). The FAC makes clear that the person who did this was Detective Beisel, not Detectives Sullivan or Wendell. There are also no facts pled concerning any communication between Sullivan or Wendel and the assigned prosecutor after Plaintiff was arrested.

An officer may be deemed to have initiated the prosecution or continuing criminal charges when he fails to disclose "evidence that would negate probable cause." *Newson v. City of New York*, No. 16-CV-6773, 2019 WL 3997466, at *9 (E.D.N.Y. Aug. 23, 2019). An officer who creates material, false information and forwards that information to a prosecutor may be found to have can initiated a prosecution for purposes of malicious prosecution claim. *Herrera-Amador v. N.Y.C. Police Dep't*, No. 16-CV-5915, 2021 WL 3012583, at *5 (E.D.N.Y. 2021) (citing *Morse v. Fausto*, 804 F.3d 538, 548 (2d Cir. 2015)).

> ### a. There Are No Allegations that Sullivan or Wendel Knowingly Furnished False Information to the Prosecutor

Moreover, the facts alleged fail to plausibly show that Sullivan or Wendel *knowingly* furnished false information to the prosecutor. First, there are no allegations that either Sullivan or Wendel furnished any information at all to the prosecutor, nor that they had any obligation to do so given that NYPD was the agency in charge of the investigation. Second, Plaintiff has no plausible basis to argue that the information Sullivan and Wendel documented in the investigation file was knowingly false – or that it was false at all. *Cf. Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011) (affirming the jury instruction: "if the public prosecutor relies on information conveyed by the officer that the officer knows is false and has no other independent basis for prosecuting the

case, the officer is liable for causing the prosecution.")  Instead, Plaintiff identifies conflicting statements made by witnesses—and even other persons of interest—over a span of several years and assumes as true those facts that are favorable to Plaintiff.

The allegations against Sullivan and Wendel do not support a plausible argument that they knowingly falsified information or intentionally omitted evidence from the investigation file.  As is evident from the Complaint, and even more so from the investigation file,[3] they diligently pursued leads at the direction of and in conjunction with the NYPD, who oversaw and directed the investigation.  They appropriately documented information reported to them in NYPD investigation reports.  To the extent that some of the information they collected conflicted with other facts gathered during the investigation, even if some of the information they received ultimately proved false, cannot plausibly lead to the conclusion that Sullivan and Wendel knowingly placed false information into the investigation file with the expectation that the prosecutor would act upon that information and initiate baseless criminal charges against Plaintiff. To the extent Plaintiff alleges that Sullivan and Wendel should be liable for initiating the prosecution simply because they documented information that conflicted with Plaintiff's version of events, or that ultimately proved unreliable years—or decades—after the fact, this argument cannot hold water.

---

[3] Plaintiff's Amended Complaint incorporates by reference the underlying criminal investigation into the Fernandez murder, as reflected in the NYPD's DD-5 Reports.  Plaintiff dedicates several hundred paragraphs of the operative pleading to investigative steps that were, or were not taken, and what information was, or was not documented by the police.  These reports are central to Plaintiff's attempts to undermine the integrity of the investigation, prosecution, and resulting conviction.  The investigative file, rather than Plaintiff's selective paraphrasing therefrom, should be considered incorporated by reference and integral to the Complaint and therefore considered by the Court on this motion to dismiss.

b.   *The Allegations Demonstrate Sullivan and Wendel Appropriately Documented Their Investigation*

There is also no merit to the allegations that Detectives Sullivan and Wendel failed to document certain investigative actions.  Plaintiff claims that they failed to document that bar patron William Perry reported that the suspect was "not Hispanic" and had "hazel or green" eyes (FAC ¶¶ 68-69, 312.)  However, Perry's description of the "male white" whose "eyes were not dark" whom he observed with Fernandez at the bar before the murder is included in the investigation file.  (*See* Silverberg Decl. Ex 2 (DD-5 # 99).)  Plaintiff's allegation that bartender Joseph Castillo's observing the victim enter and leave the bar with a "white male" was not documented in a police report (FAC ¶ 317), is also demonstrably false.  Castillo's description of the man observed with the victim as "white/hispanic" was also included in the DD-5s.  (*See* Silverberg Decl. Ex. 2 (DD-5 # 12).)  There is no merit to Plaintiff's claim that Sullivan or Wendel intentionally suppressed evidence concerning Castillo's selection of someone other than Plaintiff in a photo array.  The DD-5s reflect that Castillo was shown a photo array with negative results on one occasion, but that also he positively identified Plaintiff on a separate date.  (*Id*. (DD-5 # 34 and DD-5 # Unk., dated Sept. 29, 1988).)

In addition, the allegation that Sullivan and Wendel failed to adequately investigate other suspects is entirely conclusory and fails to state a claim upon which relief may be granted.  (FAC ¶ 397.iv-v.)  Sullivan and Wendel's diligent pursuit of several persons of interest throughout the course of the investigation is manifestly evident in the investigative file.  Plaintiff's allegation that Sullivan perjured himself is entirely lacking factual support, and in any case, his grand jury testimony cannot form the basis of a viable malicious prosecution claim against him.  *Adamou v. Doyle*, 707 F. App'x 745, 746 (2d Cir. 2018) ("Under *Rehberg* . . . a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness'

13

testimony,' even if that testimony is perjurious" (quoting *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)).

c.  *The District Attorney Independently Decided to Bring Charges*

Finally, Plaintiff concedes that the District Attorney conducted its own independent assessment of the evidence, both before and after the criminal complaint was signed.  "A malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police." *Barnes v. City of New York*, No. 17-CV-1303, 2021 WL 260092, at *5 (E.D.N.Y. Jan. 26, 2021) (citing *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009)).

Here, ADA Dikman advised lead detective John Beisel that there was sufficient probable cause to arrest Plaintiff for the murder charge.  Then, after Plaintiff was arrested, Detective Beisel signed the criminal complaint.  ADA Dikman sought and obtained approval from his supervisors to seek an indictment.  With these undisputed facts, Sullivan and Wendel cannot be said to have initiated a malicious prosecution against Plaintiff as a matter of law.

2.   Plaintiff Cannot Establish the Element of Favorable Termination
a.  *Favorable Termination Under Federal Law*

In order to satisfy his burden, Plaintiff must affirmatively demonstrate that the criminal proceedings were terminated in a manner indicative of his innocence.  *Lanning,* 908 F.3d at 25. "[C]riminal 'proceedings are "terminated in favor of the accused" . . . only when their final disposition is such as to indicate the innocence of the accused.'" *Id*. at 27-28 (citation omitted). "No single type of disposition is necessary or sufficient, but the termination must be 'measured in objective terms by examining the totality of the circumstances.'"   *Rosario v. City of New York*, No. 18 Civ. 4023, 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019) (quoting *Lanning,* 908 F.3d at 28.  "[A] dismissal that 'leaves the question of guilt or innocence unanswered . . . cannot provide

14

the favorable termination required . . . ." *Gondola v. City of New York*, No. 16-cv-369 (Donnelly, J.), 2020 WL 1433874, at *6 (E.D.N.Y. Mar. 24, 2020) (citation omitted).

Here, the Court may take judicial notice of Queens County Supreme Court Justice Joseph Zayas' decision to vacate Plaintiff's conviction, and must conclude that the criminal proceedings were not favorably terminated for the purposes of a § 1983 malicious prosecution claim. Justice Zayas vacated the conviction based on the QCDA's alleged failure to disclose potentially favorable evidence during the criminal prosecution. (Silverberg Decl. Ex. 5 (Dec. 30, 2019 Proceedings) at 22-23 (attributing denial of right to fair trial to a prosecutor's mistake).) While Plaintiff alleges that his conviction was overturned because of recanted testimony and because he is innocent (FAC ¶ 2), Justice Zayas did not so conclude, and the public record speaks for itself. (Silverberg Decl. Ex. 5 (Dec. 30, 2019 Proceedings).) He did not decide whether Plaintiff is innocent. (*Id.*)

Similarly, the QCDA rejected the plaintiff's claim of actual innocence. (*Id.* at 15.) The QCDA joined Plaintiff's motion to vacate the conviction only to the extent that there "[was a] discovery violation" and further stated that Plaintiff's conviction "remains presumptively valid and based on adequate evidence supported by credible circumstantial evidence." (*Id.* at 16.) "[W]here both the prosecution and the presiding judge articulated specific reasons for the indictment's dismissal, and explicitly disavowed any notion that their belief in Plaintiff's innocence was one of those reasons," favorable termination is not established. *Jeanty v. City of Utica*, No. 6:16-cv-00966, 2021 WL 149051, at *30 (N.D.N.Y. Jan. 14, 2021).

Plaintiff was not retried due to the availability of witnesses, and the time he already served. *Id.* at 20-22. These factors are not indicative of innocence, but more consistent with the interests of justice, which is not a favorable termination. *See id.* at *29 (court's decision to vacate conviction obtained on fabricated evidence is not a favorable termination); *see also Lanning*, 908 F.3d at 28

(citation omitted) (an "interest of justice" dismissal "leaves the question of guilt or innocence unanswered," and as such "cannot provide the favorable termination required" for a § 1983 malicious prosecution claim."); *Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir. 1999) ("Because this was not a decision on the merits, an essential element of a cause of action for malicious prosecution, the district court did not err in dismissing Breen's claim of malicious prosecution.").

### b. *Favorable Termination Under State Law*

To demonstrate a favorable termination under state law, a plaintiff must show that the resolution of his criminal prosecution "is not inconsistent with the [p]laintiff's innocence." *Tyler v. Maggio*, No. 20-CV-1714, 2020 WL 7125076, at *3 (E.D.N.Y. Dec. 4, 2020) (citation omitted). Plaintiff cannot demonstrate this element because, as stated above, the decision to vacate his conviction based on a discovery violation by the QCDA and was not on the merits. The question of his innocence or guilt was left unanswered.

### 3. There Was Probable Cause for the QCDA to Prosecute Plaintiff

The malicious prosecution claim should also be dismissed because there was probable cause to prosecute plaintiff for the murder charge. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020) (citation omitted). The positive identification of a perpetrator by a witness or a victim can form the basis for probable cause, "unless the circumstances raise doubt as to the person's veracity." *Harrison v. State*, No. 14-CV-1296, 2021 WL 1176146, at *3 (E.D.N.Y. Mar. 29, 2021) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). "Because lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94-5 (2d Cir. 2013) (citation & quotation omitted). Probable cause for the purposes of

16

a malicious prosecution claim is measured "at the time the prosecution was initiated." *Nash v. County of Nassau*, No. 16-CV-2148, 2019 WL 1367159, at *7 (E.D.N.Y. Mar. 26, 2019) (citation omitted).

In cases where the police had probable cause to arrest, in order to succeed on a malicious prosecution claim, a plaintiff must show that "authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest." *Nzegwu v. Friedman*, No. 10-CV-2994, 2014 WL 1311428, at *11 (E.D.N.Y. Mar. 31, 2014) (citation omitted); *aff'd*, 605 F. App'x 27 (2d Cir. 2015).

Where Plaintiff has been indicted, there is a presumption of probable cause. *Herrera-Amador*, 2021 WL 3012583 at *20 (citing *Stansbury*, 721 F.3d at 95). A plaintiff may overcome the presumption of probable cause only by presenting evidence that "the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Debrosse v. City of New York*, 739 F. App'x 48, 50 (2d Cir. 2018) (quoting *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)).

The allegations in the FAC support a conclusion of probable cause to prosecute as a matter of law. Plaintiff concedes that Javier Ramos implicated him in the murder, and that an Assistant District Attorney authorized Detective Beisel to arrest Plaintiff for murder. (*Id.* ¶ 210.) After Plaintiff was brought into the 104th Precinct, but *before* he was arraigned, Plaintiff was positively identified in a lineup by Robert Thompson. (*Id.* ¶ 238.) On these facts alone, there was probable cause to prosecute Plaintiff. Any information that surfaced after Plaintiff's arraignment does not undermine a probable cause determination. *Burgess v. DeJoseph*, 725 F. App'x 36, 40 (2d Cir. 2018) ("Although Burgess presented arguably exculpatory evidence that developed after his

17

arraignment, he failed to present sufficient evidence to permit a jury to find defendants responsible for continuing Burgess's prosecution.")

In addition, Plaintiff does not overcome the presumption of probable cause stemming from his indictment that is attributable to Detectives Sullivan or Wendel. As discussed above, the allegations against Sullivan and Wendel do not support a plausible argument that they knowingly falsified information or intentionally omitted evidence from the investigation file. There are no allegations that they failed to satisfy their discovery obligations with respect to the QCDA. *See Greene*, 2017 WL 1030707 at *26 (police satisfy their *Brady* obligations when they turn exculpatory evidence over to prosecutors).

### 4. Plaintiff Does Not Allege Detectives Sullivan or Wendel Acted With Malice

Since there is no evidence that Sullivan or Wendel commenced or continued the prosecution, Plaintiff cannot establish that such commencement or continuation was done with malice. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("[M]alice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03 (1978)).

Malice must be analyzed as to each defendant. *Herrera-Amador*, 2021 WL 3012583, at *3. The Complaint is devoid of any allegation of nefarious or improper motive for Sullivan or Wendel. Indeed, the investigation file shows they continued to reasonably pursue leads throughout the investigation, and once Plaintiff was identified as a suspect, they only provided ancillary support to Detective Beisel and ADA Dikman. There is no evidence that Sullivan or Wendel had any control or influence over the investigation, let alone the decision to initiate or continue the prosecution, and as such, there is no evidence of malice whatsoever.

**B.** **The Malicious Prosecution Claim Must be Dismissed as Against LIRR and MTA**

Because plaintiff has failed to allege a viable malicious prosecution claim, the court need

not consider his claim against LIRR or the MTA distinct from the claims against the individuals.

*See Garcia v. Gridley*, No. 16-CV-6180, 2020 WL 2523049, at *6 (E.D.N.Y. May 18, 2020).  But

even if the court were to find that viable malicious prosecution was pled, plaintiff's claim should

dismiss that claim against Defendants MTA and LIRR anyway.

First, Plaintiff's state law claim is based on *respondeat superior* liability.   "The doctrine

of *respondeat superior* renders an employer vicariously liable for torts committed by an employee

acting within the scope of his or her employment."  *Barnes*, 2021 WL 260092, at *5.  With respect

to the MTA, *respondeat superior* liability cannot be maintained because Detectives Sullivan and

Wendell were employed by the LIRR, not the MTA.  LIRR is "a distinct legal entity from the

LIRR for the purposes of suit." *Stampf v. Metro. Transp. Auth.*, 57 A.D.3d 222, 223 (1st Dep't

2008).  Thus, the MTA "may not be liable for the torts committed by a subsidiary arising out of

the operations of the subsidiary corporation."  *Noonan v. Long Island R.R.*, 158 A.D.2d 392, 393

(1st Dep't 1990).  Plaintiff cannot plausibly allege that the alleged predicate acts were committed

by MTA employees, and therefore the claims against MTA must be dismissed.

Second, to maintain a state law claim, including, a malicious prosecution claim, Plaintiff

must comply with the statutory conditions for bringing an action against the MTA and its

subsidiaries.  Public Authorities Law ("PAL") § 1276(1) provides that in actions for damages

against the MTA or any of its subsidiary corporations, like LIRR, Plaintiff must allege in the

pleading that he has made a pre-suit demand[4] upon the defendant, that at least thirty days have

---

[4] The PAL pre-suit demand is distinct from and serves a different purpose from a notice of claim, which is not required
to be served upon the LIRR.  *Shaw v. Long Island R.R.*, No. 16-cv-6972, 2017 WL 5634122, at *1-4 (E.D.N.Y. Nov.
21, 2017) (comparing PAL § 1276(1), (2) and (6)); *see Andersen*, 88 A.D.2d 328 (Statutory amendment abolishing
requirement of filing formal notice of claim against MTA's subsidiary corporations did not eliminate statutory

elapsed, and that the defendant has refused or neglected to adjust the claim.   PAL §
1276(1); *Andersen v. Long Island R.R.*, 88 A.D.2d 328, 329 (2d Dep't 1982) (construing PAL §
1276 to include MTA subsidiaries), *aff'd*, 59 N.Y.2d 895 (1983).   Plaintiff does not plead the
service of a pre-suit demand on the LIRR and accordingly, his claim may not lie against LIRR.[5]

## II.   PLAINTIFF'S EXCESSIVE PRETRIAL DETENTION CLAIM MUST BE DISMISSED

Plaintiff's excessive pretrial detention claim against Detectives Sullivan and Wendel must
be dismissed as well.   "The Second Circuit permits recovery for excessive pre-trial detention where
a Plaintiff can show '(1) that [he] has a right to be free from continued detention stemming from
law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions
of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'"
*Gonzalez v. New York City*, No. 16-cv-00254, 2016 WL 7188147, at *4 (S.D.N.Y. Dec. 2, 2016)
(citing *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007)).   "In order to satisfy
the *Russo* standard for excessive pre-trial detention, such exculpatory evidence must have
conclusively or affirmatively established [Plaintiff's] innocence."   *King v. City of New York*, Nos.
12-CV-2344, 13-CV-0037, 2014 WL 4954621, at *29 (E.D.N.Y. Sep. 30, 2014).   The FAC
contains no plausible allegations that any evidence purportedly suppressed or mishandled by
Detectives Sullivan or Wendel conclusively established Plaintiff's innocence.   Even accepting as
true Plaintiff's allegations that certain exculpatory evidence was not disclosed by QCDA in
advance of trial, and that such information would have been helpful, Plaintiff does not claim that

---

requirements under PAL 1276(1)); *Treanor v. Metro. Transp. Auth.*, 414 F. Supp. 2d 297, 301 (S.D.N.Y. 2005) (same).
A failure to plead that Plaintiff "presented the LIRR with a demand upon which the[] action was founded, and that 30
days had elapsed without resolution" necessitates a dismissal.   *Jacobs v. Metro. Transportation Auth.*, 180 A.D.3d
657, 659 (2d Dep't 2020).  Because there is no dispute that Plaintiff failed to plead compliance with PAL 1276(1), no
state law claim can be maintained against LIRR as a matter of law.
[5]Plaintiff does not attempt to plead a claim under §1983 against MTA or LIRR for malicious prosecution.  Its claim
for malicious prosecution against the "municipal defendants" is solely under state law (Count I); and its claim for
malicious prosecution under §1983 is solely against the individual defendants (Count II).

any evidence would have established his innocence. And certainly, there are no plausible allegations specific to Sullivan or Wendel that would permit Plaintiff to state a claim upon which relief may be granted. While Plaintiff claims that Sullivan and Wendel "helped fabricate" Ramos' witness statement, this claim is insufficient to form the basis of relief, because Ramos in fact corroborated his statement twice under oath, at the grand jury and during the criminal trial.

## III.   PLAINTIFF'S CIVIL RIGHTS CONSPIRACY CLAIM MUST BE DISMISSED

To state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors; "(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). To survive dismissal, a §1983 conspiracy claim "must provide some factual basis supporting a meeting of the minds, such as . . . an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Here, Plaintiff alleges that Detectives Sullivan and Wendel, acting within the scope of their employment, acted in concert with NYPD detectives to deny Plaintiff his constitutional rights. (FAC ¶ 389.) Because all of the alleged conspirators were state actors carrying out their duties in the context of a single criminal investigation, and because the FAC specifically alleges that Sullivan and Wendel were acting within the scope of their employment as agents of the NYPD, this claim fails under the intra-corporate conspiracy doctrine. Actors from a single agency carrying out their official duties are incapable of conspiring between themselves because the agency and its employees are considered a single actor. *Blue v. City of New York*, No. 16-CV-9990, 2018 WL

21

2561023, at *9 (S.D.N.Y. June 4, 2018) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)).

In addition, there are no facts supporting a "meeting of the minds" to achieve an unlawful objective. A plaintiff must allege more than "conclusory, vague, or general allegations of conspiracy" to survive a motion to dismiss. *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (citation omitted) (collecting cases). He has not done so here, and so the conspiracy claim must be dismissed.

## IV.  PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIDNT TO ESTABLSH MUNICIPAL LIABILITY AGAINST THE MTA AND LIRR

Plaintiff's "Count X" asserts that MTA and LIRR are liable under § 1983 for the alleged conduct of Defendants Sullivan and Wendell, in particular, for the Detectives' alleged withholding of exculpatory evidence, fabricating evidence and/or initiating the prosecution without probable cause. Plaintiff has failed to plead facts sufficient to establish a claim against LIRR or MTA for the alleged conduct of its employees.

A municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom," but not on the basis of *respondeat sup*erior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 611, 694-95 (1978). Public benefit corporations, such as the MTA, and its subsidiaries, including the LIRR, are municipal entities for the purpose of § 1983. *Byrd v. Metro. Transit Auth.*, No. 15-CV-1364, 2015 WL 4546718, at *2 (E.D.N.Y. July 28, 2015). "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). Plaintiff neither identifies a formal policy of the MTA or LIRR nor a specific decision of any policymaker that caused his alleged injury.

22

In addition, courts have found allegations sufficient to establish a policy or custom is when "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker . . . [but] is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted).   A practice is "widespread" when it is "common or prevalent throughout the [entity]." *Gleeson v. County of Nassau*, No. 15-CV-6487 (Donnelly, J.), 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019) (citation omitted). As is clear from Plaintiff's attempt to shoehorn a *Monell* claim against the MTA and the LIRR, the purported unconstitutional policies at issue in this case belong to the NYPD and/or the QCDA.

In its *Monell* analysis, courts must consider which government entity is allegedly responsible for the "final policymaking authority . . . concerning the action alleged to have caused the particular . . . violation at issue." *Bellamy*, 914 F.3d at 757 (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Even to the extent Plaintiff can plausibly allege an underlying constitutional violation, there are no MTA or LIRR policies or customs implicated by such claims. The LIRR PD assisted the NYPD because Fernandez's body was discovered on LIRR property. There is no doubt, however, that NYPD controlled the investigation and the QCDA controlled the prosecution, including whatever discovery was or was not turned over to Plaintiff during his criminal trial. Plaintiff cannot state a claim for municipal liability against LIRR or MTA simply because LIRR PD, at times, had worked in conjunction with NYPD on some unknown number of investigations over some unidentified period.   (*See* FAC ¶ 481.)  These facts are insufficient to prove anything.

Similarly, Plaintiff's theory that LIRR PD officials exerted pressure to "close" cases quickly cannot amount to a *de facto* policy based only on the facts alleged in this case.  *See Harrison*, 2021 WL 1176146, at *5 ("[A] single incident, like the one alleged here, cannot form

the basis for a *Monell* claim."); *Oklahoma City v. Tuttle*, 471 U.S. 841 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Even if Plaintiff could prove such a policy did exist, such a policy would have no apparent relevance to this case – the criminal investigation into Fernandez's death lasted over 16-months before Plaintiff was arrested.

Lastly, Plaintiff pleads zero facts whatsoever to support his theory that the LIRR PD was deliberately indifferent to its obligations to train, supervise, and discipline its employees.  (FAC ¶ 482.)  "Plaintiff's claim fails because '[i]t is impossible to prevail' on such a theory 'without any evidence as to . . . how the training was conducted, how better or different training could have prevented the challenged conduct, or how a hypothetically well-trained officer would have acted under the circumstances.'"  *Vassiliou v. City of New York*, No. 18-CV-0779, 2021 WL 76916, at *6 (E.D.N.Y. Jan. 7, 2021) (quoting *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004)).  Accordingly, Plaintiff fails to state a claim for municipal liability against MTA or LIRR as a matter of law.

## <u>CONCLUSION</u>

Wherefore, for the reasons set forth herein, the MTA Defendants' motion to dismiss should be granted in its entirety, dismissing in part the claims against Detectives Sullivan and Wendel, and dismissing all claims asserted against the MTA and LIRR with prejudice, together with such additional further relief as this Court deems just and proper.

Dated: September 7, 2021
         New York, New York

                              HOGUET NEWMAN
                              REGAL & KENNEY, LLP


                              Ira J. Lipton
                              Helene R. Hechtkopf
                              Steven M. Silverberg
                              60 East 42nd Street, 48th Floor
                              New York, NY 10165
                              Telephone:     (212) 689-8808
                              Facsimile:     (212) 689-5101
                              ilipton@hnrklaw.com
                              hhechtkopf@hnrklaw.com
                              ssilverberg@hnrklaw.com

                              *Attorneys for MTA Defendants*