# EXHIBIT 1

*In the Matter of the Claim of*

**FELIPE RODRIGUEZ**

*against*

**THE CITY OF NEW YORK, et al.**

---

**BY ELECTRONIC DELIVERY and U.S. MAIL**

TO:   **NEW YORK CITY, NEW YORK,** *c/o The Comptroller of the City of New York, Municipal Building – Room 1225, 1 Centre Street, New York, New York 10007*

***METROPOLITAN TRANSPORTATION AUTHORITY,*** *c/o MTA Legal Department, 2 Broadway, New York, NY 10004*

***ADA DAVID DIKMAN***

***DET. JOHN BEISEL***

***DET. THOMAS SULLIVAN, LIRR***

***DET. CHARLES WENDEL, LIRR***

***DET. FNU CALIFANO***

***DET. FNU WILDE***

***DET. FNU GARCIA, 104 Squad***

***SGT. GEORGE ZAROOGIAN***

     PLEASE TAKE NOTICE, pursuant to General Municipal Law §§ 50-e and 50-i, as well as New York County Law § 52, that the undersigned claimant hereby makes this claim and demand against the City of New York and Metropolitan Transportation Authority and individuals employed and/or indemnified by the City of New York, as follows:

    1.    *The name and address of the claimant and his counsel is:*

Claimant:
FELIPE RODRIGUEZ

1

Counsel:

Zachary Margulis-Ohnuma
260 Madison Ave, Suite 1700
New York, NY 10016
(212) 685-0999
zach@zmolaw.com

Joel B. Rudin
152 West 57th Street, Eighth Floor
New York, New York 10019
(212) 752-7600

2.       *The nature of the claim:*

Violation of federal civil rights, including those guaranteed under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution for which no notice is necessary; in addition to state law causes of action including: false arrest; assault; battery; false imprisonment; malicious prosecution; conspiracy; obstruction of justice; coercion; fabrication of evidence; denial of a fair trial; negligence, negligent and intentional infliction of emotional harm; negligent investigation; negligent hiring, training, supervision, retention and discipline; *respondeat superior*; joint and several liability; *prima facie* tort; abuse of process; and other New York state common law tort claims and New York State constitutional claims as yet-to-be discovered evidence may support.

3.       *The time when, the place where, and the manner in which the claim arose, upon information and belief*:

Felipe Rodriguez was wrongfully arrested, charged, imprisoned, prosecuted, and convicted for the murder of Maureen "Nina" McNeil Fernandez, whose body was discovered behind a warehouse in Queens, New York on November 26, 1987. As a result of the unlawful conduct of the defendants listed above, Mr. Rodriguez was wrongfully arrested on March 27, 1989 and held in New York City custody until approximately July 1, 1989, when he was released on bail. He was falsely convicted after a trial based on fabricated evidence and remanded into custody on May 2, 1990. He remained in state custody until January 26, 2017, when he was released based on a grant of clemency of Gov. Andrew Cuomo. Pursuant to the clemency grant, Mr. Rodriguez was supervised by the Department of Parole for one year, until January 26, 2018.

Mr. Rodriguez is innocent and had no involvement or connection whatsoever to the crime. On December 30, 2019, based on Mr. Rodriguez's motion, which the Queens District Attorney's Office joined, the Hon. Joseph Zayas, Justice of the Supreme Court, Queens County, vacated the conviction on the grounds that (1) newly discovered evidence had emerged and (2) the conviction was secured in violation of the Constitution of the United States. Judge Zayas also dismissed the Indictment. Accordingly, the claim accrued on December 30, 2019.

Mr. Rodriguez's conviction was secured based on egregious misconduct by both detectives from the New York City Police Department and the Long Island Railroad Police *and* prosecutors from the Queens County District Attorney's Office. At all relevant times the individuals names were acting within the scope of their authority as officers on behalf of their respective municipal employers.

The Metropolitan Transportation Authority is hereby notified of this claim because it is the municipal entity that is responsible for torts committed by Long Island Railroad Police Department acting within the scope of their authority prior to 1993, when the LIRR Police Department was incorporated into the MTA Police Department.

The specific acts of police misconduct for which the City of New York and the Metropolitan Transportation Authority are liable include, but are not limited to, the following:

(a) The prosecution of Mr. Rodriguez was initiated without probable cause by Det. Beisel, Det. Sullivan, Det. Califano, Det. Wendel, Det. Sullivan, Det. Wilde, Sgt. Zaroogian and ADA Dikman and they acted in bad faith and with malice and/or negligently.

(b) Det. Beisel, Det. Sullivan, Det. Califano, Det. Wendel, Det. Sullivan, Det. Wilde, Sgt. Zaroogian and ADA Dikman acting individually and in concert caused the fabrication of evidence by coercing Javier Ramos to falsely claim that Felipe Rodriguez borrowed his car the night of the murder, returned it with blood on the seat, and stated that Mr. Rodriguez told him he had "stabbed the bitch" in the car. Det. Beisel, Det. Sullivan, Det. Califano, Det. Wendel, Det. Sullivan and Sgt. Zaroogian coerced Mr. Ramos by either personally threatening him or conspiring with each other to do so. The threats included both threats that Mr. Ramos would be prosecuted for the murder and threats of bodily harm. The threats began on or about September 9, 1988 and continued until Mr. Ramos testified on April 27, 1990. Det. Beisel, Det. Sullivan, Det. Califano, Det. Wendel, Det. Sullivan, Det. Wilde and Sgt. Zaroogian knew that Mr. Ramos's accusations against Mr. Rodriguez did not originate with him and were false. In order to bolster Mr. Ramos's believability, Det. Beisel, Det. Sullivan, Det. Califano, Det. Wendel, Det. Sullivan and Sgt. Zaroogian provided him with facts that he did not otherwise know, including, for example, that a person seen with the victim was wearing a "multi-colored sweater" and "beige pants." Det. Beisel and others then knowingly permitted and coached Mr. Thompson to falsely testify that he personally knew these facts, when, in fact, they had come from Det. Beisel and the other detectives. On March 27, 1989, ADA Dikman knowingly or recklessly took and notarized a statement by Javier Ramos falsely accusing Mr. Rodriguez of the crime.

3

(c) Det. Sullivan failed to disclose to the district attorney's office or to the defense a materially exculpatory note that he made during an interview with Mr. Ramos before Mr. Ramos's testimony. The note stated that when Felipe Rodriguez returned the car to Javier Ramos on Thanksgiving morning (which in fact did not happen), he was with a slim, male, black friend in his 20s. The note would have impeached Mr. Ramos's testimony, Det. Sullivan's testimony, and the entire investigation. It was discovered by the Queens District Attorney's office in the Fall of 2019 and thus constituted newly discovered evidence that was one of the bases for Judge Zayas's December 30, 2019 decision to vacate the conviction. Det. Sullivan, acting in concert with the other detectives, suppressed the note and never provided it to the district attorney's office or the defendant.

(d) Det. Beisel fabricated evidence against Mr. Rodriguez by falsely claiming in police reports and falsely testifying at the trial that Mr. Rodriguez said he liked to go to the morgue at Wyckoff Hospital "and look at the deid [sic] bodies. He said he liked to look at the messed up bodies not just the old people that died. He then continued that he liked tp [sic] look at the homicide victims." In fact, Mr. Rodriguez never said any of those things.

(e) Det. Beisel, acting in concert with other detectives, coerced witnesses into falsely claiming they saw Mr. Rodriguez with writing on his fingers.

(f) Det. Beisel fabricated evidence by manipulating the lineup at which Mr. Rodriguez was purportedly identified by trial witness Robert Thompson as the person at a bar with the victim the night before the murder. He manipulated the line-up by parading Mr. Rodriguez in handcuffs in front of the line-up witnesses, requiring Mr. Rodriguez to hold a sign stating "Number 3" and emphatically telling Thompson he was going to ask three questions, and placing Mr. Rodriguez in a line=-up where Mr. Rodriguez was the only person in the lineup with a mustache. Det. Beisel then falsely testified that he gave Mr. Rodriguez an opportunity to shave his mustache before the lineup.

(g) On or about April 26, 1990, Det. Beisel and other detectives specifically coached Robert Thompson on what to say outside the courtroom the day that Thompson testified. The coaching consisted of, *inter alia*, telling Mr. Thompson to falsely identify Mr. Rodriguez at the person at the bar with the victim.

(h) On or about April 27, 1990, Det. Sullivan testified falsely and misleadingly at trial that a black Monte Carlo proved to have no connection to the incident and no one had seen the victim get out of the black Monte Carlo the evening before the murder. In fact, a witness had told detectives that he was "sure the victim had gotten out of that car"

4

in front of the bar at approximately 0145 or 0200 hours on the morning of the murder.

4. *The items of damage or injuries claimed to have been sustained so far as then practicable.*

Mr. Rodriguez has suffered damages totaling an estimated $270 million, including the following: physical and emotional pain and suffering, loss of liberty, lost income, legal expenses, loss of familial relationships, damage to reputation, and loss of quality and enjoyment of life, all of which continue to date and will continue into the future. A the time of his false arrest, Mr. Rodriguez was employed as a construction worker by a subcontractor for the New York City Division of Housing Preservation and Development. He was married and had a three-year-old son. Since his release from prison, he has worked continuously but struggles with the emotional aftermath of his ordeal.

The claimant, by undersigned counsel, therefore presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant intends to commence an action on this claim.

Dated: March 27, 2020
New York, New York

Yours, etc.,

Zachary Margulis-Ohnuma
Law Office of Zachary Margulis-Ohnuma
260 Madison Avenue, Suite 1700
New York, NY 10016
(212) 685-0999
zach@zmolaw.com

LAW OFFICES OF JOEL B. RUDIN, P.C.

By: Joel Rudin
Joel B. Rudin
152 West 57th Street, Eighth Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

*Attorneys for Claimant Felipe Rodriguez*

<u>Verification</u>

State of New York )
                ss)
County of Queens )

Felipe Rodriguez, being duly sworn, deposes and says: That I am the Claimant on the attached Notice of Claim, that I have read the foregoing Notice of Claim and know the contents; that the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief; and that as to those matters I believe them to be true. To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers were the contentions therein are not frivolous as defined in subsection c of section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR).

_____          3/27/2020
Felipe Rodriguez                           Date

Sworn to before me this
_____ day of March 2020


_____
      Notary Public

6