# ZMO Law PLLC

January 26, 2022

**Via ECF**

Hon. Ann M. Donnelly
Eastern District of New York
U.S. Courthouse, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

RE: *Felipe Rodriguez v. City of New York et al.*, 21-cv-01649

Dear Judge Donnelly:

This office represents Felipe Rodriguez in the above-captioned matter. We write pursuant to Fed. R. Civ. P. 37(b) and the Court's individual rules to move to compel the City Defendants to produce documents and information essential to proving Plaintiff's claims against the individual Defendants. We have met and conferred with counsel for all parties, but the City Defendants insist they are not required to produce the documents and information described below. The full text of Plaintiff's First Set of Document Requests and Interrogatories and Defendants' responses are attached hereto as Exhibits A and B.

1. **Motion to Compel information and documents relating to Defendant Beisel's other homicide investigations**

Defendant John Beisel was the lead detective investigating the Fernandez homicide. At a deposition in the New York Court of Claims, Beisel testified that he was the lead investigator for the NYPD on approximately 10 homicides, which all ended in convictions, and that he could not recall other information about those cases. **Interrogatory 3** asks City Defendants to identify Beisel's other homicide investigations and **Request 8** seeks New York City Police Department ("NYPD") and Queens District Attorney's Office ("QDAO") files relating to those investigations. City Defendants object that this information is irrelevant and that its production would be unduly burdensome and disproportionate to the needs of the case. These objections lack merit.

The Complaint alleges that Beisel targeted Plaintiff for prosecution, arrested him without probable cause, falsified witness statements in police reports, withheld exculpatory and impeachment evidence, ignored promising alternative suspects, and conducted an intentionally suggestive lineup to justify Plaintiff's arrest. Beisel is alleged to have procured a false identification of Plaintiff at an in-person lineup in March 1989 by assigning Plaintiff placard "3" and emphasizing to witness Robert Thompson that he would "ask *three* questions." Our investigation suggests Beisel used the same tactics at other lineups. For instance, Beisel conducted an earlier lineup in the Fernandez investigation involving a different suspect, Richard Pereira; documentation of that lineup lists Pereira as holding placard "3." Beisel assigned number 3 to the subject of a lineup in another homicide

260 Madison Avenue, 17th Floor • New York, NY 10016
(212) 685-0999 • info@zmolaw.com
www.zmolaw.com

ZMO Law PLLC

investigation where we represent the defendant in a wrongful conviction action. In 1995, NYPD Det. Kathleen Burke publicly accused detectives investigating the murder of Det. Anthony J. Venditti of falsifying records and telling her to lie about eyewitness identification testimony. *See* https://www.nytimes.com/1995/01/29/nyregion/murder-of-a-partnership-detective-s-family-bitter-at-police-and-wounded-survivor.html. Defendant Beisel stated that he was one of the detectives who worked on the Venditti investigation.

Evidence that Beisel used similar tactics in other homicide investigations is relevant here. Fed. R. Evid. 404(b) permits "introduction […] of other wrongful acts for any relevant purpose other than to show propensity," including intent and absence of mistake. *Lombardo v. Stone*, 2002 WL 113913, at *6 (S.D.N.Y. Jan. 29, 2002) (Scheindlin, J.), *citing O'Neill v. Krzeminski*, 839 F.2d 9, 11 n. 1 (2d Cir. 1988) ("Similar act evidence offered to show a defendant's intent is admissible in a section 1983 case because the defendant's intent is a relevant element of the constitutional tort."). Documents showing that subjects in other lineups held the number "3" placard would be admissible to show that Beisel intentionally procured a false identification here by assigning that number to Plaintiff at the March 1989 lineup and then lying about it at trial.

Other homicide files, including the Venditti file, may show that Beisel or the other defendants misreported witness statements, ignored and withheld exculpatory and impeachment evidence, and failed to investigate alternative suspects, as the Complaint alleges here. This information is relevant to the intent element of Plaintiff's claims against the defendants for malicious prosecution and violations of due process.

## 2. Motion to compel confidential informant files of Javier Ramos and Robert Thompson (Request 6)

Request 6 asks for the NYPD and QDAO confidential informant files for two key prosecution witnesses at Plaintiff's criminal trial, Javier Ramos and Robert Thompson. Ramos and Thompson both received benefits in connection with the Fernandez homicide investigation, some of which were not disclosed until decades after the trial. The purpose of Request 6 is to uncover other benefits the defendants failed to disclose. This request is relevant to Plaintiff's malicious prosecution and *Brady* claims against the individual defendants. The City Defendants have advised us that QDAO did not maintain informant files. However, with respect to the NYPD informant files, the City Defendants offer boiler-plate objections and assert that "plaintiff has made no good faith showing" that Ramos or Thompson were confidential informants.

As we explained to defense counsel during our recent meet and confer, the basis for requesting the informant files is that Ramos and Thompson received benefits in connection with the Fernandez investigation. Specifically, the People declined to prosecute Ramos for purportedly destroying evidence of Fernandez's murder by cleaning her blood from his Oldsmobile. Thompson, the only person who identified Plaintiff as the man with the victim at a Brooklyn bar shortly before the murder, received at least two cash payments from Defendant Sullivan. According to receipts produced during discovery, "this money was received for [Thompson's] cooperation" and "ongoing assistance in the Fernandes [sic]

homicide investigation." The Complaint alleges that detectives failed to disclose the payments to Plaintiff's trial counsel in violation of Plaintiff's due process rights.

### 3. Motion to compel unredacted lineup sheets (Request 1)

The City Defendants have produced documentation of lineups conducted by Defendants Zaroogian in Beisel on September 10, 1988, where three witnesses did not identify suspect Richard Pereira, and March 27, 1989, when one of three witnesses—Robert Thompson—tentatively identified Plaintiff. Each witness signed a lineup sheet documenting his or her identification and listing the six lineup participants next to their placard number (1 through 6). The March lineup lists the name "Felipe Rodriguez" in typeface next to number "3"; the names of the fillers are redacted. See Exhibit C (redacted lineup sheet). Thompson's lineup sheet states that he recognized "#3 – but he is a lot thinner and his hair is longer now." *Id.* Thompson, whose description of the suspect did not resemble Plaintiff, made an in-court identification of Plaintiff at trial the following year.

Plaintiff has requested that the City Defendants produce copies of all lineup sheets without redactions. Unredacted copies are important for assessing the suggestiveness of the lineup. For example, if all of the participants' names were handwritten except for Plaintiff's (which was typed), or if the fillers were not listed by name, that may have influenced Thompson to falsely identify Plaintiff. When Plaintiff's counsel made this request by email, counsel for the City Defendants responded that "we are not agreeable to unredacting the names of the fillers on the lineups as it is now over 30 years after the subject lineups, and the names of the fillers not probative of suggestiveness 30 years later." We cannot comprehend how the amount of time elapsed since the lineup has any bearing on the lineup's suggestiveness and, if anything, underscores the importance of broad discovery on issues relating to Plaintiff's core claims.

### *Conclusion*

For the reasons set forth above, Plaintiff's motion to compel should be GRANTED.

Very truly yours,

ZMO Law PLLC

By: *Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma
Benjamin Notterman

Encls.

CC: ALL COUNSEL (via email and ECF)

1/26/22
Page 3