UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELIPE RODRIGUEZ,

                                        Plaintiff,

                - against -                                    21-cv-01649 (AMD) (RLM)

CITY OF NEW YORK, et. al.,

                                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR RELIEF FROM A FINAL
ORDER PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 60(b) AND LOCAL RULE 6.3**

ZMO Law PLLC
260 Madison Avenue, 17th Fl.
New York, NY 10016
(212) 685-0999
zmo@zmolaw.com

Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, NY 10019
(212) 752-7600
jbrudin@rudinlaw.com

*ATTORNEYS FOR PLAINTIFF FELIPE RODRIGUEZ*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT PROCEDURAL HISTORY ....................................................................... 1

LEGAL STANDARD – FRCP 60(B)............................................................................. 2

ARGUMENT.................................................................................................................... 3

    I.    Count IX should be reinstated because the Court misconstrued the claim and
overlooked evidence of NYPD's unlawful practices.............................................. 3

    II.    Count XI should be reinstated because liability for QDAO policies does not
require naming an individual prosecutor as a defendant. ...................................... 6

CONCLUSION................................................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) ......................... 4

*Ariza v. City of New York*, 1996 WL 118535 (E.D.N.Y. Mar. 7, 1996) ............................ 5

*Barrett v. Orange Cty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ................. 6

*Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) ................................... 6, 7

*Brady v. Maryland,* 373 U.S. 83 (1963) ................................................... passim

*Buari v. City of New York*, 530 F. Supp. 3d 356, 401 (S.D.N.Y. 2021) ........................... 4

*Carter v. Harrison*, 612 F. Supp.749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the

    Report and Recommendation of then Magistrate Judge Shira A. Scheindlin).............. 5

*Cash v. City of Erie*, 654 F.3d 324, 336 (2d Cir. 2011).................................................. 5

*Collins v. City of New York,* 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013).......................... 4

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................................ 4

*CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-6566 (RJS), 2019 WL

    8165893, at *1 (S.D.N.Y. Oct. 9, 2019)................................................................... 2

*Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658 (1978) ...................... passim

*Newson v. City of New York*, No. 16-CV-6773(ILG) (JO), 2019 WL 3997466, at *3

    (E.D.N.Y. Aug. 23, 2019) ........................................................................... 6

*Pipitone v. City of New York*, 57 F.Supp.3d 173, 189-91 (E.D.N.Y. 2014) ...................... 5

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ........................................ 2

*Vassallo v. Lando*, 591 F. Supp. 2d 172 (E.D.N.Y. 2008)................................................. 6

*Warney v. Monroe Cty.*, 587 F.3d 113, 125 (2d Cir. 2009) ................................................ 7

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ 1

**Other Authorities**

*Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department,* available at
https://web.archive.org/web/20110721230958/http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf (last visited Sept. 24, 2021) ................................................................................................. 3, 4, 5, 6

**Rules**

Fed. R. Civ. P. 60(b) ...................................................................................................... 1, 2

Fed. R. Civ. P. 8(d)(2)-(3) .................................................................................................... 7

Local Rule 6.3 ............................................................................................................... 1, 2

## PRELIMINARY STATEMENT

Plaintiff Felipe Rodriguez moves pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3 for partial relief from the Court's March 14, 2022 Decision and Order denying in part and granting in part the Defendants' motion to dismiss. ECF No. 62. We respectfully submit that the Court should reinstate Plaintiff's *Monell* claims against the City of New York for unlawful practices of the New York City Police Department ("NYPD") (Count IX) and Queens County District Attorney's Office ("QDAO") (Count XI). As to Count IX, the Court mistakenly treated the claim as alleging only a custom of witness coercion, without considering Plaintiff's allegations that the NYPD broadly engaged in evidence fabrication, perjury, initiating or continuing prosecution without probable cause, and withholding exculpatory and impeachment material. Further, the Court overlooked evidence set forth in the Complaint showing that these allegations are plausible and caused Plaintiff's injuries. As to Count XI, the Court dismissed the *Monell* claim relating to QDAO policies based on the mistaken belief that Plaintiff was required to sue the individual prosecutors who withheld exculpatory and impeachment material, though binding Second Circuit authority makes clear that no such requirement exists and that such a claim would be frivolous because individual prosecutors enjoy absolutely immunity from suit.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed the Amended Complaint ("the Complaint") on July 27, 2021. ECF No. 33. The Complaint alleges 42 U.S.C. § 1983 and state law claims against five detectives for the NYPD and two detectives for the Long Island Rail Police Department ("LIRR PD") for denial of due process, excessive pretrial detention, and civil rights conspiracy, as well as an equal protection claim against one of the NYPD detectives, defendant John Beisel. The Complaint alleges state law malicious prosecution claims against all defendants. Finally, the Complaint alleges *Monell* claims

1

against the City for unlawful policies of the NYPD and QDAO, and a *Monell* claim against the MTA/LIRR for unlawful policies of the LIRR PD.

On September 7, 2021, the City Defendants moved to dismiss all claims against them, and the MTA and LIRR Defendants moved to dismiss all claims except Counts III and IV (denial of due process and fair trial). ECF Nos. 41, 44. Briefing by both parties concluded on October 19, 2021. ECF Nos. 53, 54.

On March 14, 2022, the Court granted in part and denied in part both motions to dismiss. ECF No. 62. Plaintiff now moves pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3 for the Court to reconsider its dismissal of the two *Monell* claims against the City, alleging unlawful practices of the NYPD (Count IX) and QDAO (Count XI), because the Court overlooked allegations in the Complaint and controlling precedent.

## <u>LEGAL STANDARD – FRCP 60(B)</u>

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to grant relief from a final order for "mistake, inadvertence . . . [or] any other reason that justifies relief." Fed. R. Civ. P. 60(b) - (1), (6). A motion for reconsideration is proper where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). "The standard for reconsideration is strict and the decision is within the sound discretion of the district court." *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-6566 (RJS), 2019 WL 8165893, at *1 (S.D.N.Y. Oct. 9, 2019) (internal citations and quotations omitted).

2

## ARGUMENT

**I.  Count IX should be reinstated because the Court misconstrued the claim and overlooked evidence of NYPD's unlawful practices.**

The Complaint alleges in Count IX that New York City is liable under *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978), for the NYPD's failure to train, supervise or discipline officers as to evidence fabrication, perjury, witness coercion, and suppression of exculpatory evidence. ECF No. 33, ¶ 427. The Complaint cites judicial decisions, a 1994  report on police misconduct, and well-publicized examples of similar misconduct to show the plausibility of Plaintiff's allegation that the practices were pervasive and that policymakers were deliberately indifferent to them, resulting in Plaintiff's constitutional injuries. Yet the Court dismissed Count IX, reasoning that the one of the examples we cited, the *Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department* (the "Mollen Report"), is not "sufficiently connected to the alleged facts in this case" and "does not plausibly suggest that there was a custom of coercing witnesses to make false statements." ECF No. 62 at 41-42. In doing so, the Court misconstrued our claim.

First, the Complaint alleges that the NYPD had not only a practice of coercing witnesses to give false statements, but also of fabricating evidence (including police reports), giving false or misleading testimony, initiating or continuing a prosecution without probable cause, and withholding *Brady* material. ECF No. 33, ¶ 427. We alleged that, although policymakers were on notice of the need to train, supervise and discipline in these areas, they unreasonably failed to do so, and instead incentivized misconduct by pressuring officers to close cases. *Id.* ¶¶ 427-436. Finally, the Complaint alleges the required element of causation: as a result of policymakers' deliberate indifference, the individual City defendants engaged in the alleged misconduct, causing Plaintiff's constitutional injuries. *Id.* ¶¶ 466-469. Specifically, the individual defendants coerced a

3

false statement from Javier Ramos, *id.* ¶¶ 197-208, manufactured Robert Thompson's lineup identification, *id.* ¶¶ 230-242, falsified police reports, *id.* ¶¶ 180, 209, signed a criminal complaint without probable cause, *id.* ¶¶ 243, 369, falsely testified about the circumstances of the Thompson lineup identification, *id.* ¶¶ 300-303, and withheld exculpatory and impeachment information, including that the car seen leaving the crime scene did not match Ramos's Oldsmobile. *Id.* ¶¶ 326, 387.

Although nothing more is required at the pleading stage,[1] the Complaint sets forth ample *evidence*, including the Mollen Report, to show that such misconduct was widespread when Plaintiff was prosecuted and that policymakers were indifferent to it. In other cases, where plaintiffs have alleged the same types of misconduct, during the same time period, as we allege in this case, courts have found the Mollen Report sufficient to show the plausibility of a failure-to-train theory. In *Collins v. City of New York,* 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013), the court found that the Mollen Report "makes it plausible" that witness coercion, falsifying criminal complaints, and testimonial perjury were "endemic within the NYPD" in the early 1990s, and that a jury could reasonably find that policymakers were indifferent to it. In *Buari v. City of New York*, 530 F. Supp. 3d 356, 401 (S.D.N.Y. 2021), the court found a suitable connection between the Mollen Report's findings and allegations that officers testified falsely, coerced witnesses, and withheld *Brady* material, also during the early 1990s. Plaintiff's allegations against the individual

---

[1] *Walker v. City of New York* 974 F.2d 293, 298-300 (1992) (City can be liable for failing to train employees not to commit perjury and violate *Brady*, even where a complaint does not allege a history of such misconduct). *See also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."). *Thompson v. Connick*, 563 U.S. 51 (2011), did not disturb *Walker's* holding that a municipality can be liable for failing to train *police officers* (as opposed to prosecutors) to disclose *Brady* material and not to commit perjury, even absent prior violations, as the need for such training is obvious. *Walker*, 974 F.2d at 298-300. Further, *Connick* concerned the sufficiency of evidence at trial and said nothing about pleading requirements. *See* ECF No. 49 at 18, n.10.

4

defendants, which the Court found plausible, mirror those in *Collins* and in *Buari*. Further, the Court's suggestion that research reports be of "recent vintage"[2] is inapt here, where the criminal investigation occurred in the late 1980s, squarely within the timeframe examined by the Mollen Report.[3]

The Court also overlooked other evidence detailed in the Complaint, apart from the Mollen Report, demonstrating the plausibility of Count IX. The Complaint described six highly publicized examples from the relevant time period of NYPD officers threating violence or incarceration to coerce false statements and manufacture probable cause, just as the individual City defendants did here. ECF No. 33 ¶¶ 462, 464. *See Cash v. Cty. of Erie*, 654 F.3d 324, 336 (2d Cir. 2011) ("highly publicized incidents" provide notice of need for additional training or supervision). The Complaint also cited a 1985 decision from this district criticizing the NYPD for failing to train and supervise officers to meet their *Brady* obligations. ECF No. 33 ¶ 436 (citing *Carter v. Harrison*, 612 F. Supp.749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendation of then Magistrate Judge Shira A. Scheindlin). With this evidence, the Complaint sets forth a plausible showing that policymakers' deliberate indifference caused the individual defendants to fabricate evidence, withhold *Brady*, testify falsely, and initiate prosecution absent probable cause, in violation of Plaintiff's constitutional rights.

Merely because one piece of evidence cited in a complaint regarding a single piece of a broader claim does not, in the Court's view, establish that the claim is plausible is not a basis to dismiss the entire claim, particularly where the complaint cites extensive additional evidence in

---

[2] ECF No. 61 at 40.

[3] *See Pipitone v. City of New York*, 57 F.Supp.3d 173, 189-91 (E.D.N.Y. 2014) (Dearie, D.J.); (finding that the Mollen Report established policymakers' deliberate indifference during the mid-1980s); *Ariza v. City of New York*, No. 93–cv-5287, 1996 WL 118535, at *2, 5-6 (E.D.N.Y. Mar. 7, 1996) (Sifton, D.J.) (the Mollen Report supported finding of failure to train relating to misconduct between 1988 and 1992).

support of plausibility.  In other cases, courts have found similar claims from the same time period plausible based the Mollen Report alone; but, as explained above, the Complaint here includes much more. All the elements of Plaintiff's claim against the NYPD are properly pleaded. The Court should reinstate Count IX.

## II. Count XI should be reinstated because liability for QDAO policies does not require naming an individual prosecutor as a defendant.

Count XI alleges that the QDAO is liable under *Monell* for its policy of deliberate indifference to the need to train prosecutors to disclose exculpatory and impeachment material, causing such evidence to be withheld from Plaintiff's trial counsel. ECF No. 33, ¶¶ 275-282, 306-328, 490. The Court dismissed Count IX because the complaint "does not allege any underlying constitutional violation by an individual defendant." ECF No. 62.

This holding was a clear mistake; Count XI should be reinstated. The Second Circuit has explicitly ruled that *Monell* liability does *not* require allegations against an individually named defendant. *Barrett v. Orange Cty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) (Under *Monell*, "municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants.").[4] For example, in *Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019), where the complaint did not name individual prosecutors as defendants, the Second Circuit held that QDAO's failure to train prosecutors on *Brady* compliance could give rise to municipal liability. *See also Newson v. City of New York*, No. 16-CV-6773(ILG) (JO), 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019) (upholding QDAO *Monell* claim where

---

[4] The Court's reliance on *Vassallo v. Lando*, 591 F. Supp. 2d 172 (E.D.N.Y. 2008), is misplaced. The court in *Vassallo* dismissed the plaintiff's *Monell* claim after concluding that *no* constitutional violation occurred whatsoever. It has no significance here, where the complaint clearly alleges a constitutional violation against an employee who cannot be named individually because he is immune from suit, but whose actions were caused by a municipal policy.

no individual defendants were named). Indeed, requiring allegations against a named defendant would bar any *Monell* claim alleging deliberate indifference to prosecutorial misconduct, such as withholding *Brady* material, for which individual prosecutors are absolutely immune.[5] Yet the Second Circuit has unambiguously endorsed such claims. *See Bellamy*, 914 F.3d at 757.[6]

Here, Plaintiff did not sue ADA Alan Safran because he is absolutely immune from liability for violating *Brady*. Nevertheless, the Complaint alleges that Safran engaged in misconduct. Detectives forwarded to Safran a recorded conversation that Safran "knew or should have known" would have "severely impeached" the People's star witness, Javier Ramos, and Safran failed to disclose the tape to the defense in violation of his *Brady* obligations. ECF No. 33, ¶¶ 275-282. Count XI incorporates these allegations by reference at paragraph 486 and repeats them at paragraph 491. The Complaint alleges other *Brady* violations committed either by the detectives or the prosecution. ¶¶ 306 – 328, ¶ 490 (incorporating ¶¶ 306-328 into Count XI). Plaintiff is entitled to plead both alternative theories—either the individual detectives withheld the evidence from prosecutors or prosecutors failed to turn it over to the defense—and the Court may not choose one plausible alternative over the other. Fed. R. Civ. P. 8(d)(2)-(3).

The rest of Count XI, which the Court did not address, amply satisfies *Monell*'s pleading requirements by explaining how the *Brady* violations here were caused by QDAO's policy of deliberate indifference. ¶¶ 492, 518-19. Despite a well-documented history of *Brady* violations, policymakers failed to train prosecutors on *Brady* compliance, chose not to supervise or discipline prosecutors who withheld exculpatory and impeachment material, and had no written policy or

---

[5] *See Warney v. Monroe Cty.*, 587 F.3d 113, 125 (2d Cir. 2009) (absolute immunity shields prosecutors from individual liability for *Brady* violations).

[6] Note that the City did not even attempt to argue that Plaintiff was required to allege a constitutional violation by an individual defendant to support a *Monell* claim against QDAO.

handbook concerning what material to disclose under *Brady*. ¶¶ 492-520. Plaintiff cited appellate decisions overturning Queens convictions in the years immediately before and after Plaintiff's conviction, as well a prosecutor's detailed testimony about how QDAO systematically violated *Brady* in the relevant time period.[7] ¶¶ 508-16. Thus, policymakers were on notice of the need for training, supervision, and discipline, but, deliberately indifferent to that need, declined to act, causing the prosecution in Plaintiff's case to withhold exculpatory and impeachment evidence, leading to his wrongful conviction. *Id.* ¶¶ 501-516, 518, 519.

Plaintiff would not be entitled to an interlocutory appeal of the Court's decision, should the Court not reconsider it. That would mean the entire case would be litigated and, no matter what the outcome of the claims against the individual defendants, Plaintiff, at the end of the case, would be entitled to appeal. Given that the Court's decision as to Count XI overlooked controlling case law and well-pleaded facts and almost certainly would be reversed, Plaintiff would then be entitled to additional discovery and a second trial on his *Monell* claim. It makes much more sense for the Court to correct its decision now, reinstate the *Monell* claim, and permit the entire case to proceed to judgment at the same time.

---

[7] The testimony was from the civil rights case brought by Shih Wei Su, who was wrongly convicted in a January 1991 murder. The ADA testified she had been trained under D.A. Santucci to maintain a "Chinese Wall" shielding prosecutors from learning about benefits provided to witnesses, "admitted myriad additional *Brady* violations she had committed in the same case, complained she had received no supervision, and essentially testified that all her Office cared about was winning." ECF No. 33 ¶ 513.

## **CONCLUSION**

For the reasons above, the Court should GRANT Plaintiff's motion for reconsideration and reinstate Counts IX and XI of the Amended Complaint.

Respectfully submitted,

| | |
|---|---|
| /s/ | /s/ |
| _____ | _____ |
| ZMO LAW PLLC | LAW OFFICES OF JOEL B. RUDIN, P.C. |
| Zachary Margulis-Ohnuma | Joel B. Rudin |
| Benjamin Notterman | 152 West 57th Street, 8th Floor |
| 260 Madison Avenue, 17th Fl. | New York, NY 10019 |
| New York, NY 10016 | (212) 752-7600 |
| (212) 685-0999 | |
| *Attorneys for Plaintiff Felipe Rodriguez* | |

Dated:   New York, New York
         March 28, 2022