21 Civ. 1649 (AMD)(RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELIPE RODRIGUEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO MOTION FOR RECONSIDERATION

### HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for Defendant City of New York
100 Church Street, Room 3-133b
New York, New York 10007

*Of Counsel:*    Mark D. Zuckerman
*Tel:*  (212) 356-3519

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARD ...................................................................................................1

ARGUMENT

      POINT I

           COUNT IX OF THE COMPLAINT SHOULD NOT
           BE REINSTATED ...............................................................................3

      POINT II

           COUNT XI OF PLAINTIFF'S COMPLAINT
           SHOULD NOT REINSTATED .............................................................10

CONCLUSION ............................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

Allen v. McCurry,
   449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) ............................................................ 15

Almonte v. City of New York,
   15 Civ. 6843 (PAE),
   2018 U.S. Dist. LEXIS 141803 (S.D.N.Y. Aug. 21, 2018) .................................................... 15

An v. City of New York,
   230 F. Supp.3d 224 (S.D.N.Y. 2017) ........................................... 5, 6, 7, 10, 14, 15

Analyticial Surveys, Inc. v. Tonga Partners, L.P.,
   684 F.3d 36 (2d Cir. 2012) .................................................................................................. 2

Aquino v. City of New York,
   16 Civ. 1577 (GHW),
   2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017) ................................................... 3, 10

Askins v. Doe,
   727 F.3d 248 (2d Cir. 2013) ............................................................................................... 13

Banushi v. City of New York,
   09 Civ. 2937 (KAM),
   2010 U.S. Dist. LEXIS 109903 (E.D.N.Y. Oct. 15, 2010) ................................................... 8

Barrett v. Orange Cty. Hum Rts. Comm'n,
   194 F.3d 341 (2d Cir. 1999) ............................................................................................... 12

Bellamy v. City of New York,
   914 F.3d 727 (2d Cir. 2019) ............................................................................................... 13

Brady v. Maryland,
   373 U.S. 83 (1963) .............................................................................................................. 11

Buechel v. Bain,
   97 N.Y.2d 295 (2001) ......................................................................................................... 16

Carter v. Harrison,
   612 F. Supp. 749 (E.D.N.Y. 1985) ....................................................................................... 9

Collins v. City of New York, et. al.,
   923 F. Supp.2d 462 (E.D.N.Y. 2013) ................................................................................... 7

Cone v. Bell,
   556 U.S. 449 (2009) ............................................................................................................ 11

ii

**Cases**                                                                                                  **Pages**

Connick v. Thompson,
  563 U.S. 51 (2011) ...............................................................................................3, 4, 5, 6, 9, 14

Cuevas v. City of New York,
  07 Civ. 4169 (LAP),
  2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ........................................................8

Demaitre v. City of New York,
  18 Civ. 12403 (PGG),
  2020 U.S. Dist. LEXIS 189206 (S.D.N.Y. Oct. 11, 2020) ........................................................8

Franks v. City of New York,
  13 Civ. 5264 (KAM),
  2017 U.S. Dist. LEXIS 49532 (E.D.N.Y. Mar. 31, 2017) ........................................................8

Henderson v. City of New York,
  05 Civ. 2588 (FB)(CLP),
  2011 U.S. Dist. LEXIS 130350 (E.D.N.Y. Nov. 10, 2011) ........................................................2

Hickerson v. City of New York,
  146 F.3d 99 (1998) ...............................................................................................16

Hidalgo v. New York,
  11 Civ. 5074 (JS) (E.D.N.Y. Aug. 20, 2012)..........................................................................2

Isaac v. City of New York,
  16 Civ. 4729 (KAM)(RLM),
  2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) ........................................................6

John v. Lewis,
  15 Civ. 5346 (PKC),
  2017 U.S. Dist. LEXIS 49546 (E.D.N.Y. Mar. 31, 2017)........................................................16

Justice v. City of New York,
  13 Civ. 4016 (MKB),
  2015 U.S. Dist. LEXIS 97657 (E.D.N.Y. July 27, 2015)..........................................................2

Kyles v. Whitley,
  514 U.S. 419 (1995) ...............................................................................................11

Leibovitz v. City of New York,
  15 Civ. 1722 (KAM),
  2015 U.S. Dist. LEXIS 84995 (E.D.N.Y. June 30, 2015) ........................................................8

McKithen v. Brown,
  481 F.3d 89 (2d Cir. 2007) ...............................................................................15, 16

**Cases**                                                                                           **Pages**

McLeod v. Llano,
    17 Civ. 6062 (ARR),
    2019 U.S. Dist. LEXIS 39925 (E.D.N.Y. Mar. 12, 2019)......................................................6

Mercado v. City of New York,
    08 CV 2855 (BSJ)(HP),
    2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) ....................................................14

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978) ......................................................................................................3, 14

Morris v. City of New York,
    20 Civ. 9314 (GBD),
    2021 U.S. Dist. LEXIS 186917 (S.D.N.Y. Sept. 29, 2021) ........................................... 10, 14

Mosca v. City of New York, et. al.,
    17 Civ. 4327 (SJF)(SIL),
    2018 U.S. Dist. LEXIS 216885 (E.D.N.Y. Dec. 26, 2018),
    adopted in part by, Mosca v. City of New York, et. al.,
    17 Civ. 4327 (SJF)(SIL),
    2019 U.S. Dist. LEXIS 30395 (E.D.N.Y. Feb. 25, 2019) ......................................................7

Mosca v. City of New York,
    17 Civ. 4327 (SJF)(SIL),
    2018 U.S. Dist. LEXIS 69846 (E.D.N.Y Apr. 24, 2018),
    adopted by, Mosca v. City of New York, 17 CV 4327 (SJF)(SIL),
    2018 U.S. Dist. LEXIS 84163 (E.D.N.Y. May 18, 2018)..................................................5, 9

Newson v. City of New York,
    16 Civ. 6773 (ILG)(JO),
    2019 U.S. Dist. LEXIS 143835 (E.D.N.Y. Aug. 23, 2019) ..................................................13

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985) ..........................................................................................................3

People v. Rodriguez,
    620 N.Y.S.2d 966 (2d Dep't 1994) .................................................................................. 16, 17

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011) .................................................................................8

Reich v. City of New York,
    19 Civ. 6491 (EK)(RER),
    2021 U.S. Dist. LEXIS 137948 (E.D.N.Y. July 23, 2021)....................................................8

**Cases**                                                                                     **Pages**

Reyes v. City of New York,
    10 Civ. 1838 (ILG),
    2012 U.S. Dist. LEXIS 2104 (E.D.N.Y Jan. 6, 2012)............................................................15

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007) ....................................................................................................4

Rinaldi v. City of New York,
    13 Civ. 4881 (LAK)(JLC),
    2014 U.S. Dist. LEXIS 79011 (S.D.N.Y. June 10, 2014) .....................................................10

Rodriguez v. City of New York,
    21 Civ. 1649 (AMD)(RML), 2022 U.S. Dist. LEXIS 44671
    (E.D.N.Y. Mar. 14, 2022)...................................................................................1, 6, 7, 8, 10, 12

Shaw v. City of New York,
    95 Civ. 9325 (AJP),
    1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997) ...........................................................6

In re Shengda Tech, Inc. Sec. Litig.,
    11 Civ. 1918 (LGS),
    2015 U.S. Dist. LEXIS 69395 (S.D.N.Y. May 28, 2015) .........................................................2

Shrader v. CSX Transp., Inc.,
    70 F.3d 255 (2d Cir. 1995) ......................................................................................................2

Simms v. City of New York,
    480 Fed App'x 627 (2d Cir. 2012) (Summary Order) ..........................................................5, 9

Swinton v. City of New York,
    08 Civ. 3278 (RJD)(RML),
    2011 U.S. Dist. LEXIS 32384 (E.D.N.Y. Mar. 28, 2011)........................................................8

Tieman v. City of Newburgh,
    13 Civ. 4178 (KMK),
    2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015)..............................................7, 9, 14

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012)......................................................................................4

United States v. Bagley,
    473 U.S. 667 (1985) ................................................................................................................11

Walker v. City of New York, et. al.,
    14 Civ. 808 (ER),
    2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)....................................................9, 14

**Cases**                                                                                                           **Pages**

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007) ..................................................................................... 3, 4, 9

Yanez v. City of New York,
    29 F. Supp.2d 100 (E.D.N.Y. 1998) .......................................................................... 6, 7

**Statutes**

42 U.S.C. § 1983 .......................................................................................................... 3, 4, 15

N.Y. C.P.L §440 ................................................................................................................ 16, 17

Fed. R. Civ. P. 60(b) ............................................................................................................... 2

Local Rule 6.3 ......................................................................................................................... 2

vi

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

FELIPE RODRIGUEZ,

                                        Plaintiff,

        -against-

THE CITY OF NEW YORK, et. al.,

                                        Defendants.

------------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN RESPONSE TO MOTION
FOR RECONSIDERATION**

21 CV 1649 (AMD)(RLM)

## PRELIMINARY STATEMENT

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in opposition to plaintiff's motion for reconsideration of this Court's decision to dismiss Counts IX and XI of the Amended Complaint (the "Complaint"). Rodriguez v. City of New York, 21 Civ. 1649 (AMD)(RML), 2022 U.S. Dist. LEXIS 44671, at *53-57 (E.D.N.Y. Mar. 14, 2022)  For the reasons set forth herein, plaintiff's motion for reconsideration should be denied.  Simply, the Complaint does not plausibly allege municipal liability against the City arising out of conduct by the NYPD or Queens County DA's Office ("QCDA") and plaintiff has not met the strict reconsideration standard pursuant to which he must demonstrate that the Court "overlooked controlling authority" that "might reasonably be expected to alter the conclusion reached by the Court" in its original decision for reconsideration to be granted.

## LEGAL STANDARD

"The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matter, in other words, that might reasonably be expected to

alter the conclusion reached by the Court.'" <u>Justice v. City of New York</u>, 13 Civ. 4016 (MKB), 2015 U.S. Dist. LEXIS 97657, at *2 (E.D.N.Y. July 27, 2015) (quoting <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995)); <u>see</u> <u>also</u> Local Rule 6.3 (the moving party must "set forth concisely the matters of controlling decisions which counsel believes the Court has overlooked." "It is thus 'well settled' that a motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" <u>Justice</u>, <u>supra</u>, at *2 (quoting <u>Analyticial Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012)) (internal citations omitted). "In other words, 'reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources.'" <u>Justice</u>, <u>supra</u>, at *2 (quoting <u>Hidalgo v. New York</u>, 11 Civ. 5074 (JS), at *1 (E.D.N.Y. Aug. 20, 2012)). "In order to have been 'overlooked,' the decisions or data must have been put before [the court] on the underlying motion…and which, had they been considered, might have reasonably altered the result before the Court." <u>Henderson v. City of New York</u>, 05 Civ. 2588 (FB)(CLP), 2011 U.S. Dist. LEXIS 130350, at *2 (E.D.N.Y. Nov. 10, 2011).[1]

---

[1] Plaintiff also purports to bring this motion under Rule 60(b), Fed. R. Civ. P. However, Rule 60(b) is inapplicable to plaintiff's motion as that Rule only applies to final judgments, orders and proceedings. <u>In re Shengda Tech, Inc. Sec. Litig.</u>, 11 Civ. 1918 (LGS), 2015 U.S. Dist. LEXIS 69395, at *9 (S.D.N.Y. May 28, 2015). "The prevailing rule in this Circuit and elsewhere is that an order is final for purposes of Rule 60(b) when it is appealable. 'The standard test for whether a[n] [order] is final for Rule 60(b) purposes is…whether the [order] is sufficiently 'final to be appealed.'" <u>Id.</u> (internal quotations omitted). Plaintiff concedes in his motion for reconsideration that the Court's dismissal of plaintiff's municipal liability claims is not presently appealable. Thus, Rule 60(b) cannot be the basis of plaintiff's motion.

## ARGUMENT

### POINT I

### COUNT IX OF THE COMPLAINT SHOULD NOT BE REINSTATED

Plaintiff argues that the Court's decision to dismiss Count IX of the Complaint should be reconsidered.  In support of his argument, plaintiff contends that he plausibly alleged a failure to train, supervise or discipline theory against the City arising out of alleged misconduct by the NYPD.  Plaintiff is incorrect for a number of reasons.

"In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: (1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right."  Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017).  A municipality may not be held liable under § 1983 on the basis of *respondeat superior*.  Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978).  In order to hold a municipality liable as a "person" within the meaning of §1983, a plaintiff must establish that the municipality itself was somehow at fault.  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).  "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under §1983 for its policies or customs, only "[i]n limited circumstances [can] a local

3

government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983." Id. ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

"[W]here a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation." Wray, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick, 563 U.S. at 61. With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). "[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

4

Plaintiff argues in his motion for reconsideration that the Court "misconstrued" his municipal liability claim against the City arising out of alleged misconduct by the NYPD. (Plaintiff's Memorandum of Law in Support of Motion for Reconsideration, p. 3)  Plaintiff contends that the Court only considered his theory that the NYPD had a custom or practice of coercing witnesses to give false statements, but not his other theories that the NYPD also had a custom or practice of "fabricating evidence" (including police reports), "giving false or misleading testimony," "initiating or continuing a prosecution without probable cause," "withholding Brady material" and improperly incentivizing the closing of cases.  (Plaintiff's Memorandum of Law in Support of Motion for Reconsideration, p. 3)   Plaintiff further contends he has met the reconsideration requirement that the Court "overlooked" "controlling decisions" in dismissing Count IX of the Complaint that would have changed the outcome of the Court's dismissal decision. Plaintiff is incorrect.

First, plaintiff did not plausibly allege a "pattern of similar constitutional violations by untrained employees" necessary to meet the "deliberate indifference" requirement of Connick, supra, in his Complaint and points to no "controlling authority" that the Court "overlooked" as to the "deliberate indifference" requirement.  Incredibly, plaintiff still does not even recognize that that Connick controls failure to train or supervise municipal liability claims, and contends without any support whatsoever that Connick only applies to such municipal liability claims arising out of alleged misconduct by prosecutors.  (See plaintiff's Memorandum of Law, p. 4 n.1)  Clearly, the opposite is true, and failure to train, supervise or discipline claims for municipal liability post-Connick arising out of alleged police misconduct are subject to the Supreme Court's decision in Connick.  E.g. Simms v. City of New York, 480 Fed App'x 627, 631 n.4 (2d Cir. 2012) (Summary Order); An v. City of New York, 230 F. Supp.3d 224, 230 (S.D.N.Y. 2017); Mosca v. City of New

5

York, 17 CV 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 69846, at *14-16 (E.D.N.Y Apr. 24, 2018) (M.J. Locke), adopted by, Mosca v. City of New York, 17 Civ. 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 84163 (E.D.N.Y. May 18, 2018); McLeod v. Llano, 17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *20 (E.D.N.Y. Mar. 12, 2019).  Thus, this Court's application of Connick in its decision to dismiss plaintiff's municipal liability claims was entirely correct.  See Rodriguez, supra, at *54.

When Connick and its progeny are applied, it is clear that plaintiff has not plausibly alleged a "pattern of similar constitutional violations by untrained employees."  See Connick at 62; An, supra, at 231 (collecting cases).  As was correctly found by this Court in dismissing Count IX of the Complaint, the Mollen Report, which is virtually the entirety of what plaintiff relies upon for this claim in the Complaint, is insufficient to allege Monell liability as courts have consistently rejected attempts to rely upon the Mollen Commission Report as evidence of a City policy without making a connection to the specific facts of the case.  Isaac v. City of New York, 16 Civ. 4729 (KAM)(RLM), 2018 U.S. Dist. LEXIS 132995, at *51-52 (E.D.N.Y. Aug. 6, 2018) (M.J. Mann) (dismissing municipal liability custom and usage claim as the Mollen report was "unavailing" since complaint did not sufficiently connect Mollen report to facts of case); see Yanez v. City of New York, 29 F. Supp.2d 100, 112 & n.6 (E.D.N.Y. 1998) (summary judgment granted where plaintiff did not sufficiently connect the Mollen report to facts of case); Shaw v. City of New York, 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *27 (S.D.N.Y. Apr. 15, 1997) (M.J. Peck) (in finding the Mollen Report inadmissible, the Court noted that, "[i]f the Mollen Commission Report were held admissible here, it logically would be admissible in every suit, civil and criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer.

Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified.").

In his motion for reconsideration, plaintiff has cited to no "controlling authority" whatsoever that the Court "overlooked" with respect to its conclusion that "plaintiff does not sufficiently connect the Mollen Report to the alleged facts in this case." See Rodriguez, supra, at *55. As this Court stated in its decision, "[t]he Mollen Commission was established to investigate corruption in the NYPD and make recommendations for changes to prevent further NYPD corruption.'" Id. (quoting Yanez, supra, at 111). Plaintiff's Complaint makes no reference whatsoever to police corruption.

Furthermore, as plaintiff concedes, the Mollen Report was published seven years after the murder investigation of Maureen Fernandez began, five years after plaintiff's arrest and four years after his trial. Courts have consistently stated that evidence of other incidents **that post-date** the subject act of misconduct cannot be used to prove municipal liability. See Mosca v. City of New York, et. al., 17 Civ. 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 216885, at *17 (E.D.N.Y. Dec. 26, 2018) (M.J. Locke) (newspaper article published two years after subject incident insufficient to support municipal liability claim), adopted in part by, Mosca v. City of New York, et. al., 17 Civ. 4327 (SJF)(SIL), 2019 U.S. Dist. LEXIS 30395 (E.D.N.Y. Feb. 25, 2019); Tieman v. City of Newburgh, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48-49 (S.D.N.Y. Mar. 26, 2015) (citing Collins v. City of New York, et. al., 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013)) ("a 'litany of other police-misconduct cases' discussed in plaintiff's complaint 'were insufficient to make a plausible case for Monell liability,' because they…post-dated the alleged misconduct in the case at hand…"); see An, supra, at 230 (finding no widespread custom "at the time of plaintiff's arrest"). Thus, clearly, the Mollen Report cannot be used as evidence of

7

deliberate indifference of or notice to the City under <u>Connick</u> because it post-dated the investigation at issue.

Plaintiff is also incorrect that the Court did not consider his municipal allegations beyond the alleged policy or practice of "coercion of witnesses" as the Court clearly stated in its decision that "plaintiff does not sufficiently connect the Mollen Report to the alleged facts in this case." <u>Rodriguez</u>, <u>supra</u>, at *55. Thus, the Court clearly did not limit its decision to plaintiff's alleged municipal practice of "coercion of witnesses."

Moreover, the theories that plaintiff contends that the Court did not consider are based on allegations, see Complaint ¶¶425-435, 437-442, 465-469, that are improperly boilerplate and conclusory. <u>Reich v. City of New York</u>, 19 Civ. 6491 (EK)(RER), 2021 U.S. Dist. LEXIS 137948, at *21-24 (E.D.N.Y. July 23, 2021) (M.J. Reyes); <u>Plair v. City of New York</u>, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (<u>collecting</u> <u>cases</u>). <u>Demaitre v. City of New York</u>, 18 Civ. 12403 (PGG), 2020 U.S. Dist. LEXIS 189206, at *19-20 (S.D.N.Y. Oct. 11, 2020); <u>Franks v. City of New York</u>, 13 Civ. 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at *14 (E.D.N.Y. Mar. 31, 2017); <u>Leibovitz v. City of New York</u>, 15 Civ. 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at *12-14 (E.D.N.Y. June 30, 2015); <u>Banushi v. City of New York</u>, 09 Civ. 2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at *35-37 (E.D.N.Y. Oct. 15, 2010) (KAM); <u>Swinton v. City of New York</u>, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011); <u>Cuevas v. City of New York,</u> 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009).

Plaintiff also argues that his allegations in ¶¶436, 462 and 464 of the Complaint are sufficient to maintain his failure to train, supervise or discipline theory and plausibly allege the City's "deliberate indifference." Plaintiff is wrong. ¶436 describes a single and completely

unrelated case, Carter v. Harrison, 612 F. Supp. 749 (E.D.N.Y. 1985), that purportedly put the City on notice of widespread notice of Brady violations. It did not. ¶¶462 and 464 of the Complaint describe other alleged and unrelated reverse conviction cases, but in each of those cases the vacated convictions referenced did not take place until **after** plaintiff's conviction. Thus, these allegations are also insufficient to meet Connick's requirement that plaintiff allege a "pattern of similar constitutional violations by untrained employees" sufficient to plausibly allege such a claim. See Simms, supra, at 631 n.4 (plaintiffs have failed to plead "'[a] pattern of similar constitutional violations by untrained [municipal] employees'" necessary to maintain failure to train, discipline or supervise claim).

There are also additional reasons to dismiss plaintiff's failure to train, discipline or supervise claim beyond those found by the Court in its dismissal decision. First, plaintiff has not pointed to a specific deficiency in any NYPD training program that is closely related to his alleged injury as required. See Connick, supra, at 62. ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); Wray, supra, at 196; Mosca, supra, 2018 U.S. Dist. LEXIS 69846, at *15-16 (quoting Connick, at 62).

Second, plaintiff has also failed to plead that the City did not investigate any other "similar incidents" alleged in the Complaint, which is a necessary element of such a claim. Walker v. City of New York, et. al., 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410, at *29 (S.D.N.Y. July 14, 2015) ("although Plaintiff alleges a pattern of allegations about similar misconduct, he does not specifically claim that the City failed to investigate the list of lawsuits."); Tieman, supra, at *61-63 (allegations of other instances of excessive force by themselves inadequate to raise an inference of deliberate indifference as plaintiff had failed to allege that "'meaningful attempts to

9

investigate repeated claims of excessive force are absent.'"); An, supra, at 231 (complaint was inadequate as there was no allegation that the City, once on notice of a deficiency in its training programs, failed to investigate any such inadequacy).

Third, plaintiff's municipal liability claim against the City arising out of conduct by the NYPD fails as the Complaint does not plausibly allege that any City policy or custom was the "moving force" behind the conduct complained of. See Morris v. City of New York, 20 Civ. 9314 (GBD), 2021 U.S. Dist. LEXIS 186917, at *19-22 (S.D.N.Y. Sept. 29, 2021) ("Plaintiff's Monell claim fails because the [complaint] does not sufficiently allege the existence of a policy, custom or practice that was the driving force of any violation of Plaintiff's constitutional rights."). There are simply no facts in the Complaint connecting alleged improper customs and practices of the NYPD to plaintiff's factual allegations related to his arrest and prosecution. Such claim thus fails based on lack of causation for this reason as well.

Based on the foregoing, Count IX of the Complaint should not be reinstated upon plaintiff's motion for reconsideration.

## POINT II

### COUNT XI OF PLAINTIFF'S COMPLAINT SHOULD NOT REINSTATED

There are two issues raised by the Court's decision dismissing Count XI of plaintiff's complaint, Rodriguez, supra, at *56-57, only one of which is addressed by plaintiff in his motion for reconsideration. The first issue, which is not addressed in plaintiff's motion, is whether plaintiff has plausibly pled an underlying Constitutional violation by a QCDA prosecutor that can give rise to municipal liability. See Aquino, supra; Rinaldi v. City of New York, 13 Civ. 4881 (LAK)(JLC), 2014 U.S. Dist. LEXIS 79011, at *41-42 (S.D.N.Y. June 10, 2014). Plaintiff alleges that the underlying Constitutional violation committed by a QCDA prosecutor is the

10

alleged failure of former ADA Alan Safran to turn over the so-called "Nagra tape" to the defense in violation of a prosecutor's <u>Brady</u> obligations. (See Complaint, ¶¶275-282; plaintiff's Memorandum of Law in Support of Reconsideration at p. 6).[2]

Brady v. Maryland, 373 U.S. 83 (1963) ("<u>Brady</u>") protects a criminal defendant to the extent of requiring disclosure of "evidence that is material to his guilt or punishment." <u>Cone v. Bell</u>, 556 U.S. 449, 469 (2009). "[E]vidence is 'material' within the meaning of <u>Brady</u> when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." <u>Id.</u>, at 469-70. Nondisclosure is only material when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995). Put another way, a prosecutor's failure to turn over impeachment or exculpatory evidence only rises to a Constitutional violation when the failure "undermine[s] confidence in the outcome of the trial." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The mere failure to disclose favorable evidence is insufficient, otherwise the rule "would impose an impossible burden on the prosecutor and would undermine the interest in finality of judgments." <u>Id.</u>, at 675 n.7.

Seeming to address the issue of whether there was an underlying Constitutional violation by a prosecutor alleged in the Complaint that could plausibly give rise to a municipal liability claim against the City arising out of conduct by the QCDA, this Court stated in its dismissal decision that plaintiff's Complaint only "briefly describes the conduct of certain

---

[2] As discussed in defendants' motion to dismiss, while plaintiff again attempts to argue that the evidence referenced in ¶¶306-328 of the Complaint, which was allegedly suppressed by the LIRR police, should also be the responsibility of the QCDA for any failure of the defense to have received it pre-trial, see Complaint, ¶492, nowhere in the Complaint is it plausibly alleged that the QCDA knew of such evidence or received it from the LIRR police. As such, this evidence cannot be a plausible basis of plaintiff's municipal liability claim arising out of alleged improper customs or practices of the QCDA as alleged in Count XI of the Complaint.

11

prosecutors, including ADAs Dikman and Safran" and "does not bring this action against any individual prosecutor involved in his case." Rodriguez, supra, at *56. Nowhere in the Court's dismissal decision does the Court find that there was an underlying Constitutional violation committed by any present or former QCDA prosecutor that gives rise to municipal liability, and these portions of the Court's decision seem to infer that the "brief description of the conduct" of ADAs Dikman and Safran, as well as the "failure to bring the action against any individual prosecutor involved in his case," were insufficient to plausibly allege such an underlying Constitutional violation by a QCDA prosecutor.

Certainly, plaintiff's Complaint does not plausibly allege a Brady violation by a QCDA prosecutor in light of the foregoing "materiality" requirement, especially in light of the fact that nothing is specified in the Complaint about the "Nagra tape" that makes any of it material in light of the remaining voluminous evidence that was undeniably turned over to the defense and was the basis for the conviction. Thus, the Court's decision to dismiss Count XI of the Complaint was correct on this basis and certainly the Court did not overlook controlling authority in reaching its decision as plaintiff's Complaint does plausibly allege an underlying Constitutional violation by a QCDA prosecutor that could give rise to municipal liability of the City.

The second issue raised by the Court's decision dismissing Court XI of the Complaint is whether plaintiff is required to plausibly allege a Constitutional violation against a named individual defendant in this case and which gives rise to his municipal liability claim against the City arising out of alleged misconduct by the QCDA. Rodriguez, supra, at *56-57. In his motion for reconsideration, plaintiff contends that the Court "overlooked" the controlling authority of Barrett v. Orange Cty. Hum Rts. Comm'n, 194 F.3d 341, 350 (2d Cir. 1999) in finding that plaintiff was required to name QCDA prosecutors as individual defendants in order to maintain a

12

municipal claim against the City arising out of QCDA's conduct. But <u>Barrett</u> is easily distinguishable because in that case there were individual defendants named as defendants who were agents of the municipal organization that was allegedly responsible for that plaintiff's injuries. Here, the named individual defendants are all NYPD detectives or officers, while the municipal liability claim at issue in Count XI of the Complaint arises only out of the conduct by non-party employees of a separate entity, the QCDA. Thus, <u>Barrett</u> does not address our situation.

Plaintiff also cites to the Second Circuit's decision in <u>Bellamy v. City of New York</u>, 914 F.3d 727 (2d Cir. 2019) for support. But <u>Bellamy</u> did not at all address the issue raised by plaintiff in his motion for reconsideration. Finally, plaintiff cites to the district court case of <u>Newson v. City of New York</u>, 16 Civ. 6773 (ILG)(JO), 2019 U.S. Dist. LEXIS 143835 (E.D.N.Y. Aug. 23, 2019). However, there were no individual defendants named at all in <u>Newson</u>. The lawsuit was brought against the City only. Thus, <u>Newson</u> is distinguishable from our case and consistent with the Second Circuit's decision in <u>Askins v. Doe</u>, 727 F.3d 248, 253 (2d Cir. 2013), wherein the Court ruled only that "the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality." <u>Id</u>.

In any event, although the Court did not have to reach a number of additional issues in deciding the motion to dismiss as to Count XI of the Complaint, there are a number of other reasons why Count XI of the Complaint should be dismissed. First, plaintiff has not plausibly alleged "'[a] pattern of similar constitutional violations by untrained [municipal] employees'" necessary to maintain such claim against the City arising out of conduct by the QCDA. The cases which plaintiff contends in his motion for reconsideration at p. 8 put the QCDA on notice of deficiencies in its programs (see Complaint ¶¶511-516) are not sufficiently similar to the allegations here as to the alleged withholding of the "Nagra tape," are too few in amount given the

13

number of cases the QCDA handles, and were virtually all decided after plaintiff's trial. Connick, at 62; An, at 231; Tieman, at *48-49.  As such, if the Court reaches this issue, plaintiff's municipal liability claim in Count XI of the Complaint arising out of the alleged misconduct the QCDA still fails.

Second, the bulk of plaintiff's allegations in the Complaint are improperly boilerplate and conclusory. See Complaint, ¶¶492-502, 517-526.  Under the authorities cited in Point I, supra, therefore, plaintiff's municipal liability claim as set forth in Count XI has not been plausibly alleged for this reason as well.

Third, plaintiff does not plausibly allege that a municipal failure to train or supervise was the "moving force" behind the allegation that the Nagra tape was not turned over to the defense.  Mercado v. City of New York, 08 Civ. 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell v. Dep't of Social Services, supra, at 691, 694) ("To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation.").  Plaintiff's complaint is completely silent on any connection between the municipal failure to train allegations and the claim that the "Nagra tape" was not turned over by former ADA Safran.  Causation, therefore, has not been plausibly alleged.  See Morris, supra.

Fourth, similar to his municipal liability claim against the City arising out of alleged misconduct by the NYPD, plaintiff has also failed to plead that the City did not investigate any other "similar incidents" alleged in the Complaint as to his claim against the City arising out of alleged misconduct by the QCDA, which as seen, is a necessary element of such a claim.  Walker, supra, at *29 ("although Plaintiff alleges a pattern of allegations about similar misconduct, he does not specifically claim that the City failed to investigate the list of lawsuits."); Tieman, supra, at

14

*61-63 (allegations of other instances of excessive force by themselves inadequate to raise an inference of deliberate indifference as plaintiff had failed to allege that "'meaningful attempts to investigate repeated claims of excessive force are absent.'"); An, supra, at 231 (complaint was inadequate as there was no allegation that the City, once on notice of a deficiency in its training programs, failed to investigate any such inadequacy).  Although the Court did not have to reach this issue, it is yet another reason why Count XI of the Complaint should be dismissed, since plaintiff did not allege in his Complaint that the QCDA failed to investigate the cases that allegedly put it on notice of a need for better training.

Fifth, another issue that the Court did not have to reach based on its decision to dismiss Count XI of the Complaint was whether the alleged underlying Constitutional violation, the failure of former Queens County ADA Safran to turn over the "Nagra tape" to the defense, is barred by collateral estoppel.  Should the Court reach this issue, it is yet another reason why Count XI of the Complaint should be dismissed.

"Courts in this circuit have repeatedly barred § 1983 plaintiffs from relitigating in federal court issues decided against them in state criminal proceedings."  Reyes v. City of New York, 10 Civ. 1838 (ILG), 2012 U.S. Dist. LEXIS 2104, at *9 (E.D.N.Y Jan. 6, 2012).  This is because "[t]he Supreme Court has long since removed any doubt that the doctrine of collateral estoppel applies to actions brought under § 1983."  Almonte v. City of New York, 15 Civ. 6843 (PAE), 2018 U.S. Dist. LEXIS 141803, at *7 (S.D.N.Y. Aug. 21, 2018) (citing Allen v. McCurry, 449 U.S. 90, 104-05, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)).  "[I]n determining whether … issue preclusion applies, [the] inquiry is governed by New York state law."  McKithen v. Brown, 481 F.3d 89, 103 (2d Cir. 2007).  "Under New York law, collateral estoppel will preclude a federal court from deciding an issue if '(1) the issue in question was actually and necessarily decided in a

15

prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" John v. Lewis, 15 Civ. 5346 (PKC), 2017 U.S. Dist. LEXIS 49546, at *19-20 (E.D.N.Y. Mar. 31, 2017) (quoting McKithen, supra, at 105). "Plaintiff[], [when acting] as the part[y] opposing the application of collateral estoppel, bear[s] the burden of proving that [he was] denied this full and fair opportunity." Id. at *22 (quoting Hickerson v. City of New York, 146 F.3d 99, 109 (1998)).

The Court of Appeals of New York has noted that "[t]he equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules." Buechel v. Bain, 97 N.Y.2d 295, 303 (2001).  The doctrine "is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities.  'In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.'"  Id. at 304. (internal quotations omitted).

This issue was heavily litigated in prior motions by plaintiff pursuant to C.P.L §440 (including evidentiary hearings), and writs of *habeas corpus*, and were all decided against plaintiff. See People v. Rodriguez, 620 N.Y.S.2d 966 (2d Dep't 1994) and Exhibits D and E to the Declaration of Mark D. Zuckerman in support of motion to dismiss ("Zuckerman Decl.") at Docket 40.  The Queens County Supreme Court specifically found after the evidentiary hearing in 1993 that the "Nagra tape" had been turned over to the defense and found no discovery violation whatsoever.  (Zuckerman Decl., Ex. D at Docket 40)  These decisions, of which the Court should take judicial notice and/or find to be integral to the Complaint, should be given preclusive effect

16

as to plaintiff's present claim that the "Nagra tape" was not turned over to the defense by QCDA trial prosecutor Alan Safran.  The exact issue which plaintiff now wishes to litigate yet again, whether the "Nagra tape" was turned over to the defense, was fully litigated upon one of plaintiff's C.P.L. §440 motions, and plaintiff had a full and fair opportunity to litigate it.  The issue was decided against him.  Further, this issue was litigated post-conviction as a C.P.L. §440 motion, and the Second Department's decision finding against plaintiff on this issue has never been vacated in any sense.  See People v. Rodriguez, supra ("The record supports the hearing court's determination that the material in question was turned over to the defense.").  As the court decisions finding against plaintiff on the "Nagra tape" disclosure issue were not vacated as a result of plaintiff's separate and subsequently successful C.P.L. §440 motion which was brought on other grounds (See Complaint, ¶¶346-354, Exs. A, B and C to Zuckerman Decl.), plaintiff cannot rely on the line of cases which decline to apply collateral estoppel to pre-conviction evidentiary rulings (or direct appeals resulting therefrom) where a conviction is subsequently vacated pursuant to an unrelated C.P.L. §440 motion.  As such, there was no underlying constitutional violation by any QCDA prosecutor for this reason as well, and plaintiff's municipal liability claim against the City arising out of conduct by the QCDA should be dismissed with prejudice based thereon.

Based on the foregoing, Count XI of the Complaint should not be reinstated and plaintiff's motion for reconsideration in this regard should be denied.

17

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration should be denied

in its entirety.

Dated:       New York, New York
             April 13, 2022

                                   **HON. SYLVIA O. HINDS-RADIX**
                                   *Corporation Counsel of the City of New York*
                                   Attorney for Defendant City of New York
                                   100 Church Street, Room 3-133b
                                   New York, New York 10007
                                   (212) 356-3519


                        By:    /s/ Mark D. Zuckerman
                               MARK D. ZUCKERMAN
                               Senior Counsel

18