UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE RODRIGUEZ,<br><br>                              Plaintiff,<br><br>          - against -<br><br>CITY OF NEW YORK, et. al.,<br><br>                              Defendants. | 21-cv-01649 (AMD) (RLM) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
RELIEF FROM A FINAL ORDER PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND
LOCAL RULE 6.3**

ZMO Law PLLC
260 Madison Avenue, 17th Fl.
New York, NY 10016
(212) 685-0999
zmo@zmolaw.com

Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, NY 10019
(212) 752-7600
jbrudin@rudinlaw.com

*ATTORNEYS FOR PLAINTIFF FELIPE RODRIGUEZ*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT.................................................................................................................... 1

    I.    The City's opposition to reinstating Count IX is meritless because the Complaint adequately connects the Mollen Report to the misconduct alleged in this case, which is also supported by other evidence the Court did not address. ................... 1

    II.    The City effectively concedes that the Court erred in requiring Plaintiff to sue an individual prosecutor to support the claim relating to QDAO policies, and provides no other basis to dismiss Count XI. .......................................................... 6

CONCLUSION................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Aguirre v. City of New York*, 15-CV-6043 (PKC)(RLM), 2017 WL 4236552 (E.D.N.Y. Sept. 22, 2017) .................................................................................................. 4

*Askins v. Doe,* 727 F.3d 248, 253 (2d Cir. 2013) ............................................................ 7, 8

*Barrett v. Orange Cty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ................. 8

*Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) ........................................ 8

*Buari v. City of New York*, 530 F. Supp. 3d 356, 404 (S.D.N.Y. 2021) ............................. 4

*Carter v. Harrison*, 612 F.Supp. 749 (E.D.N.Y. 1985) ...................................................... 5

*Cash v. City of Erie*, 654 F.3d 324, 336 (2d Cir. 2011) ...................................................... 6

*Connick v. Thompson*, 563 U.S. 51 (2011) ........................................................................ 2

*Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) ..................................... 3, 4

*Isaac v. City of New York*, 16-CV-4729 (KAM), 2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018) ................................................................................................................. 4

*Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658 (1978) ....................... passim

*Owen v. City of Independence,* 445 U.S. 622, 635-58 (1980) ............................................ 7

*Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009) ................................... 7

*Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) ........................... 4

*Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) ..................................... 9

*Shaw v. City of New York*, No. 95-cv-9325 (AJP), 1997 WL 187352 , *8 (S.D.N.Y. Apr. 15, 1997) ................................................................................................................. 4

*Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992). ............................................ 2, 8

*Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002) ................................................. 7

*Yanez v. City of New York*, 29 F.supp.2d 100 (E.D.N.Y. 1998) ........................................ 4

**Other Authorities**

Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department, available at https://web.archive.org/web/20110721230958/http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf (last visited April 26, 2022) ......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 60(b) ..................................................................................................... 0, 1

Local Rule 6.3 ................................................................................................................. 0, 1

## PRELIMINARY STATEMENT

On March 28, 2022, Plaintiff Felipe Rodriguez moved pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3 for partial relief from the Court's March 14, 2022, Decision and Order denying in part and granting in part the Defendants' motion to dismiss. ECF No. 69. The motion seeks reinstatement of Plaintiff's *Monell* claims against the City of New York for unlawful practices of the New York City Police Department ("NYPD") (Count IX) and the Queens County District Attorney's Office ("QDAO") (Count XI). Our opening Memorandum of Law raised several legal and factual mistakes underlying the Court's decision. ECF No. 70.

The City filed its Response on April 14, 2022. ECF No. 76. In it, the City briefly responds to arguments we made concerning the Court's rationale for dismissing Counts IX and XI. Much of the Response, however, digresses into areas unrelated to the Court's rationale or our motion for reconsideration, and advances arguments made and responded to in the parties' underlying briefs. Rather than relitigate issues already briefed, this Reply focuses on the City's arguments that fall within the proper scope of this motion.

## ARGUMENT

**I. The City's opposition to reinstating Count IX is meritless because the Complaint adequately connects the Mollen Report to the misconduct alleged in this case, which is also supported by other evidence the Court did not address.**

Count IX alleges that the City caused Plaintiff's injuries by condoning a number of corrupt NYPD practices. *See Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658 (1978). We showed the claim's plausibility with several categories of evidence, including the 1994 Mollen

1

Commission Report.[1] In dismissing the claim, the Court found that the Mollen Report was not sufficiently connected to one of the practices we allege, witness coercion, but overlooked Plaintiff's allegations that the NYPD also condoned evidence fabrication, perjury, prosecution without probable cause, and withholding *Brady* material. The Mollen Report found those unlawful practices—particularly fabrication and perjury—to be a "serious problem" in the NYPD at the time Plaintiff was prosecuted. When these parts of the claim are considered, it is clear that the types of misconduct documented in the Mollen Report are similar to the misconduct that caused Plaintiff's injuries. Further, the Court overlooked additional evidence of the claim's plausibility, including a 1985 Eastern District decision regarding the NYPD's deficient *Brady* practices and contemporaneous examples of witness coercion. Accordingly, Count IX should be reinstated.

In response, the City first argues that *Connick v. Thompson*, 563 U.S. 51 (2011) requires a detailed history of similar misconduct to adequately plead municipal liability for failure to train, supervise, and discipline police officers. As we have already argued, however, *Walker v. City of New York* held that a municipality can be liable for failing to train police officers to disclose *Brady* material and not to commit perjury, even absent prior violations, as the need for such training is obvious. 974 F.2d 293 (2d Cir. 1992). *Connick*, meanwhile, only requires showing a history of misconduct to establish municipal liability for failing to train *prosecutors*—not police officers— on *Brady* compliance. Indeed, *Connick*'s central premise was that prosecutors, "*unlike police officers*, are equipped with the tools to find, interpret, and apply legal principles," such that, absent a history of misconduct, *Brady* violations are not an "'obvious consequence' of failing to provide

---

[1] *Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department,* available at https://web.archive.org/web/20110721230958/http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf (last visited April 26, 2022).

prosecutors with formal in-house training." 563 U.S. at 70 (emphasis added). Further, *Connick* concerned the sufficiency of evidence at trial and said nothing about pleading requirements. And, even under the more stringent standard proposed by the City, the Complaint suffices.

Next, the City contends that "the Court clearly did not limit its decision to plaintiff's alleged municipal practice of 'coercion of witnesses.'" ECF No. 76, at 15. But the Court clearly *did* limit its decision in this manner; the Order mentions nothing about the alleged policies relating to testimonial and documentary perjury, prosecution without probable cause, and noncompliance with *Brady*. ECF No. 62, at 40-41.

The City argues that the Mollen Report cannot "prove"[2] municipal liability because it was published five years after Plaintiff's arrest and conviction, ECF No. 76 at 14, but that argument makes no sense. The report constitutes a recognition that, at the time of the police misconduct in this case, there was widespread police corruption of a similar nature pervading the NYPD. A report about a *history* of misconduct can only be written after the conduct has occurred. Since the report admits such misconduct during the time frame of this case, it is probative evidence of the NYPD's customs, policies and practices during such time period. *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991), is on point. In *Gentile*, the Second Circuit upheld the *admissibility* of a 1989 investigative report showing both the existence of illegal practices as of 1981, when Gentile was prosecuted, and policymakers' actual or constructive knowledge of those practices as of 1981. In our case, Plaintiff was investigated and prosecuted squarely within the 10-year period during which, according to the Mollen Report, officers broadly engaged in misconduct similar to that alleged here. Further, the report plausibly shows not only the existence of unlawful customs and

---

[2] Plaintiff does not need to prove his allegations to survive a motion to dismiss, only to plausibly allege them.

practices, but the additional theory of *Monell* liability consisting of the deliberate indifference to such misconduct by policymakers at the NYPD. It does so, not because its publication put policymakers on notice of illegal practices, but because the report expressly found that policymakers (including the Police Commissioner) "turned a blind eye" to those practices. ECF No. 33, ¶ 450 (citing Mollen Report at 41-42).

Accordingly, numerous district courts, citing *Gentile*, have found the Mollen Report probative of policymakers' deliberate indifference to NYPD misconduct during the 1980s, even though the report was issued in 1994. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 404 (S.D.N.Y. 2021); *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014). By contrast, in cases cited by the Court and the City, where district courts found the Mollen Report unavailing, the alleged misconduct occurred *decades after* the report was issued. *See Isaac v. City of New York*, 16-CV-4729 (KAM), 2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018) (Mollen Report not relevant to policies in place in 2008); *Aguirre v. City of New York*, 15-CV-6043 (PKC)(RLM), 2017 WL 4236552 (E.D.N.Y. Sept. 22, 2017) (Mollen Report not relevant to policies in place in 2015).[3] This Court, we respectfully submit, appears to have misconstrued how the Complaint used the Mollen Report to show the plausibility of our claims.

Aside from the Mollen Report's publication date, the City does not, and cannot, dispute that the report's findings about fabrication and perjury are connected to the facts in this case. An

---

[3] Other cases cited by the City are clearly inapposite. ECF No. 76, at 13. *Yanez v. City of New York* disposed of a negligent-hiring *Monell* claim at summary judgment where, after discovery, it was clear that the plaintiff's allegations, unlike here, bore no resemblance to the misconduct described in the Mollen Report. *Yanez v. City of New York*, 29 F.supp.2d 100, 112 (E.D.N.Y. 1998). *Shaw v. City of New York* considered the admissibility of the Mollen Report at a trial that, unlike here, did not involve *Monell* claims. *Shaw v. City of New York*, No. 95-cv-9325 (AJP), 1997 WL 187352 , *8 (S.D.N.Y. Apr. 15, 1997).

entire section of the report addresses widespread "testimonial perjury" and "documentary perjury, as when an officer swears falsely under oath in an affidavit or criminal complaint; and falsification of police records[.]" ECF 33: Amended Complaint ¶ 444 (citing Mollen Report at 36) (hereinafter "Complaint"). "The consequences of [falsification] can be devastating. It can mean that defendants are unlawfully arrested and convicted, that inadmissible evidence is admitted at trial." ECF No. 33 ¶ 451 (citing Mollen Report at 43). Supervisors in the NYPD "not only tolerated, but encouraged this misconduct," and "Police Commissioners  . . . apparently turned a blind eye to unlawful practices[.]" *id*. ¶¶ 447-450. (citing Mollen Report at 39-42). These findings at least give rise to a plausible inference that the alleged misconduct of the individual defendants in this case was pursuant to custom or practice or was the foreseeable result of policymakers' indifference. *Id.* ¶ 431. In particular, Defendant Beisel misrepresented key facts in police reports, *id.* ¶¶ 180, 209, signed a criminal complaint knowing there was no probable cause, *id.* ¶¶ 243, 369, then lied about critical aspects of the investigation in court, *id.* ¶¶ 300-303, leading to Plaintiff's wrongful conviction. The underlying motion was to dismiss a complaint before discovery, not a summary judgment motion. We respectfully submit the Court sets too high a bar for a *Monell* claim if, contrary to the decisions of so many of its fellow jurists before this case, it rejects a well-pleaded *Monell* claim as implausible.

Finally, the City does not dispute that the Court overlooked the other evidence cited in Count IX, but flatly denies its relevance. The Complaint cites *Carter v. Harrison*, 612 F.Supp. 749 (E.D.N.Y. 1985), issued two years before the Fernandez investigation began, as a decision that put the NYPD on notice that its *Brady* practices could give rise to municipal liability. ECF No. 33, ¶ 436. The City responds only that *Carter* did not provide notice, but does not explain why not.  ECF No. 76 at 16. The City argues that six examples of police coercion in paragraphs 462 and 463 did

5

not provide notice of a pattern or practice because the resulting wrongful convictions were not vacated until after Plaintiff's conviction. *Id.* Nevertheless, the actual misconduct in those cases occurred between 1983 and 1992, supporting Plaintiff's plausible allegation that witness coercion was prevalent at the time of Plaintiff's prosecution and that supervisors were likely aware of such misconduct, but ignored or encouraged it. *See Cash v. Cty. of Erie*, 654 F.3d 324, 336 (2d Cir. 2011) ("highly publicized incidents" provide notice of need for additional training or supervision). Whether or not this evidence, together with the Mollen Report, is enough to withstand summary judgment, it certainly is enough to demonstrate our claim is sufficiently plausible to permit discovery on it.

The City's remaining arguments do not purport to address the Court's holding, but instead repeat alternative arguments the City already advanced in the underlying motion. These arguments are meritless for the reasons stated in our underlying opposition. ECF No. 49, at 27, 28, 31.

**II. The City effectively concedes that the Court erred in requiring Plaintiff to sue an individual prosecutor to support the claim relating to QDAO policies, and provides no other basis to dismiss Count XI.**

The Complaint alleges in Count XI that the City of New York is liable for QDAO's policy of deliberate indifference to the need to train, supervise and discipline prosecutors to disclose exculpatory and impeachment material, causing such evidence to be withheld from Plaintiff's trial counsel. The Court dismissed Count XI solely because the Complaint "does not allege any underlying constitutional violation by an individual [QDAO] defendant." ECF No. 62 at 41. We moved for reconsideration because municipal liability does not require naming any individual as a defendant, particularly an individual with absolute immunity as an assistant district attorney, like

6

non-party Alan Safran.[4] ECF No. 70 at 6. Indeed, it is hornbook law that a municipality does not enjoy the immunity that individual actors enjoy, and may be held liable *regardless* of whether the employees who commit the constitutional violation are immune from suit.  *Owen v. City of Independence,* 445 U.S. 622, 635-58 (1980). For 42 years, since *Owen,* the law has been that, while *Monell* does require an underlying constitutional violation by a municipal actor, it does not require suing that actor individually. Accordingly, Count XI should be reinstated.

The City's Response does not appear to endorse the Court's view that *Monell* liability requires individual liability. Indeed, the Response cites the Second Circuit's opinion in *Askins v. Doe*, which held the opposite. 727 F.3d 248, 253 (2d Cir. 2013) (citing *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009)). In *Askins*, the district court dismissed a *Monell* claim because claims against the individual defendant were untimely and barred by qualified immunity. The Second Circuit reversed, explaining that the disposition of individual claims is "irrelevant to the liability of the municipality," because holding otherwise would "effectively extend the defense of qualified immunity to municipalities, contravening the Supreme Court's holding in *Owen*." Id at 254. Under *Monell*, "it suffices to plead that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality . . . *the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality*." *Id.* at 253 (emphasis added).

---

[4] Mr. Safran is the same ADA who failed to disclose the exculpatory information that triggered Mr. Rodriguez's exoneration in December 2019. ECF No. 33, ¶¶ 349, 490.

*Askins* accords with two other Second Circuit decisions[5] that we cited in our opening brief, *Barrett v. Orange Cty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999), and *Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019). ECF No. 70. The City argues that *Bellamy* did not address whether *Monell* requires naming individual prosecutors as defendants. But *Bellamy* obviously foreclosed such a requirement by holding that the City can be liable for unconstitutional QDAO policies relating to *Brady* even though prosecutors enjoy absolutely immunity for failing to disclose *Brady* material. 914 F.3d at 760. Further, *Bellamy* explained that the "legal question of when [prosecutorial] immunity should attach is an entirely separate inquiry" from whether the City is liable for unconstitutional QDAO policies. *Id.*

The City also argues *Barrett* does not control because the complaint in that case named "agents of a municipal organization" as individual defendants, whereas Count XI "arises only out of the conduct by non-party employees of a separate entity, the QCDA." ECF No. 76 at 20. The City is just obfuscating. QDAO's nominal third-party status is irrelevant because the City is the final policymaker with respect to QDAO policies and the QDAO is, for purposes of setting office-wide managerial, administrative and personnel management policies, a New York City agency. *Bellamy*, 914 F.3d at 760; *see also Walker v. City of New York, supra.*

*Barrett*'s holding, meanwhile, is directly on point: even where individual defendants are found not to have committed the alleged constitutional torts, a municipality can still be liable if municipal actors *other than the named defendants* violated the plaintiff's rights. 194 F.3d at 350. In other words, a plaintiff must allege that a municipal actor violated plaintiff's rights, but need not sue the tortfeasor individually.

---

[5] We do not know why the City, having conceded that *Monell* does not require naming individual defendants, attempts to distinguish *Barrett* and *Bellamy*. Nevertheless, for sake of thoroughness, we address the City's arguments with respect to those cases.

8

Rather than acknowledge the Court's mistake, the City reads into the Order an alternative basis for dismissal: the "decision seem[s] to infer that" ADA Safran's failure to disclose the Nagra tape is not actionable because it was not "material to [] guilt or punishment." ECF No. 76 at 19. This argument, which the Court did *not* address, is meritless. The Complaint alleges that star witness Javier Ramos can be heard on tape admitting he did not lend Plaintiff the car on the night of the murder and that he was pressured and coerced by detectives to implicate Plaintiff. ECF No. 33, ¶¶ 164-174. Safran "knew or should have known" that the tape would have "severely impeached" Ramos but failed to disclose the tape to the defense in violation of *Brady*. ECF No. 33, ¶¶ 275-282. Based on these allegations, there is at least a "reasonable probability that," had the tape been disclosed, "the result of the proceeding would have been different." *See, e.g.*, *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (failure to disclose witness's prior inconsistent statement satisfied *Brady* materiality requirement). In any event, the question of materiality should be left to a jury.[6] On a motion to dismiss, the Court is required to presume facts pled in the Complaint are true and to draw all reasonable inferences from those facts, including, in this case, that the tape was material.

The rest of the City's Response raises issues not addressed by the Court's Order. Most or all of those arguments were advanced by the City in support of the underlying motion and are without merit for the reasons discussed in our opposition to that motion. ECF No. 49, at 22-24, 29, 31.

---

[6] The Complaint also alleges that the prosecution withheld additional exculpatory evidence, including a note later characterized by the QDAO as impeaching "the entire investigation," payments to a key witness, and witnesses' descriptions of the suspect wholly inconsistent with what Plaintiff looked like at the time. *See* ECF No. 33, ¶¶ 307-328. The City dismisses these allegations as "implausible," but does not explain why they are so. ECF No. 76, at 11, n.2.

## **CONCLUSION**

For the reasons set forth above, the Court should GRANT Plaintiff's motion for reconsideration and reinstate Counts IX and XI of the Amended Complaint.

Respectfully submitted,

____s/_____        ____/s_____

ZMO LAW PLLC                       LAW OFFICES OF JOEL B. RUDIN, P.C.

Zachary Margulis-Ohnuma            Joel B. Rudin

Benjamin Notterman                  152 West 57th Street, 8th Floor

260 Madison Avenue, 17th Fl.        New York, NY 10019

New York, NY 10016                 (212) 752-7600

(212) 685-0999

*Attorneys for Plaintiff Felipe Rodriguez*


Dated:     New York, New York
             April 30, 2022

10